UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DERRICK STEWART, on behalf of himself, FLSA
Collective Plaintiffs and the Class,

                              Plaintiff,

          -v-

                                                    CIVIL ACTION NO.: 20 Civ. 885 (PGG) (SLC)

                                                    **REPORT AND RECOMMENDATION**

HUDSON HALL LLC, d/b/a MERCADO LITTLE SPAIN,
et al.,

                              Defendants.

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE PAUL G. GARDEPHE**, United States District Judge:

## I.    INTRODUCTION

        Plaintiff Derrick Stewart ("Stewart") filed this putative class and collective action asserting

claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, and the New York Labor

Law ("NYLL"), N.Y. Lab. Law § 190, et seq., against Defendants Hudson Hall, LLC d/b/a Mercado

Little Spain ("Hudson Hall"), Hudson Hall Holdings LLC d/b/a Mercado Little Spain ("Holdings"),

Think Food Group, LLC ("Think") (Hudson Hall, Holdings, and Think, together the "Corporate

Defendants"), and José Ramon Andrés Puerta a/k/a José Ramon ("Andrés") (Andrés and the

Corporate Defendants, together "Defendants").   Stewart is seeking to recover: (1) unpaid

overtime wages; (2) unpaid wages for off-the-clock work; (3) liquidated damages; and (4)

attorneys' fees and costs.  (ECF No. 26 ¶ 1).  Before the Court is Defendants' Motion to Dismiss

Stewart's First Amended Class Action and Collective Action Complaint (the "FAC") (the "Motion")

(ECF Nos. 32–33).  For the reasons set forth below, the Court respectfully recommends that the

Motion be GRANTED in part and DENIED in part, and that Stewart be GRANTED leave to amend.

## II.   <u>BACKGROUND</u>

### A.   <u>Factual Background</u>

The following factual summary is taken from the allegations in the FAC, the truth of which the Court presumes for purposes of deciding the Motion.  <u>See</u> <u>N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC</u>, 709 F.3d 109, 119 (2d Cir. 2013); <u>Stolarik v. N.Y. Times Co.</u>, 323 F. Supp. 3d 523, 529 n.2 (S.D.N.Y. 2018).

#### 1.   <u>Defendants</u>

According to Stewart, Defendants own and operate several restaurants, bars, and kiosks that comprise "Mercado Little Spain," located at 10 Hudson Yards in Manhattan.  (ECF No. 26 ¶¶ 6–7).  Mercado Little Spain's restaurants, bars, and kiosks together "comprise a marketplace intended to mirror market halls located throughout Spain."  (<u>Id.</u> ¶ 8).  Mercado Little Spain advertises for the individual restaurants, bars, and kiosks on a single website, http://www.littlespain.com.  (<u>Id.</u> ¶ 9).  Stewart alleges that Mercado Little Spain's restaurants, bars, and kiosks "operate as a single[] integrated enterprise and are engaged in related activities, share common ownership, and have a common business purpose" insofar as they, <u>inter alia</u>, share similar "Iberian" menus, present their menus on Mercado Little Spain's website, employ "interchangeable" employees, share payroll methods, have a centralized labor relations system and marketing department, and share social media accounts.  (<u>Id.</u> ¶ 10(a)–(g)).  In addition, Mercado Little Spain's restaurants, <u>inter alia</u>, share a common customer inquiry form, jointly sell a gift card, jointly post and accept applications for employment positions, and offer reservations through a common website.  (<u>Id.</u> ¶ 10(h)–(n)).

Stewart alleges that Hudson Hall, a subsidiary of Holdings and Think, owns and operates the Leña Restaurant located inside Mercado Little Spain.  (ECF No. 26 ¶ 11).  Stewart also alleges that Holdings, a New York corporation, and Think, a Delaware corporation, own and operate Mercado Little Spain.  (Id. ¶¶ 12–13).

Andrés is an owner and principal of the Corporate Defendants.  (ECF No. 26 ¶ 14).  Stewart alleges that Andrés "exercises operational control" over all employees, including Stewart and the members of the putative collective and class.  (Id.)  Andrés frequently visited Mercado Little Spain, and "exercise[d] the power to (and also delegate[d] to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees," including Stewart and the members of the putative collective and class.  (Id.)  Andrés invited employees of Mercado Little Spain to contact him regarding issues with their pay, and made public statements on Twitter addressing certain pay issues in August 2019.  (Id. ¶ 15 & ECF No. 26-2).  Stewart alleges that Andrés' statements show that employees could complain about their employment to him, and that he had the authority to effect "changes to the quality and terms of employees' employment."  (ECF No. 26 ¶ 14).  Attaching an April 2020 press statement in which Andrés described changes to Mercado Little Spain's business due to COVID-19, Stewart alleges that Andrés determined hours of operation, pay compensation, and benefits for employees who were furloughed or fired.  (Id. ¶ 15 & ECF No. 26-3).

### 2.  Stewart

On or about March 1, 2019, Hudson Hall hired Stewart to work as a cook at the Leña Restaurant inside Mercado Little Spain.  (ECF No. 26 ¶ 30).  Around June 1, 2019, Stewart was

transferred to the Spanish Diner Restaurant and also began working four shifts at the Frutas & Verduras Kiosk, both within Mercado Little Spain.  (Id. ¶ 31).  Stewart worked primarily at the Spanish Diner Restaurant for the remainder of his employment, but occasionally worked "on an as needed basis" at other restaurants and kiosks within Mercado Little Spain.  (Id.) On September 15, 2019, Stewart's employment terminated.  (Id.)

From March 1, 2019 until May 13, 2019, Stewart worked five days per week, seven hours per day, at a rate of $17.00 per hour.  (ECF No. 26 ¶ 32).  From May 13, 2019 until September 1, 2019, he worked five days per week, nine hours per day, at a rate of $17.00, except for the week of May 20–26, 2019, when he worked over 52.94 hours at a rate of $17.00 for a total of $899.98.  (Id. ¶¶ 33–34).  Stewart alleges that the members of the putative collective and class worked similar hours at similar rates.  (Id. ¶ 35).

Although Stewart was required to clock-out at the end of his shifts, his managers instructed him to continue performing other tasks, such as cleaning, for 30 minutes four times each week, such that he performed two hours of off-the-clock work each week.  (ECF No. 26 ¶ 36).  In addition, the restaurants Stewart worked at had a policy requiring a manager's approval to clock-in more than five minutes before or after a shift, but managers were "derelict" in clocking him in, resulting in additional time he worked off-the-clock.  (Id. ¶ 37).  Although Defendants automatically deducted 30-minute meal breaks from each shift, Stewart worked during his lunch breaks and was not paid for this time.  (Id. ¶ 38).

Stewart alleges that the restaurants did not provide him, or members of the putative collective and class, with wage notices or proper wage statements as required by the NYLL.  (ECF No. 26 ¶¶ 39–40).

The FAC seeks certification as a collective action under the FLSA as well as a class action under Federal Rule of Civil Procedure 23 on behalf of all of Mercado Little Spain's non-exempt employees "including but not limited to, cooks, food preparers, cashiers, counter persons, butchers, cleaners, dishwashers, servers, porters, bussers, and food runners." (ECF No. 36 ¶¶ 19, 22). The proposed collective and class action period runs from January 31, 2014 to the present. (Id.)

### B.  Procedural Background

On January 31, 2020, Stewart filed the original complaint in this action, and on April 27, 2020, he filed the FAC. (ECF Nos. 1, 26). On May 29, 2020, after receiving permission from Judge Gardephe, Defendants filed the Motion. (ECF Nos. 29, 32–33). On June 1, 2020, Judge Gardephe issued an amended order of reference referring the Motion to the undersigned for a report and recommendation. (ECF No. 34).

### III.  LEGAL STANDARDS

### A.  Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "challenges the legal sufficiency of the claims asserted in a complaint." Perez-White v. Advanced Dermatology of N.Y. P.C., No. 15 Civ. 4858 (PGG), 2016 WL 4681221, at *8 (S.D.N.Y. Sept. 7, 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014); Stolarik, 323 F. Supp. 3d at 537. The factual allegations must be sufficient to raise a "right to relief above the speculative level." Twombly, 550 U.S. at 555.

A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Myers v. City of N.Y., No. 11 Civ. 8525 (PAE), 2012 WL 3776707, at *2 (S.D.N.Y. Aug. 29, 2012) (quoting Iqbal, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  But, a court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible."  Anderson News, LLC. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012).

In reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff.  See N.J. Carpenters Health Fund, 709 F.3d at 119; Stolarik, 323 F. Supp. 3d at 537.  A court may consider only "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and [] matters of which judicial notice may be taken."  Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  "For a document to be incorporated by reference, 'the complaint must make a clear, definite and substantial reference to the documents.'"  Stolarik, 323 F. Supp. 3d at 537 (quoting DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal citation omitted)).  "'[L]imited quotation' of a document, Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985), or a mere passing reference to a document outside of the complaint does not incorporate the document into the complaint."  Stolarik, 323 F. Supp. 3d at 537; see Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.").

**B.  FLSA & NYLL Claims**

The FLSA and the NYLL require employers to pay employees a statutory minimum wage

for the first 40 hours that employees work each week.  See 29 U.S.C. § 206(a)(1); 12 N.Y.C.R.R.

§ 146-1.2.  Employers must also pay employees one and one-half times the ordinary minimum

wage rate for any time that exceeds 40 hours in a given week.  See 29 U.S.C. § 207(a); 12

N.Y.C.R.R. § 146-2.2.  See Estrada v. Giovanni's Italian Eatery, Inc., No. 16 Civ. 6162 (PGG) (GWG),

2020 WL 4917179, at *4 (S.D.N.Y. Aug. 20, 2020).

To be liable under the FLSA, a defendant must be an "employer," which is defined as "any

person acting directly or indirectly in the interest of an employer in relation to an employee . . .

."  29 U.S.C. § 203(d); see Biberaj v. Pritchard Indus., Inc., No. 08 Civ. 07993 (PGG), 2009 WL

10738222, at *8 (S.D.N.Y. Sept. 28, 2009) (quoting § 203(d)).[1]  "The Supreme Court has

emphasized the 'expansiveness' of the FLSA's definition of [an] employer."  Herman v. RSR Sec.

Serv., Inc., 172 F.3d 132, 139 (2d Cir. 1999) (quoting Falk v. Brennan, 414 U.S. 190, 195 (1973));

see Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992) (noting that the definition of

"employer" under the FLSA is one of "striking breadth").  As the Second Circuit explained in

Herman, "the remedial nature of the statute [] warrants an expansive interpretation of its

provisions so that they will have 'the widest possible impact in the national economy.'"  172 F.3d

---

[1] District courts within the Second Circuit "have consistently interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."  Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (internal citations omitted); see Vasto v. Credico (USA) LLC, No. 15 Civ. 9298 (PAE), 2016 WL 4147241, at *5 (S.D.N.Y. Aug. 3, 2016) (comparing FLSA § 203(d) with NYLL § 190(3)); but see Ayala v. Looks Great Servs., Inc., No. 14 Civ. 6035 (ADS) (SIL), 2016 WL 3541548, at *5 (E.D.N.Y. June 23, 2016) (noting "slight differences" between FLSA "economic realities" test and NYLL "degree of control" test).  The parties adopt the FLSA standard in their briefs, and do not argue that a different standard applies to Stewart's NYLL claims, and accordingly, the Court will conduct its analysis under the FLSA standard.  See Vasto, 2016 WL 4147241, at *6 (analyzing employer status under the FLSA standard where both parties adopted it in their briefs).

at 139 (quoting <u>Carter v. Dutchess Comm. Coll.</u>, 735 F.2d 8, 12 (2d Cir. 1984)); <u>see</u> <u>Zheng v. Liberty</u> <u>Apparel Co.</u>, 355 F.3d 61, 69 (2d Cir. 2003) ("the broad language of the FLSA . . . demands that a district court look beyond an entity's formal right to control the physical performance of another's work before declaring that the entity is not an employer under the FLSA.").

In analyzing the question of whether a defendant is an employer, "the overarching concern is whether the alleged employer possessed the power to control the workers in question." <u>Herman</u>, 172 F.3d at 139.  The Second Circuit has directed courts to analyze the "'economic reality' presented by the facts of each case." <u>Id.</u> (quoting <u>Goldberg v. Whitaker House</u> <u>Coop.</u>, 366 U.S. 28, 33 (1961)); <u>see</u> <u>Barfield v. N.Y.C. Health & Hosps. Corp.</u>, 537 F.3d 132, 141 (2d Cir. 2008) ("the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts, determined by reference not to isolated factors, but rather upon the circumstances of the whole activity") (internal citations omitted).  The "economic reality" test involves examining several relevant factors (known as the <u>Carter</u> factors) to determine whether the defendant exercised formal control over an employee, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." <u>Carter</u>, 735 F.2d at 12 (internal citation omitted).  The FLSA's accompanying regulations also provide that an individual may be employed by more than one entity.  <u>See</u> <u>Zheng</u>, 355 F.3d at 66 (citing 29 C.F.R. § 791.2); <u>Perez v. Westchester Foreign Autos,</u> <u>Inc.</u>, No. 11 Civ. 6091 (ER), 2013 WL 749497, at *6 (S.D.N.Y. Feb. 28, 2013).  In a case involving alleged joint employment by multiple defendants, a defendant who meets the four <u>Carter</u> factors

must, "in addition to any primary employer, [] be considered a joint employer." Zheng, 355 F.3d at 67. "'[J]oint employers are responsible, both individually and jointly, for compliance with all the applicable provisions of the FLSA.'" Olvera v. Bareburger Grp. LLC, 73 F. Supp. 3d 201, 204–05 (S.D.N.Y. 2014) (citing 29 C.F.R. § 791.2(a)).

While "formal control is sufficient to establish employer liability, it is not essential." Lopez v. Acme Amer. Environ. Co., No. 12 Civ. 511 (WHP), 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012); see Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 309 (S.D.N.Y. 2011) ("[A] court cannot use the Carter factors as an exclusive four-factor test to determine whether an entity is an employer under the FLSA.") (internal citations omitted). "An entity may functionally control workers even when it does not formally control them." Lopez, 2012 WL 6062501, at *3. Under Second Circuit precedent, courts analyze functional control by considering "the operational control exerted over employment and the individual's potential power, even if not exercised, over the employees." Solis v. ZEP LLC, No. 19 Civ. 4230 (JGK), 2020 WL 1439744, at *7 (S.D.N.Y. Mar. 24, 2020); see also Zheng, 355 F.3d at 67 (describing functional control factors relevant in the contractor-subcontractor context). Like the formal test, the functional test is also not a "rigid rule." Barfield, 537 F.3d at 143. Both tests provide courts with "a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." Id. (internal citation omitted). None of these factors by itself is "dispositive . . . Instead, the 'economic reality' test encompasses the totality of [the] circumstances, no one of which is exclusive." Herman, 172 F.3d at 139 (internal citation omitted); see Huer Huang v. Shanghai City Corp., No. 19 Civ. 7702 (LJL), 2020 WL 2319166, at *5 (S.D.N.Y. May 11, 2020)

("Ultimately, 'employment for FLSA purposes [is] a flexible concept [] determined on a case-by-case basis by review of the totality of the circumstances.'") (quoting Barfield, 537 F.3d at 141–42).

In determining whether a defendant is an employer, a court may examine "any relevant evidence . . . so as to avoid having the test confined to a narrow legalistic definition." Herman, 172 F.3d at 139 (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)). Status as an employer "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control 'do[] not diminish the significance of its existence.'" Id. (quoting Donovan v. Janitorial Servs., Inc., 672 F.2d 528, 531 (5th Cir. 1982)).

In addition, district courts have applied the "single integrated enterprise" test "to assess whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes." Juarez v. 449 Rest., Inc., 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (collecting cases). When applying this test, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Id. (citing Perez, 2013 WL 749497, at *7). The single enterprise test "is usually used to determine whether employers at different arms of a corporate family shared a common employer." Hsieh Liang Yeh v. Han Dynasty, Inc., No. 18 Civ. 6018 (PAE), 2019 WL 633355, at *6 (S.D.N.Y. Feb. 14, 2019). "Where the single-integrated-enterprise theory applies, courts may impose liability for a violation 'not only on the nominal employer but also on another entity

comprising part of the sing[l]e integrated employer.'" Huer Huang, 2020 WL 2319166, at *4

(quoting Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005)).

## IV.   DISCUSSION

While Defendants concede, for purposes of the Motion, that Hudson Hall was Stewart's

employer for purposes of the FLSA and NYLL (ECF No. 33 at 6 n.1), they argue that the FAC fails

to allege sufficiently that Holdings, Think, and Andrés were Stewart's employers under the FLSA.

(Id. at 13–22).  The Court addresses Holdings and Think together, before turning to the allegations

regarding Andrés.

### A.  The FAC Fails to Allege that Holdings and Think Were Stewart's "Employer."

The Court finds that Stewart's FAC fails to plead facts showing that Holdings and Think

were his "employer" under the FLSA sufficient "to cross 'the line between possibility and

plausibility of entitlement to relief.'" Huer Huang, 2020 WL 2319166, at *5 (quoting Iqbal, 556

U.S. at 678).  The Court first explains this conclusion under the formal and functional control tests

(infra Section IV.A.1), and then under the single integrated enterprise theory (infra Section

IV.A.2).

#### 1.  Formal or functional control

Defendants argue that the FAC fails to allege facts to support any of the four Carter factors

necessary to show "formal control" over Stewart's employment, and similarly fails to satisfy the

test for functional control.  (ECF No. 33 at 17–19).  In opposition to the Motion, Stewart argues

that Holdings and Think control Mercado Little Spain's website and its hiring and firing.[2] (ECF No. 36 at 14–16).

The only factual allegations in the FAC about Holdings and Think are their addresses, states of incorporation, and status as Hudson Hall's parent companies, along with the conclusory assertion that they "own and operate" the restaurants, bars, and kiosks that comprise Mercado Little Spain. (ECF No. 26 ¶¶ 12–13). Contrary to Stewart's argument in opposition to the Motion, the FAC does <u>not</u> allege that <u>Holdings</u> and <u>Think</u> controlled Mercado Little Spain's website, hiring or firing. (See id.) Even if the FAC did allege that they controlled the website, it would not render them liable for Mercado Little Spain's alleged wage-and-hour violations, because "[i]t is not uncommon for two or more businesses that are run independently and manage their labor relations independently to use a single website or a common name for marketing purposes." <u>Huer Huang</u>, 2020 WL 2319166, at *5 (collecting cases holding that use of single website or common marketing did not establish single integrated enterprise).

The Court concludes that Stewart has failed to allege that Holdings and Think exercised formal control over him: there are no non-conclusory allegations that they had the power to hire him or other similarly-situated employees, supervised or controlled work schedules or payments at Mercado Little Spain, or maintained employment records. See <u>Lopez</u>, 2012 WL 6062501, at *5; see also <u>Acharya v. 7-Eleven, Inc.</u>, No. 18 Civ. 08010 (PAC), 2019 WL 6830203, at *3 (S.D.N.Y. Dec. 13, 2019) (granting motion to dismiss claims against franchisor whom plaintiff did not plead

---

[2] Stewart also points to Mercado Little Spain's liquor license, which lists Holdings and Think. (ECF No. 36 at 14). The purported screenshot of the liquor license is pasted into Stewart's opposition brief, but was neither attached to nor incorporated by reference in the FAC, and therefore the Court will not consider it in deciding the Motion. See <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010).

had "hiring and firing power, or controlled [his] work schedule or employment conditions."). Stewart's conclusory allegations "of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate entity controlled" Stewart or any other employees. Huer Huang, 2020 WL 2319166, at *5 (quoting Lopez, 2012 WL 6062501, at *4).

The FAC also fails the test of functional control as to Holdings and Think.  In fact, the FAC "contains so little detail as to effectively disable the Court from" analyzing the functional factors as to Holdings and Think at all.  Hsieh Liang Yeh, 2019 WL 633355, at *8.  For example, there is no allegation in the FAC about the "degree to which" Holdings and Think supervised Stewart or any other similarly-situated employees, or any other employment decisions for which they were responsible.  See Zheng, 355 F.3d at 71–72 (listing degree of supervision of employees' work as one factor in functional control test); Hsieh Liang Yeh, 2019 WL 633355, at *8 (finding functional control test not met where, inter alia, plaintiff did not allege defendants supervised employees).

Accordingly, the Court concludes that the FAC fails "to plead adequate factual material to give rise to an inference that [Holdings and Think] exercised the control, formal or functional, required to hold [them] liable as [] employer[s] under the FLSA."  Acharya, 2019 WL 6830203, at *3.

### 2.  Single integrated enterprise

Where a FLSA plaintiff alleges that multiple defendants together constitute a "single integrated enterprise" and "therefore are properly identified as their 'employer' for purposes of their FLSA claims," the pleading does not run afoul of Rule 8(a)(2)'s short-and-plain-statement requirement.  See Addison v. Reiman Blacktop, Inc., 283 F.R.D. 74, 84 (S.D.N.Y. 2011) (granting

motion to amend to add corporate defendant).  Defendants argue that Stewart makes only

conclusory allegations in support of the single integrated enterprise doctrine, and does not allege

that Holdings and Think "were engaged in a unified operation, were under common control,

operated for a common business purpose, utilized [Stewart] in an interchangeable manner, or

any other required element."  (ECF No. 33 at 21 (citing Bravo v. Est. Burger One, LLC, No. 12 Civ.

9044 (CM), 2013 WL 5549495, at *8 (S.D.N.Y. Oct. 8, 2013)).  In opposition, Stewart argues that

his allegations that "Defendants collectively own and operate the restaurants, bars and kiosks"

that comprise Mercado Little Spain, and that those restaurants, bars and kiosks "engage in

interrelated operations, have common management, and centralized control" are sufficient to

plead the single integrated enterprise doctrine.  (ECF No. 36 at 8–10).

        Once again, Stewart's arguments in opposition to the Motion do not reflect what he has

actually alleged in his pleading:  the FAC does not allege that the Corporate Defendants operate

as a single enterprise, only that the restaurants, bars, and kiosks that comprise Mercado Little

Spain "operate as a single[] integrated enterprise" (ECF No. 26 ¶ 10; see also id. ¶ 18 (the

"Restaurants operate as a single integrated enterprise")).  The FAC offers no allegations about

the extent to which — if at all — the Corporate Defendants have interrelated operations,

common management and ownership, or centralized control over labor relations, the factors

required to establish that the Corporate Defendants may be held liable as a single integrated

enterprise under the FLSA.  See Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996)); Apolinar v. R.J.

49 Rest., LLC, No. 15 Civ. 8655 (KBF), 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016) (dismissing

corporate defendants whom plaintiff failed to allege "had an interrelation of operations or

centralized control of labor relations with plaintiffs' identified direct corporate employer").

Furthermore, even assuming Holdings and Think are part of a broader enterprise, because Stewart does not allege that Holdings or Think had any connection to him or control of <u>his</u> employment, there is "no basis for bringing them into this lawsuit which, at present, contains allegations of violations of law solely as to him."  <u>Hsieh Liang Yeh</u>, 2019 WL 633355, at *8 (dismissing defendants who "lack[ed] a nexus suggesting control of the plaintiff at hand"); <u>Apolinar</u>, 2016 WL 2903278, at *4 (dismissing claims against corporate defendants where "plaintiffs' allegations do not go beyond alleging common ownership and a common business plan and purpose.").

A comparison to other cases in which district courts have denied motions to dismiss further demonstrates the deficiencies in Stewart's allegations against Holdings and Think.  For example, in <u>Perez</u>, the plaintiffs alleged that the corporate defendant owned twenty automotive dealerships that operated as a single business enterprise, referred to itself as "one of the largest family-owned group[s] of automotive dealerships in the United States," and provided all dealership employees with a handbook containing "'Company' policies regarding timekeeping, paydays, advances, employee loans, work schedules, pay deductions, and setoffs."  2013 WL 749497, at *7–8.  The district court held that "[t]aken as a whole, these allegations raise[d] a reasonable expectation that discovery will reveal evidence" that the corporate defendant was the "employer" of the plaintiffs and the members of the putative class.  <u>Id.</u> at 8 (internal citations omitted).

Similarly, the plaintiffs in <u>Reyes v. Altamarea Group, LLC</u>, did not stand on the conclusory allegation that the corporate defendant "owned and/or operated" the restaurant where plaintiffs worked, but also that it "had the power to put in place employee policies," "accept[ed]

job applications" for the restaurant, and administered employee benefits.   No. 10 Civ. 6451 (RMB), 2011 WL 280799, at *3 (S.D.N.Y. Jan. 18, 2011).   The district court held that these allegations were sufficient to plead that the corporate defendant was plaintiffs' employer for purposes of a motion to dismiss.  Id. at *3–4.

In contrast to these cases, Stewart reveals virtually nothing about Holdings and Think aside from their states of incorporation and, in a conclusory fashion, the assertion that they own and operate Mercado Little Spain.  (ECF No. 26 ¶¶ 11–13).  Unlike the plaintiffs in Perez and Reyes, Stewart offers nothing beyond the rote conclusion that Holdings and Think qualify as an "employer" under FLSA, which is insufficient to survive the Motion.

*          *          *

Therefore, the Court concludes that Stewart has failed to allege that the Corporate Defendants either had formal or functional control over his employment, or constituted a single integrated enterprise sufficient to show that either of them was his "employer" for FLSA purposes.   Compare Arculeo, 425 F.3d at 198 (holding that single employer doctrine was inapplicable because plaintiff "has not suggested that [the two defendants] are part of a single integrated enterprise") with Addison, 283 F.R.D. at 84 (holding that single employer doctrine applied because "Plaintiffs allege that '[a]t all times material to this action, the corporate Defendants formed a "single integrated enterprise"'").

### 3.   Federal Rule of Civil Procedure 8(a)(2)

Defendants raise the alternative argument that the FAC engages in impermissible group pleading in violation of Federal Rule of Civil Procedure 8.  (ECF No. 33 at 11–13).  Stewart counters that because Defendants were engaged in the same wrongful conduct as part of a "single

16

integrated enterprise," his use of "Defendants" in the FAC is permissible under the rule.  (ECF No. 36 at 7–8).

Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While this rule "does not require 'detailed factual allegations,'" it does "'demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  A complaint that relies on "group pleading" and "fail[s] to differentiate as to which defendant was involved in the alleged unlawful conduct [is] insufficient to state a claim."  Adamou v. Cty. of Spotsylvania, Va., No. 12 Civ. 7789 (ALC) (SN), 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016); see Atuahene v. City of Hartford, 10 F. App'x. 33, 34 (2d Cir. 2001) (plaintiff cannot merely "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct").

As set forth in Section IV.B, infra, the Court finds that Stewart has sufficiently alleged facts to support the plausible inference that Andrés was his employer for purposes of FLSA.  As to the Corporate Defendants, however, Stewart "do[es] not allege which of the defendants or agents of those defendants engaged in the" wage-and-hour violations.  Ochre LLC v. Rockwell Architecture Planning & Design, P.C., No. 12 Civ. 2837 (KBF), 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012).  The Court cannot discern from the FAC whether Stewart contends that the "decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules" that he claims violates the FLSA and the NYLL were imposed by Hudson Hall, Holdings, or Think.  (ECF No. 26 ¶ 20).  Stewart's reference to "Defendants' corporate-wide policies and practices" is similarly deficient in advising as to which Defendant's policies and practices are implicated.  (Id.

¶ 25).  Accordingly, the failure of the FAC to comply with the minimal requirements of Rule 8(a)(2) as to the Corporate Defendants is an additional ground for dismissal of his claims against them.

### B.  **The FAC Adequately Alleges That Andrés Was Stewart's Employer.**

Stewart seeks to hold Andrés, "an owner and principal of the Corporate Defendants," liable as his employer.  (ECF No. 26 ¶ 14).  Stewart argues that, in addition to alleging that Andrés had the "power to supervise, hire, fire, control work schedules and control compensation," he has also alleged specific examples in which Andrés actually exercised that control.  (ECF No. 36 at 11).  For example, Stewart attaches to the FAC a Twitter message from Andrés in which he stated that he "fulfilled [his] dream to open in New York," but "apologize[d]" to employees who were "underpaid" due to "a glitch" in how wages were paid and asserted that employees "know they can come to us with any issue."  (ECF No. 26-2 at 2).  Stewart also attaches to the FAC an April 2020 "Message from Jose Andrés" on behalf of Mercado Little Spain describing a reduced operating schedule due to COVID-19 and representing that employees "will be provided with paid leave and current health benefits for at least the first two weeks."  (ECF No. 26-3 at 2).

Defendants argue that it is "absurd" to "suggest that these allegations plausibly show that [] Andrés had **actual** control over any business operations or payroll practices or any role in the alleged FLSA and NYLL violations at issue."  (ECF No. 33 at 15) (emphasis in original).  They suggest that the April 2020 "Message from Jose Andrés" and Twitter message show Andrés "acting as a spokesperson for Mercado Little Spain," not that he had actual control over business operations or payroll, and that the FAC fails to allege Andrés had control over any business operations or payroll practices specific to Stewart.  (Id.)

To state a claim under the FLSA against an individual defendant, a plaintiff must allege that he "possessed the power to control the workers in question." Herman, 172 F.3d at 139.  A FLSA plaintiff is not required to show that the individual defendant "directly c[a]me into contact with the plaintiffs, their workplaces, or their schedules," Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013), but conclusory assertions based on information and belief or the individual defendant's title alone are insufficient.  See Ayala, 2016 WL 3541548, at *5 (dismissing claim against individual defendant that relied only on his status as an "office, shareholder, and manager"); Xue Lian Lin v. Comp. Health Mgmt., Inc., No. 08 Civ. 6519 (PKC), 2009 WL 976835, at *2 (S.D.N.Y. Apr. 9, 2009) (collecting cases dismissing FLSA claims against individual defendants predicated on conclusory allegations based on title alone); see also Apolinar, 2016 WL 2903278, at *5 (dismissing claims against individual defendant where complaint was "devoid of any non-conclusory allegations suggesting that [she] exercised any degree of control over the particular [] location that employed plaintiffs, or that she otherwise had any direct relationship of control over plaintiffs' terms and conditions of employment.").

The allegations in the FAC distinguish this case from those in which other district courts "have held that mere boilerplate allegations that an individual meets the various prongs of the economic reality test are insufficient to survive a motion to dismiss." Chui-Fan Kwan v. Sahara Dreams Co. II Inc., No. 17 Civ. 4058 (RA), 2018 WL 6655607, at *4 (S.D.N.Y. Dec. 19, 2018) (citing Bravo, 2013 WL 5549495, at *7); Solis, 2020 WL 1439744, at *8 (dismissing claim against individual defendant where the complaint "simply recite[d] in conclusory fashion the statutory factors").  Here, Stewart does not "merely" allege that Andrés was an owner or officer of the Corporate Defendants, Chui-Fan Kwan, 2018 WL 6655607, at *4, but points to specific examples

of Andrés' exercise of control over employees.  In his public statement on Twitter, after aligning himself with Mercado Little Spain — "This year I fulfilled my dream to open in New York." — Andrés acknowledged an error in how some of its employees were paid and represented that "[w]e're correcting it today."  (ECF No. 26-2 at 2).  In addition, he included himself in those who made the "difficult decision to temporarily close Mercado Little Spain" due to COVID-19, before detailing the modified operating schedule and reassuring employees about their continued pay and benefits.  (ECF No. 26-3 at 2).  These statements indicate not that Andrés had "simply operational control of" Mercado Little Spain, but that he had "operational control over employees" insofar as his "role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment."  Irizarry, 722 F.3d at 109–10.  As the Second Circuit has explained, status as an employer "does not require continuous monitoring of employees."  Herman, 172 F.3d at 139 (quoting Donovan, 672 F.2d at 531).  Accordingly, because Stewart's allegations "establish that the 'economic reality' of the relationship between" Andrés and employees like Stewart "was one of control," Stewart has sufficiently alleged that Andrés was his employer for FLSA purposes to survive the Motion.  Lopez, 2012 WL 6062501, at *6 (denying motion to dismiss claims against individual defendants); see Perez, 2013 WL 749497, at *7 (denying motion to dismiss where "at this stage of the litigation, Plaintiffs have offered sufficient factual matter to be 'entitled to offer evidence to support [their] claims'") (quoting Sikhs for Justice v. Nath, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012)).

C. **Stewart Should Be Granted Leave to Amend.**

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave is typically granted absent

"undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . futility of amendment, etc." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).

Stewart's prior amendment took place before Defendants' Motion and without the benefit of a pre-motion conference in which the Court and the parties might have explored the flaws in his pleading described above.  <u>See</u> <u>Amer. Sales Co., Inc. v. AstraZeneca AB</u>, No. 10 Civ. 6062 (PKC), 2011 WL 1465786, at *6 (S.D.N.Y. Apr. 14, 2011) (granting leave to amend where "the abundant flaws in the current pleading were not previously explored by the Court in a pre-motion conference.").  The record also does not demonstrate any of the factors described by the Supreme Court in <u>Foman</u> as cautioning against amendment.  Because it may be possible for Stewart to supplement his allegations to remedy the deficiencies identified above, the Court respectfully recommends that dismissal be without prejudice and that Stewart be given leave to file a Second Amended Complaint.  <u>See</u> <u>Acharya</u>, 2019 WL 6830203, at *3 (granting leave to amend); <u>Chui-Fan Kwan</u>, 2018 WL 6655607, at *4 (granting leave to amend).

V.   **CONCLUSION**

For the reasons set forth above, the Court respectfully recommends that Defendants' Motion be GRANTED in part, to the extent that the claims against Holdings and Think be dismissed without prejudice, and DENIED in part as to the claims against Andrés.  The Court also recommends that Plaintiff be GRANTED one final opportunity to amend his pleading to remedy the deficiencies set forth above.

Dated:        New York, New York
              October 19, 2020

                                                    _____
                                                    SARAH L. CAVE
                                                    United States Magistrate Judge

*                    *                    *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Gardephe.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).