**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DERRICK STEWART,
*on behalf of himself, FLSA Collective Plaintiffs,*
*and the Class,*

Plaintiff,

v.

HUDSON HALL LLC
      d/b/a MERCADO LITTLE SPAIN,
HUDSON HALL HOLDINGS LLC
      d/b/a MERCADO LITTLE SPAIN,
THINK FOOD GROUP, LLC,
and JOSÉ RAMON ANDRÉS PUERTA
      a/k/a JOSÉ ANDRÉS,

Defendants.

**Case No**. 1:20-cv-00885-PGG-SLC

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**216(b) MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE**

Lee Litigation Group, PLLC
C. K. Lee, Esq. (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs*
*and the Class*

## TABLE OF CONTENTS

EXHIBITS ..................................................................................................................... iii

TABLE OF AUTHORITIES ........................................................................................ iv

I.      PRELIMINARY STATEMENT ...................................................................1

II.     DEFENDANTS OPERATE AS A SINGLE INTEGRATED
        ENTERPRISE...............................................................................................1

        A.     Related Activities........................................................................ 2

        B.     Common Control ......................................................................... 5

        C.     Common Business Purpose.......................................................... 6

III.    PLAINTIFF'S FLSA COLLECTIVE ACTION CLAIMS .................................7

IV.     PLAINTIFF IS SIMILARLY SITUATED AS COVERED EMPLOYEES ..................11

V.      ARGUMENT................................................................................................14

        A.     THE COURT SHOULD CERTIFY THE COLLECTIVE ACTION AND ORDER
               NOTICE.................................................................................... 15

               i.      The Standard for Conditional Certification and Notice Is
                       Lenient ............................................................................15

               ii.     The Underlying Merits of the Case are Immaterial to the
                       Determination of Conditional Certification and Notice...........................17

               iii.    Plaintiff Has Made the Modest Factual Showing Required
                       for Conditional Certification...............................................18

        B.     EARLY NOTICE TO 'SIMILARLY SITUATED' EMPLOYEES IS
               APPROPRIATE AND NECESSARY................................................. 18

               i.      Sending Expedited Notice to "Similarly Situated"
                       Employees Fulfills the FLSA's Broad Remedial Purposes ......................19

        C.     DISCOVERY OF NAMES, ADDRESSES AND TELEPHONE NUMBERS IS
               PROPER AND NECESSARY UNDER § 216(b) ................................. 20

        D.     THE PROPOSED NOTICE IS FAIR AND ADEQUATE ................................. 21

        E.     NOTICE SHOULD BE TRANSLATED TO SPANISH .................................... 21

VI.   CONCLUSION............................................................................................................21

**EXHIBITS**

**EXHIBIT A –** Defendants' Shared Website

**EXHIBIT B –** Defendants' Branding Strategy for Mercado Little Spain

**EXHIBIT C –** Deposition of Jose Ayala

**EXHIBIT D** – Deposition of Michael Principe

**EXHIBIT E** – Defendants' 2019 Wage Notice Statements for Plaintiff and Plaintiff's Paystubs

**EXHIBIT F –** Defendants' Schedule for Plaintiff

**EXHIBIT G –** Defendants' Notice Closing All of Mercado Little Spain

**EXHIBIT H –** Twitter Statement Acknowledging Companywide Glitch Causing Some
Employees to be Underpaid/Paystub Demonstrating Plaintiff Not Paid Overtime
Premium

**EXHIBIT I** – Timesheets Establishing That Breaks Under 20 Minutes Were Not Compensated

**EXHIBIT J** – Plaintiff's Proposed Form of Collective Notice

# TABLE OF AUTHORITIES

## CASES

*Anglada v. Linens 'N Things, Inc.*, No. 06 Civ. 12901, 2007 WL 1552511 (S.D.N.Y. Apr. 26, 2007) ............................................................................................................. 15, 18, 20

*Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504 (S.D.N.Y. 1998) (Sotomayor, J.)) ..... 2, 3, 5

*Braunstein v E. Photographic Labs.*, 600 F.2d 335 (2d Cir. 1978) ............................................. 19

*Brennan v. Arnheim & Neely*, 410 U.S. 512 (1973) ................................................................... 2

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) .................................................................. 22

*Chao v. Gotham Registry, Inc.*, 514 F.3d 280 (2d Cir. 2008)................................................ 21, 22

*Cook v. United States*, 109 F.R.D. 81 (E.D.N.Y. 1985) ............................................................ 19

*Cuzco v. Orion Builders, Inc.*, 477, F. Supp. 2d 628 (S.D.N.Y. 2007)...................... 15, 16, 20, 21

*D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)..................................................................... 22

*Dumitrescu v. Mr. Chow Enters., Ltd.*, No. 07 Civ. 3601, 2008 U.S. Dist. LEXIS 49881 (S.D.N.Y. June 30, 2008)........................................................................................... 17

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007)...................... passim

*Foster v. Food Emporium*, No. 99 Civ, 3860, 2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. Apr. 26, 2000) .................................................................................................................... 19

*Garcia v. Chipotle Mexican Grill, Inc.*, 2016 U.S. Dist. LEXIS 153531 (S.D.N.Y. Nov. 4, 2016) ............................................................................................................................... 11

*Garriga v. Blonder Builders Inc.*, No. CV 17-497 (JMA) (AKT), 2018 U.S. Dist. LEXIS 171887 (E.D.N.Y. Sep. 28, 2018).......................................................................................... 11

*Gjurovich v. Emmanuel's Marketplace*, 282 F. Supp. 2d 91 (S.D.N.Y. 2003) ............... 17, 20, 21

*Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340 (E.D.N.Y. 2012) .................... 14

*Hallissey v. Amer. Online, Inc.*, No. 99 Civ. 3785, 2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008) ............................................................................................................ 15

*Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651 (S.D.N.Y. 2013) ................................................ 13

*Harhash v. Infinity West Shoes, Inc.*, No. 10 Civ. 8285, 2011 U.S. Dist. LEXIS 96880 (S.D.N.Y. Aug. 24, 2011) ...................................................................................................... 13

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997)......................................... 16, 18, 20

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).................................................. 18, 19

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007).................... 15, 16, 19

*Iriarte v. Redwood Deli & Catering, Inc.*, No. 07 Civ. 5062, 2008 WL 2622929 (E.D.N.Y. June 30, 2008) ................................................................................................................. 13

*Jason v. Falcon Data Com, Inc.*, No. 09 Civ. 03990, 2011 WL 2837488 (E.D.N.Y. 2011)........ 12

*Juarez v. 449 Restaurant, Inc.*, No. 13 Civ. 6977, 2014 WL 3361765 (S.D.N.Y. July 2, 2014) ... 7

*Khalil v. Original Homestead Rest., Inc.*, No. 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372 (S.D.N.Y. Aug. 9, 2007)........................................................................................ 12, 16

*Khamsiri v. George. & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265, 2012 WL 1981507 (S.D.N.Y. June 1, 2012)......................................................................................... 13

*Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346 (E.D.N.Y. 2008) ................................... 17

*Lee v. ABC Carpet Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) .......................................... 16, 20, 21

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007) ............................... 18

*Machuca v. Villaggio Catering Corp.*, No. 14 Civ. 3508, Dkt. No. 43 (E.D.N.Y. Jan. 12, 2015). 7

*Masson v. Ecolab, Inc.*, No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005) ................................................................................................................... 17

*Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194, 2005 WL 3240472 (S.D.N.Y. Nov. 29, 2005) ................................................................................................................................. 16, 17

*Mentor v. Imperial Parking Sys.*, 246 F.R.D. 178 (S.D.N.Y. 2007)....................................... 15, 17

*Moore v. Eagle Sanitation Inc.*, 276 F.R.D. 54 (E.D.N.Y. 2011).................................................. 13

*Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942) .................................................... 22

*Patton v. Thomson Corp.*, 364 F. Supp. 2d 263 (E.D.N.Y. 2005) ............................................... 20

*Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 0002, 2008 U.S. Dist. LEXIS 81082 (S.D.N.Y Oct. 8, 2008) .................................................................................................................................... 13

*Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303 (S.D.N.Y. 1998) ................................................. 16

*Sanchez v. Gansevoort Mgmt. Grp., Inc.*, No. 12 Civ. 75, 2013 U.S. Dist. LEXIS 9739 (S.D.N.Y. Jan. 10, 2013)........................................................................................................................... 13

*Sherrill v. Sutherland Global Servs.*, 487 F. Supp. 2d 344 (W.D.N.Y. 2007)............................. 20

*Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319, 2006 U.S. Dist. LEXIS 24318 (S.D.N.Y. Apr. 24, 2006) ........................................................................................................................... 12

*Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28. 2007) .............................................................................................................. 16, 17, 19

*Winfield v. Citibank, N. Am.*, 843 F. Supp. 2d 397 (S.D.N.Y. 2012) .......................................... 13

*Young v. Cooper Cameron Corp.*, 229 F.R.D. 50 (S.D.N.Y. 2005) ............................................ 18

*Zhao v. Benihana, Inc.*, No. 01 Civ. 1297, 2001 U.S. Dist. LEXIS 10678 (S.D.N.Y. May 7, 2001) .................................................................................................................................... 12, 16

## STATUTES

29 C.F.R. § 770.221 ...................................................................................................................... 5

29 C.F.R. § 779.206 ...................................................................................................................... 2

29 U.S.C. § 202 ........................................................................................................................... 22

29 U.S.C. § 203(r)......................................................................................................................... 2

29 U.S.C. § 206 ........................................................................................................................... 22

29 U.S.C. § 207 ........................................................................................................................... 22

29 U.S.C. § 216(b) ...................................................................................................................... 19

29 U.S.C. § 255 ........................................................................................................................... 19

29 U.S.C. § 256 ........................................................................................................................... 19

## RULES

Fed. R. Civ. P. 23 .......................................................................................................................... 1

## I.     PRELIMINARY STATEMENT

On January 31, 2020, Plaintiff DERRICK STEWART ("Plaintiff") filed a Class and Collective Action Complaint against HUDSON HALL LLC d/b/a MERCADO LITTLE SPAIN ("Corporate Defendants"), HUDSON HALL HOLDINGS LLC d/b/a MERCADO LITTLE SPAIN, THINK FOOD GROUP, LLC, and JOSÉ RAMON ANDRÉS PUERTA a/k/a JOSÉ ANDRÉS ("Individual Defendant," and together with Corporate Defendants, "Defendants"), seeking unpaid wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiff brought the FLSA claims on behalf of himself and all current and former non-exempt employees (including line cooks, cooks, food preparers, stock persons, counterpersons, porters, dishwashers, food runners), employed by Defendants within the last six (6) years ("Covered Employees"). The Class and Collective Action Complaint seeks to recover the relief set forth in the Plaintiff's Proposed Order submitted with this Motion.[1]

## II.    DEFENDANTS OPERATE AS A SINGLE INTEGRATED ENTERPRISE

Defendants collectively own and operate the Spanish themed marketplace known as "Mercado Little Spain," which consists of the following restaurants, bars, and kiosks, located at 10 Hudson Yards, New York, NY 10001:

a.  Restaurants: Leña, Mar, and Spanish Diner (collectively, the "Restaurants");

b.  Bars: (Spanish) Diner Bar, Vinos, and Bar Celona (collectively, the "Bars");

c.  Kiosks: Bar Manolo, Bocatas & Empanadas, Bravas, Churros, Cocas, Frutas & Verduras, Granja, Helados, Jamón & Queso, La Barra, Paella al Plato, Pasteles,

---

[1] Plaintiff does not currently seek class certification of his state law claims under Fed. R. Civ. P. 23 ("Rule 23").

Pescados & Mariscos, Pulpo y Mejillones, and Tortilla de Patatas (collectively, the "Kiosks").

The Restaurants, Bars, and Kiosks at Mercado Little Spain are all located in the same location, and together comprise a marketplace intended to mirror market halls located throughout Spain. Mercado Little Spain is a Spanish market similar in concept and design to Eataly, which is an Italian style market place offering a variety of restaurants, food and beverage counters, bakery, retail items. The Restaurants, Bars, and Kiosks, which comprise the Mercado Little Spain market hall, serve as subsets, divisions, or departments of Mercado Little Spain, and are all commonly owned and operated by Defendants.

While the aesthetic and design of Mercado Little Spain is intended to replicate a traditional Spanish marketplace and thereby create the illusion of a multitude of venders, Defendants operate the Mercado Little Spain as a single integrated enterprise within the meaning of the FLSA. The FLSA provides that the term, "[e]nterprise means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all activities whether performed in one or more establishments . . . ." 29 U.S.C. § 203(r). The three elements to be satisfied are (1) related activities, (2) common control and (3) common business purpose. *See Brennan v. Arnheim & Neely*, 410 U.S. 512, 518 (1973); *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504 (S.D.N.Y. 1998) (Sotomayor, J.)).

### A.   <u>Related Activities</u>

"Related activities" are those which are "the same or similar," or are "auxiliary or service activities." *Archie*, 997 F. Supp. at 525 (quoting 29 C.F.R. § 779.206(a)). Auxiliary and service activities include "all activities which are necessary to the operation and maintenance of the particular business, such as warehousing, bookkeeping, or advertising." *Id*. Business entities that

provide "mutually supportive services to the substantial advantage of each entity" are operationally interdependent and may be treated as a single enterprise under the FLSA. *Id.*

- All the Restaurants, Bars, and Kiosks share a common website where they advertise that marketplace that comprises Mercado Little Spain, all serve serving "Iberian" food items. *See* p. 1-5 of joint webpage MERCADO LITTLE SPAIN, attached hereto as **Exhibit A**

- The Restaurants' menus are exhibited when the Website-visitor clicks on each of the Restaurant links on the Website. *See* **Exhibit A,** p. 1-5.

- All the Restaurants, bars, and Kiosks share a common branding and advertising goals, which demonstrates a common uniform and common training across the Restaurants, Bars, and Kiosks that comprise Mercado Little Spain. *See* Mercado Little Spain's Branding Strategy Guide attached hereto as **Exhibit B**. Jose Ayalo, the head chef at Mercado Little Spain, confirms that there is a single individual responsible for all Little Spain marketing, as well as a single "concept chef responsible for Mercado." **Exhibit C**, Deposition of Jose Ayala ("Ayala Dep") 11: 7-9, 17: 22-24.

- Employees are interchangeable among the Restaurants, Bars, and Kiosks, and in fact Plaintiff STEWART began his employment with Defendants at the Leña Restaurant, but was later transferred to the Frutas & Verduras Kiosk, and then subsequently the Spanish Diner Restaurant. *See* Declaration of Derrick Stewart ("Stewart Decl.") ¶¶ 1-4. This is confirmed by Michael Principe, the executive director of Mercado Little Spain. **Exhibit D**, Deposition of Michael Principe ("Principe Dep.") 61:16–62:5. Mr. Ayalo acknowledges that employees routinely transfer between the various departments of Mercado Little Spain. **Exhibit C**, Ayala Dep. 15:22 – 16:3.

- The Restaurants, Bars, and Kiosks share payroll methods and have a single, centralized system of labor relations for employees. When Plaintiff STEWART was transferred from employment at the Leña Restaurant to the Spanish Diner Restaurant, Defendants paid him through the same corporate entity, Defendant HUDSON HALL, LLC, Defendants used the same bookkeeping methods, which included the same timekeeping system and same schedule keeping system, regardless of where in Mercado Little Spain Plaintiff and other employees worked. *See* Plaintiff's paystubs and schedule attached respectively as **Exhibit E** and **Exhibit F**. Mr. Ayala confirms that all employees are paid through Hudson Holdings LLC, **Exhibit C**, Ayala Dep. 20: 19-22, and that hiring for all Mercado Little Spain jobs takes place through the same online platform, Harri, Ayala Dep. 100: 9-12, which manages "hiring, scheduling, and clocking in" for Mercado Little Spain. Ayala Dep. 73: 4-5. Asked whether all the employees at Mercado Little Spain "work for the same company," Mr. Ayala responded, "Correct." Ayala Dep 14: 4-8. In the same vein, Mr. Principe has confirmed that "all the kiosks, bars, and restaurants that comprise Mercado Little Span are operated by Hudson Hall LLC, that all the employees are paid by Hudson Hall LLC, and that Hudson Hall LLC has a "centralized HR department." **Exhibit D**, Principe Dep. 42: 3-21.

- All the Restaurants, Bars and Kiosks offer their venues for private parties and events on one (1) common Website. See **Exhibit A,** p. 6 & 17-21.

- All the Restaurants, Bars and Kiosks share the same social media accounts, using the same brand name and logo. See **Exhibit A,** p. 20.

- All the Restaurants' locations and hours of operation may be accessed from the joint website by clicking on the individual restaurants. See **Exhibit A**.

4

- All the Restaurants share a common "Contact Us" webpage on the Website, where all the Restaurants share one (1) common inquiry form, phone number, and email address through which questions can be submitted about any of the Restaurants. See **Exhibit A** p. 24.

- All the Restaurants jointly sell one (1) common gift card that is available for use at any of the Restaurants. See **Exhibit A** p. 34-35; **Exhibit C**, Ayala Dep. 91: 16-25.

- Employment positions for all the Restaurants are jointly listed and may be applied for through the shared Website. See **Exhibit A**.

- All the Restaurants offer reservations on one (1) common Website. See **Exhibit A** p. 26.

Since the foregoing facts demonstrate "mutually supportive services to the substantial advantage of each entity," the first prong is satisfied.

### B.   <u>Common Control</u>

"Control" is the power to "direct, restrict, regulate, govern, or administer the performance" of the related activities, and "common control" exists "where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together." *Archie*, 997 F. Supp at 526 (quoting 29 C.F.R. § 770.221).

- As stated above, Defendants jointly operate the Restaurants and its employees. Individual Defendant helped make the "difficult decision to temporarily close Mercado Little Spain" due to COVID-19, helped determine the modified operating schedule and helped determine employees' continued pay and benefits.  *See* Defendants' Notice Closing all of Mercado Little Spain attached hereto as **Exhibit G**.

- Individual Defendant helped correct a system wide glitch effecting the proper payment of employees at Mercado Little Spain.  *See* **Exhibit H**.

- Defendant HUDSON HALL LLC, d/b/a MERCADO LITTLE SPAIN, manages Mercado Little Spain's payroll, and appears on as the employer on weekly pay statements. *See* **Exhibit E**.

- Defendant THINK FOOD GROUP, LLC, holds itself out to be an employer of Mercado Little Spain and is lists itself as an employer in Plaintiff and other employees wage notices. *See* **Exhibit E**. Mr. Principe confirms that Mercado Little Spain has a "centralized finance department" in Washington, D.C. **Exhibit D**, Principe Dep. 43: 4-16.

- Defendants JOSE ANDRES and THINK FOOD GROUP, LLC, established the training materials used by all employees of Mercado Little Spain. *See* **Exhibit B.**

Based on the common ownership of Defendants, and the collective management of their employees, Defendants satisfy this second prong of "common control."

### C.   <u>Common Business Purpose</u>

The common business purpose prong is satisfied because, as demonstrated by the attached deposition transcripts, Defendants collectively operated the Restaurants and managed all employees who worked at the Restaurants. Asked whether Defendants' managers "would be commended for having low cost and high margins," **Exhibit D**, Principe Dep. 72: 2-4, Mr. Principe responded that Mercado Little Spain is "a a full financial entity," clarifying that "kiosk wasn't against restaurants or versus restaurants versus bars. It was one entity." Principe Dep. 73: 10-16. In the same vein, Mr. Ayalo also acknowledged that bonuses are distributed on the basis of the overall performance of Mercado Little Spain, not based on that of its subdivisions. **Exhibit C**, Ayala Dep 65: 12-14.

The foregoing establishes that Defendants operate the Restaurants such that they are collectively (1) engage in related activities, (2) exercise common control, and (3) serve a common

business purpose. Because Defendants operate the Restaurants as a single integrated enterprise, this conditional collective certification is appropriate for employees of Defendants' Restaurants *See Machuca v. Villaggio Catering Corp.*, No. 14 Civ. 3508, Dkt. No. 43 (E.D.N.Y. Jan. 12, 2015) (granting plaintiffs' motion for FLSA collective certification for different stores based on common ownership, logo, menu and website on which defendants advertise all locations); *Juarez v. 449 Restaurant, Inc.*, No. 13 Civ. 6977, 2014 WL 3361765, at *4-5 (S.D.N.Y. July 2, 2014) (inferring that unlawful pay policies implemented at one store extended to other locations because all stores were run as an "integrated enterprise" with common ownership and same menu, décor and website).

### III.    PLAINTIFF'S FLSA COLLECTIVE ACTION CLAIMS

Plaintiff Derrick Stewart was employed by Defendants as a line cook at Mercado Little Spain. Plaintiff began his employment with Defendants on or about March 1, 2019 and ended in or around September 2019. Stewart Decl. ¶¶1-6. During Plaintiff's employment, Plaintiff and Covered Employees suffered significant wage and hour violations. As detailed below, Defendants time-shaved Plaintiff and Covered Employees by requiring Plaintiff and Covered Employees to perform off-the-clock work before the beginning and after the end of their scheduled work shifts. Stewart Decl. ¶¶ 8–14. In addition, Plaintiff and Covered Employees suffered from Defendants' policy of failing to pay proper overtime premiums and failing to compensate employees for breaks lasting less than twenty (20) minutes all in violation of the FLSA. *See Id.,* **Exhibit I**; Stewart Decl. ¶¶ 7, 15.  Plaintiff personally observed that other workers employed by Defendants were subject to the same unlawful policies and has identified coworkers who can speak to these. Stewart Decl. ¶¶ 16-21.

Defendants failed to properly pay employees' overtime premiums.  As an example for the week of May 20, 2019 through May 26, 2019, Defendants' paid Plaintiff seventeen dollars

($17.00) for all fifty-two-point-nine-four (52.94) hours that Plaintiff was recorded as working. Defendants' improperly paid Plaintiff at a straight time rate for those hours worked.  Moreover, Defendants indicated there was a company wide glitch, effecting many of Plaintiff's coworkders, which caused this non-payment of overtime.  *See* **Exhibit H** p.1; Stewart Decl. ¶ 7.

Defendants own documents demonstrate company-wide violations of the FLSA.  It is clear from Defendants' own records that Defendants failed to compensate Plaintiff and his coworkers for breaks lasting less than twenty (20) minutes as is required by the FLSA. *See* **Exhibit I**; Stewart Decl. ¶ 15.[2]

Defendants required employees to spend considerable time dressing and locking away required equiptment in the company lockerroom before each working day. Little Spain Marketplace required employees to use the uniforms provided daily by Mercado Little Spain.  The uniform was for aesthetics, and because employees were in the food-industry, to ensure cleanliness of those handling food. Stewart Decl. ¶ 9. As Little Spain Marketplace has hundreds of employees, the wait for the locker-room to change was significant, especially as the locker was co-ed, with cameras inside. For those wanting privacy to change you were required to use the bathroom stalls, the use of which required an even longer wait. Stewart Decl. ¶ 9.[3]

---

[2] Asked "And you're not paid for the 15 minutes that you're on break, then, correct?", Mr. Principe responded "Yes, correct." **Exhibit D**, Principe Dep. 106:18-21.

[3] Mr. Principe acknowledged that the employee locker room contains two bathrooms where employees can change into their uniforms and that prior to the onset of the pandemic there were some seventy-five (75) employees who would need to change prior to each shift. **Exhibit D**, Principe Dep. 90: 8-19. The undue time spent preparing for work, and *waiting* to prepare for work, is also acknowledged by Mr. Principe when he affirms that the following characterization is accurate: "But everybody else that was working at Mercado Little Spain, they have to go through the entrance, right, on 30th Street between 10th and 11th Avenue, walk to the locker room, wait because other people are changing. And then once other people finish changing and then they change, then they can walk to their individual punch-in/punch-out clock at their workstation, right?" Principe Dep. 86: 16 – 87:2.

Workers, such as kitchen workers, were required to bring and store their own equiptment, such as knives. Workers had to spend time each day finding a locker to stow the equiptment, so it would be available for use should Mercado Little Spain require its use. Moreover, Plaintiff's and his co-workers' clock-in area was at a significant distance from the locker room where employees were required to begin their day. Additionally, managers would often ask Plaintiff and other employees to assist on various tasks as soon as they left the locker room and before they could reach their workstations to clock-in, so this work also went uncompensated.[4] Due to Defendants' policies Plaintiff and his co-workers were required to spend significant pre-shift uncompensated time doing this preparatory work on behalf of Defendants. Plaintiff and his coworkers spent an average of fifteen (15) to twenty (20) minutes at the beginning of each shift on these uncompensated activities. Stewart Decl. ¶ 10. They also spent an average of ten (10) to fifteen (15) minutes at the end of their shifts walking back to locker rooms and waiting to change out of their uniforms. Stewart Decl. ¶ 14.

Defendants had a policy where employees could only clock-in within five (5) minutes of the scheduled start and end of their shifts. If employees attempted to clock in or out outside of this narrow window, they required a manager's approval, since the system would not recognize them as having clocked in or clocked out without facially recognizing a manager.  Stewart Decl. ¶ 11.

This policy led to significant time shaving at the beginning of employee shifts.  Because it was difficult to find managers to make their way to a machine and clock arriving employees in, Plaintiff and his coworkers would have to begin their workday without clocking in at least three or four days a week. Even when they did succeed in clocking in, they would have to spend at least

---

[4] Mr. Principe acknowledges that Mercado Little Spain is a "pretty big facility" and that employees leaving the locker room who had not yet clocked in could be asked to "pick up this and that for [a supervisor] on [their] way back to the workstation." **Exhibit D**, Principe Dep. 81: 24 – 82: 6.

10-15 minutes looking for an available manager to enable this.[5] Employees would write down the actual time when they started working and later give it to a manager to input into the system. But less time would be inputted into the system than they had actually worked. Stewart Decl. ¶ 12.

Defendants would exploit the narrow window on clocking in and out to shave time at the end of employee shifts, too. Since practically no one was ready to clock-out within five (5) minutes of the scheduled time, employees would nearly always need managerial approval. Managers would then want to clock them out all at the same time, so as not to have to deal with the issue again. Once they did that, however, they would ask us employees to stay on and complete various necessary tasks, like cleaning and scrubbing the floor, and promised to add the additional time to their timesheets. But this was never done.[6] Plaintiff and his coworkers were usually expected to perform these off-the-clock work tasks for thirty (30) minutes after the close of each scheduled shift, four (4) times per week. As a result, they performed an average of two (2) hours of off-the-clock work each week. Stewart Decl. ¶ 13.

---

[5] Mr. Ayala could not rule out that employees might have to wait a significant amount of time before obtaining managerial approval to clock-in. Asked whether it was possible that employees would wait (5) minutes for managerial approval, he responded, "I don't know what's possible." **Exhibit C**, Ayala Dep. 76: 24 – 77: 5.

[6] Mr. Ayala acknowledged that employees who have not finished cleaning their workstations when their shift ends are required to stay on past their scheduled shift. **Exhibit C**, Ayala Dep. 117: 18-21, 118: 7-9. Mr. Ayala also acknowledged that "it is required for them to ask for approval to clock out," Ayala Dep. 71: 16-17, if this is going to be more than five minutes past the end of a scheduled shift. *See* Ayala Dep. 116: 3-5. Plaintiff's allegation that employees would be clocked out collectively at the same time rather than when they individually finished working is confirmed by Mr. Principe, who observes that "you're not stopping your job to say to your supervisor, 'Can I work these two hours doing what the business needs?,'" **Exhibit D**, Principe. Dep. 119: 3-6, and that, in his experience, "an employee would not ask a supervisor 'Can I stay later?'" This is because it was simply par for the course for employees to stay on and complete tasks after having been clocked out collectively by a manager. That is, employees did not individually ask to continue working, receive individual permission to do so, and then later get clocked out by the manager who had given the approval—a system that would have led to more accurate timekeeping. The only purpose of the narrow window for clocking in and out was to generate various pretexts on whose basis to time shave employees.

In addition, Plaintiff and other employees did not receive a wage and hour notices as required under New York Labor Law, and Defendants never informed them of how to obtain one. Stewart Decl. ¶ 22.While Plaintiff and other employees received weekly wage statements from Defendants, these statements failed to state the correct number of hours that that each employee had worked, due to Defendants' time shaving policies. Stewart Decl. ¶ 23.

## IV.        PLAINTIFF IS SIMILARLY SITUATED AS COVERED EMPLOYEES

Through this Motion, Plaintiff seeks to represent a collective class of employees under the FLSA comprised of all non-exempt workers employed by Defendants in the last six (6) years. *See Garcia v. Chipotle Mexican Grill, Inc.*, 2016 U.S. Dist. LEXIS 153531, *27-29 (S.D.N.Y. Nov. 4, 2016) (this Court "conditionally certify[ing] this case as a citywide collective action . . . as to Plaintiff's time shaving claim under the FLSA."). *See Garriga v. Blonder Builders Inc.,* No. CV 17-497 (JMA) (AKT), 2018 U.S. Dist. LEXIS 171887 at *15–17 (E.D.N.Y. Sep. 28, 2018) (granting conditional collective certification for six (6) years from the date of the filing of the Complaint as "[m]ultiple courts in the Eastern District, including this Court have held that in some circumstances where a case involves both NYLL and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely NYLL claims.") (internal citations omitted).

Based on Plaintiff's personal observations and conversations with co-workers, all other Covered Employees employed by Defendants were subject to all the same unlawful employment practices described above. Stewart Decl. ¶¶ 16-21. Due to Defendants' improper payment of overtime and improper time-shaving, Plaintiff and FLSA Collective Plaintiffs are owed their proper wages for all hours worked, including those at the overtime premium for hours worked in excess of forty (40) hours per week. *Id.* In his Declaration, Plaintiff lists the following six (6) co-

workers with whom he spoke or observed suffering from Defendants' policy of time-shaving and rounding of hours:

| Name | Position | Location |
|------|----------|----------|
| Shana Ramington | Line Cook | Lena and Mar |
| Shannon Brown | Line Cook | Spanish Diner |
| Stephanie Cantao | Line Cook | Spanish Diner |
| Jerry [LNU] | Porter | Various Locations |
| Quana [LNU] | Barista | Unknown |
| Xavier Scott [LNU] | Line Cook | Lena and All Kiosks |

*See* Stewart Decl. ¶ 17.

Plaintiff's allegations in the Complaint and Plaintiff's Declaration are sufficient to make a modest factual showing to support conditional certification. *See, e.g.*, *Khalil v. Original Homestead Rest., Inc.*, No. 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372 at *3 (S.D.N.Y. Aug. 9, 2007) (certifying collective action based upon complaint and one affidavit); *Sipas v. Sammy's Fishbox, Inc*., No. 05 Civ. 10319, 2006 U.S. Dist. LEXIS 24318, at *8 (S.D.N.Y. Apr. 24, 2006) (certifying collective action based upon complaint and affidavits); *Jason v. Falcon Data Com, Inc*., No. 09 Civ. 03990, 2011 WL 2837488 (E.D.N.Y. 2011) (certifying collective action based upon complaint and one affidavit); *Zhao v. Benihana, Inc*., No. 01 Civ. 1297, 2001 U.S. Dist. LEXIS 10678, at *2 (S.D.N.Y. May 7, 2001) (certifying based upon one affidavit founded on plaintiff's "best knowledge").

Plaintiff's Declaration attests to Defendants' common policies of FLSA violations. Plaintiff's own experiences and best knowledge based on his personal observations and conversations shared with Covered Employees sufficiently support their assertions that Defendants uniformly applied unlawful employment policies and compensation schemes to all Covered Employees.

Declarations by themselves should be sufficient because the Court at this point is not to ascertain their reliability, but whether they allege a common policy of violations. Courts in the Second Circuit have regularly granted conditional certification on the same or similar grounds. *See Khamsiri v. George. & Frank's Japanese Noodle Rest. Inc*., No. 12 Civ. 265, 2012 WL 1981507 (S.D.N.Y. June 1, 2012) (granting conditional collective certification based on a single affidavit); *Iriarte v. Redwood Deli & Catering, Inc.*, No. 07 Civ. 5062, 2008 WL 2622929 (E.D.N.Y. June 30, 2008) (conditional collective certification was granted based on only one plaintiff declaration); *Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 0002, 2008 U.S. Dist. LEXIS 81082, at *3–4 (S.D.N.Y Oct. 8, 2008) (granting conditional collective certification in a case with single plaintiff and no opt-ins). Here, Plaintiff has submitted a declaration with specific allegations regarding the manner in which he and Covered Employees were not paid for all their hours worked due to Defendants' unlawful time-shaving and rounding practices.

Plaintiff's allegations are not only supported by his own personal observations, but also by hearsay statements from Plaintiff's co-workers. Courts in this Circuit routinely afford weight to hearsay evidence in granting a plaintiff's motion for conditional certification. *Sanchez v. Gansevoort Mgmt. Grp., Inc*., No. 12 Civ. 75, 2013 U.S. Dist. LEXIS 9739, at *1 (S.D.N.Y. Jan. 10, 2013); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 644 (S.D.N.Y. 2013) (citing *Moore v. Eagle Sanitation Inc.*, 276 F.R.D. 54, 59 (E.D.N.Y. 2011)). "Such approach is consistent with the purpose of conditional certification which is only a preliminary determination as to whether there is a sufficient showing to warrant notice being sent to the purported collective class." *Winfield v. Citibank, N. Am.*, 843 F. Supp. 2d 397, 402–03 (S.D.N.Y. 2012). *See also Harhash v. Infinity West Shoes, Inc.*, No. 10 Civ. 8285, 2011 U.S. Dist. LEXIS 96880, at *3–4 (S.D.N.Y. Aug. 24, 2011) (granting conditional class certification in part based on plaintiffs' statements that they had spoken

with or knew of other sales employees of defendants' shoe stores that complained of the same compensation policies); *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 352 (E.D.N.Y. 2012) (relying on the plaintiffs' allegations that three other delivery drivers for defendants' stores, who were identified only by first name, complained that they too were not paid for overtime hours).

That all Little Mercado Spain employees were subject to the same policies is confirmed by both Mr. Principe and Mr. Ayala. by Defendants themselves. Mr. Principe responded "Yes" when asked whether "the employee policies that you have implemented at Mercado Little Spain applies to employees at all the kiosks, bars, and restaurants." **Exhibit D**, Principe Dep. 41: 20-25. Asked "And there's no reason that anything that happens to [Plaintiff] is unique or special if he's like anybody else, right?" Mr. Principe responded "Correct." Principe Dep. 97: 15-18. Mr. Ayala is in agreement. Asked to confirm whether all Mercado Little Spain are subject to the same employee policies, he responded, "Right." **Exhibit C**, Ayala Dep 13: 3-5. Mr. Ayala also confirmed that all employees worked schedules similar to Plaintiff's and were also paid around $17/hour, 55: Ayala Dep 14-17, and also received the same form of paystub. Ayala Dep 97: 4-7.

## V.  ARGUMENT

To protect putative collective action members' rights and interests, and to promote judicial economy and effective case management, the Court should approve the distribution of notice to all Covered Employees because the initial pleadings and preliminary evidence show that all Covered Employees are similarly situated. Based on the Complaint and Plaintiff's Declaration in support of this Motion, Plaintiff and Covered Employees worked as non-exempt employees, were similarly situated, and Defendants failed to pay wages for all hours worked due to their time shaving policy. Thus, they "together were victims of a common policy or plan that violated the

14

law." *Cuzco v. Orion Builders, Inc.*, 477, F. Supp. 2d 628, 633 (S.D.N.Y. 2007) (internal quotation omitted).

### A.   THE COURT SHOULD CERTIFY THE COLLECTIVE ACTION AND ORDER NOTICE

#### i.   The Standard for Conditional Certification and Notice Is Lenient

"Courts generally determine the appropriateness of class certification at two stages: first, on the initial motion for conditional class certification, and second, after discovery." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007). At the first stage, "courts utilize a lenient evidentiary standard in assessing whether the Plaintiff has presented sufficient evidence to demonstrate that a prospective class of member plaintiffs is similarly situated to the named Plaintiff." *Anglada v. Linens 'N Things, Inc.*, No. 06 Civ. 12901, 2007 WL 1552511, at \*11 (S.D.N.Y. Apr. 26, 2007); *Mentor v. Imperial Parking Sys.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007). Under this lenient standard, a court will certify a class as a collective action and order notice to potential class members where "the plaintiff satisfies the minimal burden of showing that the similarly situated requirement is met" based on the pleadings and declarations. *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007) (internal quotation omitted). Upon certification, "[p]otential class members are then notified and provided with the opportunity to opt in to the action." *Id.*

To prevail on a motion for conditional certification, plaintiffs need only make a "modest factual showing" that they "are similarly situated *with respect to their allegations that the law has been violated.*" *Hallissey v. Amer. Online, Inc.*, No. 99 Civ. 3785, 2008 U.S. Dist. LEXIS 18387, at \*6 (S.D.N.Y. Feb. 19, 2008) (internal quotation omitted; emphasis in original). Plaintiff must demonstrate that there is a "factual nexus between the [named plaintiff's] situation and the situation of other current and former [employees]." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05

Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *6 (S.D.N.Y. Sept. 28. 2007) (internal quotation omitted; alterations in original); *see also Mentor*, 246 F.R.D. at 181; *Fasanelli*, 516 F. Supp. 2d at 321. Plaintiffs meet their burden where putative collective members "together were victims of a common policy or plan that violated the law[.]" *Lee v. ABC Carpet Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (internal quotation omitted), such as when they are all "employees of the same restaurant enterprise and allege the same types of FLSA violations." *Fasanelli*, 516 F. Supp. 2d at 322; *see also Toure*, 2007 U.S. Dist., LEXIS 74056, at *6 (stating that a plaintiff need only make a "modest factual showing" of similarity to satisfy the "relatively lenient evidentiary standard"); *Cuzco*, 477 F. Supp. 241 at 632-33 (plaintiff satisfied "minimal burden" by making "modest factual showing"); *Iglesias-Mendoza*, 239 F.R.D. at 367-68 ("[Plaintiffs can satisfy the 'similarly situated' requirement by making a modest factual showing . . . that they and potential plaintiffs together were victims of a common policy or plan that violated the law.") (quoting *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)); *Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194, 2005 WL 3240472, at *5 (S.D.N.Y. Nov. 29, 2005) (plaintiffs face only a very limited burden); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) ("The burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are "similarly situated.").

Allegations in the pleadings and declarations are sufficient to make this modest factual showing. *See, e.g.*, *Khalil*, No. 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372, at *3 (certifying collective action based upon complaint and one affidavit); *Zhao*, No. 01 Civ. 1297, 2001 WL 845000, at *2 (certifying based upon one affidavit founded on plaintiff's "best knowledge").

Unlike a Rule 23 class action, a § 216(b) collective action requires no "showing of numerosity, typicality, commonality and representativeness . . . as a pre-requisite to approval."

*Mazur*, 2005 WL 3240472, at *4 (internal quotation omitted); *see also Masson v. Ecolab, Inc.*, No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022, at *37 (S.D.N.Y. Aug. 17, 2005). The lenient standard for certification and notice under § 216(b) is justified because "[t]he ultimate determination regarding the merits of the case, and whether the class is properly situated – which requires a more 'stringent' inquiry – is made later in the litigation process, after more thorough discovery." *Gjurovich v. Emmanuel's Marketplace*, 282 F. Supp. 2d 91, 105 (S.D.N.Y. 2003); *see also Dumitrescu v. Mr. Chow Enters., Ltd.*, No. 07 Civ. 3601, 2008 U.S. Dist. LEXIS 49881, at *11 (S.D.N.Y. June 30, 2008) (noting that after discovery a court "review[s] the collective action certification more rigorously"). Plaintiff in this case has easily met the lenient standard for certification and notice.

### ii.   The Underlying Merits of the Case are Immaterial to the Determination of Conditional Certification and Notice

Although Plaintiff is confident that he will successfully establish that Defendants failed to properly compensate him and the Covered Employees under the FLSA, a discussion of the underlying merits is unnecessary and inappropriate at this time: "the standard in this circuit is clear; the merits of plaintiffs' claim are not at issue in a motion for conditional certification." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008); *see also, e.g.*, *Mentor*, 246 F.R.D. at 181 (stating that "the merits of a plaintiffs claims need not be evaluated and discovery need not be completed to approve and disseminate a § 216(b) notice"); *Fasanelli*, 516 F. Supp. 2d at 322 ("To the extent that Defendants['] opposition relies on a detailed factual dispute about whether the Defendants maintained an 'illega1 off-the-clock' policy, 'illegal tip retention' policy, or fail to pay the minimum wage, that inquiry is misplaced as those issues go to the merits of' the case."); *Toure*, 2007 U.S. Dist. LEXIS 74056, at *6 (stating that at the conditional certification stage "the merits of a plaintiff's claims need not be evaluated"); *Lynch v. United Servs. Auto. Ass'n*,

17

491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (finding that "[t]he focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated'"); *Hoffmann*, 982 F. Supp. at 262 ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that, a definable group of 'similarly situated' plaintiffs can exist here."). Any merits-based argument "is an improper ground on which to base a denial of a motion to certify conditionally an FLSA collective action[.]" *Anglada*, 2007 U.S. Dist. LEXIS 39105, at *20. Rather, the proper inquiry is merely "whether the putative class alleged by Plaintiff is similarly situated based on the pleadings and any affidavits," *Fasaneilli*, 516 F. Supp. 2d at 321.

### iii. Plaintiff Has Made the Modest Factual Showing Required for Conditional Certification

Here, Plaintiff has made far more than a modest factual showing that he and Covered Employees are similarly situated. Plaintiff's detailed allegations in the Complaint and Declaration show that all Covered Employees were subject to the same compensation scheme. As such, if proven, these allegations establish that Defendants maintained illegal policies and practices that similarly affected all Covered Employees employed by Defendants.

## B. EARLY NOTICE TO 'SIMILARLY SITUATED' EMPLOYEES IS APPROPRIATE AND NECESSARY

Collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact" and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Braunstein v E.*

*Photographic Labs.*, 600 F.2d 335, 336 (2d Cir. 1978); *Fasanelli*, 516 F. Supp. 2d at 323. The alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily and risk inconsistent judgments arising from the same events and brought under the same laws.

> **i.     Sending Expedited Notice to "Similarly Situated" Employees Fulfills the FLSA's Broad Remedial Purposes**

Expedited notice is critical in FLSA actions. Unlike absent class members in a Rule 23 class action, potential class members in an FLSA collective action must affirmatively consent (or "opt-in") to be covered by the suit. 29 U.S.C. § 216(b). The statute of limitations continues to run on each individual's claim until he or she files a written consent form with the Court. 29 U.S.C. §§ 255, 256 (b). To ensure that the rights protected by the FLSA do not grow stale through lack of knowledge, the Supreme Court has held that courts have broad authority to facilitate early notice of the existence of the lawsuit to potential opt in plaintiffs. *Hoffmann-La Roche*, 493 U.S. at 170. Notice to putative class members should be given as soon as possible since, because of the statute of limitations, "potential plaintiffs may be eliminated as each day goes by." *Foster v. Food Emporium*, No. 99 Civ, 3860, 2000 U.S. Dist. LEXIS 6053, at *5 (S.D.N.Y. Apr. 26, 2000); *see also Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) ("Certainly, it is unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion.") (internal quotation marks and citation omitted). Thus, early distribution of a notice of pendency is crucial in an FLSA collective action.

The Court need not and should not delay the sending of notice until the completion of discovery. *Toure*, 2007 U.S. Dist. LEXIS 74056, at *8 (ordering notice under 29 U.S.C. § 216(b) where only limited discovery had taken place); *Iglesias-Mendoza*, 239 F.R.D. at 368 ("The court is not obliged to wait for the conclusion of discovery before it certifies the collective action and

19

authorizes notice."); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 267-68 (E.D.N.Y. 2005) (ordering notice before full discovery in order to "facilitate[] the [FLSA]'s broad remedial purpose . . . promot[e] efficient case management . . . [and] preserve and effectuate the rights of potential plaintiffs whose claims might otherwise become time-barred during the discovery phase of the case") (internal citations omitted); *Hoffmann*, 982 F. Supp. at 262 (ruling that the Court need not "wait for defendant to complete its discovery before authorizing class notice. To the contrary, courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management"). In lieu of discovery, courts rely upon allegations in a complaint and employee declarations to determine whether plaintiffs and potential opt in collective members are similarly situated. *E.g.*, *Gjurovich*, 282 F. Supp. 2d at 104.

## C.  DISCOVERY OF NAMES, ADDRESSES AND TELEPHONE NUMBERS IS PROPER AND NECESSARY UNDER § 216(b)

It is appropriate for courts in collective actions to order the discovery of names and contact information of potential collective members. *E.g., Lee*, 236 F.R.D. at 202; *Fasanelli*, 516 F. Supp. 2d at 323-24; *Cuzco*, 477 F Supp. 2d at 637; *Sherrill v. Sutherland Global Servs.*, 487 F. Supp. 2d 344, 350 (W.D.N.Y. 2007); *Patton*, 364 F. Supp. 2d at 268. "Courts within this Circuit routinely grant plaintiff's motion to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action." *Anglada*, 2007 U.S. Dist. LEXIS 39105, at *22.

Plaintiff therefore requests that, in addition to entering an order granting conditional certification and approving Plaintiff's proposed notice, the Court order Defendants to produce within ten days of its Order a list of all Covered Employees in Excel format who were employed by Defendants at any point in the six (6) years prior to the entry of the Order with the following

information: names, titles, compensation rates, date of employment, last known mailing addresses, email addresses, and all known telephone numbers.

### D.   THE PROPOSED NOTICE IS FAIR AND ADEQUATE

Attached hereto as **Exhibit J** is Plaintiff's proposed judicial notice. The proposed notice provides clear instructions on how to opt-in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. The Supreme Court specifically left the "content details of a proposed notice under § 216(b) . . . to the broad discretion of the court." *Lee*, 236 F.R.D. at 202; *see also Gjurovich*, 282 F. Supp. 2d at 106. "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions" and ensure that putative plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Fasanelli*, 516 F. Supp. 2d at 323. The proposed notice achieves the goal of providing potential opt-ins with accurate and timely notice concerning the pendency of the collective action and should be adopted.

### E.   NOTICE SHOULD BE TRANSLATED TO SPANISH

Given that many of the prospective plaintiffs in this case will be native Spanish speakers, Plaintiff believes that the goals of notice would be best served if the final approved notice that is provided to prospective class members also includes a Spanish language version. Sending notices in multiple languages has been approved in other cases in the Second Circuit. *See Cuzco*, 477 F. Supp. 2d at 634.

### VI. CONCLUSION

The FLSA is a "uniquely protective," "remedial" and "humanitarian" statute. *See Chao v. Gotham Registry, Inc*., 514 F.3d 280, 285 (2d Cir. 2008). An express policy of the FLSA is "to

correct and as rapidly as practicable to eliminate" certain "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." 29 U.S.C. § 202. The FLSA accordingly establishes a minimum wage, 29 U.S.C. § 206(a), "to secure for the lowest paid segment of the nation's workers a subsistence wage," *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 116 (1946). The FLSA also requires the payment of overtime compensation, 29 U.S.C. § 207, "to remedy the 'evil of overwork' by ensuring workers were adequately compensated for long hours, as well as by applying financial pressure on employers to reduce overtime," *Chao*, 514 F.3d at 285 (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 576-78 (1942)). When an employer fails to comply with its obligations, the Act requires the employer to provide the statutorily mandated compensation "to insure restoration [of its employees] . . . to [the] minimum standard of well-being" contemplated by the Act. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707(1945). As such, in order to further the legislative intent, class certification in this case must be granted, particularly to protect the rights of immigrant workers who may fear retribution for asserting their rights in this current anti-immigration climate.

Dated: New York, New York  
      December 4, 2020

Respectfully submitted,

By:    */s/ C.K. Lee*           

C.K. Lee, Esq. (CL 4086)  
Lee Litigation Group, PLLC  
148 West 24th Street, Eighth Floor  
New York, NY 10011  
Tel: (212) 465-1188  
Fax: (212) 465-1181  

*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*