UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DERRICK STEWART, on behalf of himself, FLSA Collective Plaintiffs and the Class,

          Plaintiff,

-v-

HUDSON HALL LLC, d/b/a MERCADO LITTLE SPAIN, et al.,

          Defendants.

CIVIL ACTION NO.: 20 Civ. 885 (PGG) (SLC)

**DISCOVERY ORDER**

---

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Derrick Stewart ("Stewart") filed this putative collective and class action asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, and the New York Labor Law ("NYLL"), against Defendants Hudson Hall, LLC d/b/a Mercado Little Spain ("Hudson Hall"), Hudson Hall Holdings LLC d/b/a Mercado Little Spain ("Holdings"), Think Food Group, LLC ("Think") (Hudson Hall, Holdings, and Think, together the "Corporate Defendants"), and José Ramon Andrés Puerta a/k/a José Ramon ("Andrés") (Andrés and the Corporate Defendants, together "Defendants").  Stewart is seeking to recover: (1) unpaid overtime wages; (2) unpaid wages for off-the-clock work; (3) liquidated damages; and (4) attorneys' fees and costs.  (ECF No. 26 ¶ 1).

1

Before the Court is Stewart's motion pursuant to Federal Rule of Procedure 60(b) asking the Court to lift the Protective Order precluding the deposition of Andrés (ECF No. 55 (the "Protective Order"). (ECF No. 58 (the "Motion")). For the reasons set forth below, the Motion is DENIED.

## II. BACKGROUND

### A. Factual Background

The Court incorporates by reference the complete factual summary set forth in the Court's Report and Recommendation recommending that Defendants' Motion to Dismiss (the "Motion to Dismiss") Stewart's First Amended Class Action and Collective Action Complaint (the "FAC") be granted in part and denied in part. (ECF No. 53 (the "R&R")).

As is relevant to the Motion, Stewart alleges that Defendants own and operate several restaurants, bars, and kiosks that comprise "Mercado Little Spain," located at 10 Hudson Yards in Manhattan. (ECF No. 26 ¶¶ 6–7). Mercado Little Spain's restaurants, bars, and kiosks together "comprise a marketplace intended to mirror market halls located throughout Spain." (Id. ¶ 8). Stewart alleges that Mercado Little Spain's restaurants, bars, and kiosks "operate as a single[] integrated enterprise and are engaged in related activities, share common ownership, and have a common business purpose" insofar as they, inter alia, share similar "Iberian" menus, present their menus on Mercado Little Spain's website, employ "interchangeable" employees, share payroll methods, have a centralized labor relations system and marketing department, and share social media accounts. (Id. ¶ 10(a)–(g)).

On or about March 1, 2019, Hudson Hall hired Stewart to work as a cook at the Leña Restaurant inside Mercado Little Spain. (ECF No. 26 ¶ 30). Around June 1, 2019, Stewart was

2

transferred to the Spanish Diner Restaurant and also began working four shifts at the Frutas & Verduras Kiosk, both within Mercado Little Spain.  (Id. ¶ 31).  Stewart worked primarily at the Spanish Diner Restaurant for the remainder of his employment, but occasionally worked "on an as needed basis" at other restaurants and kiosks within Mercado Little Spain.  (Id.)  On September 15, 2019, Stewart's employment terminated.  (Id.)

Stewart alleges that Andrés is an owner and principal of the Corporate Defendants.  (ECF No. 26 ¶ 14).  The FAC asserts that Andrés "exercises operational control" over all employees, including Stewart and the members of the putative collective and class.  (Id.)  Andrés frequently visited Mercado Little Spain, and "exercise[d] the power to (and also delegate[d] to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees," including Stewart and the members of the putative collective and class.  (Id.)  Andrés invited employees of Mercado Little Spain to contact him regarding issues with their pay, and made public statements on Twitter addressing certain pay issues in August 2019.  (Id. ¶ 15 & ECF No. 26-2).  Stewart alleges that Andrés' statements show that employees could complain about their employment to him, and that he had the authority to effect "changes to the quality and terms of employees' employment."  (ECF No. 26 ¶ 14).  Attaching an April 2020 press statement in which Andrés described changes to Mercado Little Spain's business due to COVID-19, Stewart alleges that Andrés determined hours of operation, pay compensation, and benefits for employees who were furloughed or fired.  (Id. ¶ 15 & ECF No. 26-3).

B. **Procedural Background**

On January 31, 2020, Stewart filed the original complaint in this action, and on April 27, 2020, he filed the FAC. (ECF Nos. 1, 26). On May 29, 2020, Defendants filed the Motion to Dismiss. (ECF Nos. 32–33). On October 19, 2020, the Court issued the R&R, recommending that the Motion to Dismiss be granted in part to the extent that the claims against Holdings and Think be dismissed without prejudice, and denied in part as to the claims against Andrés. (ECF No. 53 at 22). The Court also recommended that Stewart be granted one final opportunity to amend his pleading. (Id.) Neither party has filed written objections to the R&R pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.

On October 2, 2020, Defendants moved for a protective order pursuant to Federal Rule of Civil Procedure 26(c)(1) "precluding Plaintiff from taking [Andrés'] deposition, or, in the alternative, holding [his] deposition in abeyance until after the Court rules on Defendants' pending Motion to Dismiss." (ECF No. 50 at 2 (the "Protective Order Motion")). Defendants argued, in part, that Andrés was an "apex" executive who was not involved in Mercado Little Spain's daily operation. (ECF No. 51 at 5, 12–13). In support of the Protective Order Motion, Defendants submitted a declaration from Andrés, who stated that he is "not now, and ha[s] never been, involved in the day-to-day operations of Mercado Little Spain." (ECF No. 52-2 ¶¶ 4, 12 (the "Andrés Declaration")). On October 19, 2020, Stewart filed a Letter notifying the Court that he did not oppose the Protective Order Motion. (ECF No. 54). On October 20, 2020, the Court granted the Protective Order Motion and entered the Protective Order. (ECF No. 55).

On November 19, 2020, Stewart filed the Motion, citing recent deposition testimony of Michael Principe ("Principe"), the Executive Director of Mercado Little Spain, which he contends

4

shows that Andrés "(1) interviewed personnel, (2) hired personnel, (3) trained personnel, (4) developed the menus, and (5) engaged in quality control of the food." (ECF No. 58 at 2). Stewart also cites his own statements in his deposition that Andrés would "tell the chef to tell us what to do." (ECF Nos. 58 at 2; 58-4 at 1). Stewart argues that his own and Principe's testimony "wholly contradict[]" the statements in the Andrés Declaration and justifies lifting the Protective Order to allow Andrés to be questioned within 20 days about his "unique knowledge as to the operations and claims in this matter." (ECF No. 58 at 2–3).

Defendants oppose the Motion on the grounds that (i) Stewart's non-opposition to the Protective Order Motion precludes his ability to contest the Protective Order now, and (ii) he has failed to meet his burden to modify the Protective Order under Second Circuit standards. (ECF No. 59). Defendants argue that they have reasonably relied on the Protective Order, and the testimony to which Stewart points does not provide a "factual basis for th[e] extraordinary relief" of modifying the Protective Order. (ECF No. 59 at 2).

### III. DISCUSSION

#### A. Legal Standard for Modification of a Protective Order

In the Second Circuit, "there is a strict standard for modification of a protective order entered by a district court." In re Hornbeam Corp., No. 14-MC-424 (VSB) (Part I), 2020 WL 4698955, at *3 (S.D.N.Y. Aug. 13, 2020). "Under this strict standard, 'it is presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied.'" Id. (quoting AT&T Corp. v. Sprint Corp., 407 F.3d 560, 562 (2d Cir. 2005) (internal citation omitted)). "Once a court enters a protective order and the parties rely on that order, it cannot be modified 'absent a showing of improvidence in the grant' of the order or

5

'some extraordinary circumstance or compelling need.'" AT&T Corp., 407 F.3d at 562 (quoting Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 296 (2d Cir. 1979)); SEC v. TheStreet.com, 273 F.3d 222, 229 (2d Cir. 2001) (explaining that there is a "strong presumption against the modification of a protective order").

In determining whether a party has reasonably relied on a protective order, courts consider "(1) the scope of the protective order; (2) the language of the order itself, (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order." In re Sept. 11 Litig., 262 F.R.D. 274, 277 (S.D.N.Y. 2009) (quoting In re EPDM Antitrust Litig., 255 F.R.D. 308, 318 (D. Conn. 2009)).

### B. Application

As an initial matter, Stewart's non-opposition to the Protective Order Motion renders his quick turn-around to challenge the Protective Order, at a minimum, curious. Perhaps Stewart has had second thoughts about his non-opposition and now wishes he had not foregone the opportunity to pursue Andrés' deposition sooner. "[A] mere change in litigation strategy," however, is "not [] sufficient to unwind a protective order," particularly where the parties "ultimately agreed" to the Protective Order. Hornbeam, 2020 WL 4698955, at *4.

On the merits, however, Stewart has failed to meet his burden to show an "extraordinary circumstance or compelling need" to take Andrés' deposition at this time and there is no discernable change of circumstance since Stewart decided not to oppose the Protective Order. Martindell, 594 F.2d at 296. First, considering the four factors set forth above, the Court finds that Defendants have reasonably relied on the Protective Order. The scope and language of the Protective Order are clear that Andrés' deposition would not occur, at least while the Motion to

Dismiss is pending, which remains the case. Because Stewart did not oppose the Protective Order Motion, the Court did not need to conduct a detailed inquiry before entering the Protective Order, but since then, Defendants have relied on the Protective Order by not diverting Andrés' attention from his other endeavors or expending resources to prepare him for his deposition. (ECF No. 59 at 2). Finally, Plaintiffs give no explanation why Andrés' deposition must occur in the next 20 days.

Second, the deposition testimony to which Stewart points does not represent an extraordinary circumstance or compelling need for Andres' testimony at this time. The Court has reviewed the testimony excerpts that Stewart submitted, as well as the additional excerpts that Defendants have submitted that provide additional clarification about Principe's testimony. (ECF Nos. 58–59). Stewart's own deposition testimony, which is at best an indirect statement as to Andrés' involvement with Mercado Little Spain, is self-serving and not persuasive. Contrary to Stewart's assertions, Principe's testimony does not establish that Andrés was involved in the day-to-day operations of Mercado Little Spain; it does not reflect that Andrés hired or interviewed Mercado Little Spain employees or chefs, trained any hourly employees, or set any hourly employees' schedules. (ECF No. 59 at 3). At most, Principe's testimony suggests that Andrés had input into menu selections and meal preparation, but Stewart has not established how that conduct relates to any claims or defenses or shows that Andrés had unique personal knowledge of the operations, payroll practices, or Stewart's employment circumstances at Mercado Little Spain. See Milione v. City Univ. of N.Y., 950 F. Supp. 2d 704, 714 (S.D.N.Y. 2013) (granting protective order precluding deposition of university Chancellor who did not have personal knowledge of or supervise plaintiff's employment).

7

This is not to say, conclusively, whether, under the economic reality test, Andrés was or was not Stewart's employer for purposes of the FLSA and the NYLL. See <u>Barfield v. N.Y.C. Health & Hosps. Corp.</u>, 537 F.3d 132, 141 (2d Cir. 2008).  (See R&R at 18–20).  Rather, the Court finds that Stewart has failed to establish, at this time, extraordinary circumstances or a compelling need, as is required by the Second Circuit precedent set forth above, to modify the Protective Order to permit Andrés' deposition to proceed.

### IV. CONCLUSION

For the reasons set forth above, the Motion is DENIED.  The Clerk of the Court is respectfully directed to close ECF No. 58.

Dated:    New York, New York

December 9, 2020

_____
SARAH L. CAVE
United States Magistrate Judge