**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DERRICK STEWART,
*on behalf of himself, FLSA Collective Plaintiffs,*
*and the Class,*

                    Plaintiffs,

              v.

HUDSON HALL LLC
        d/b/a MERCADO LITTLE SPAIN,
HUDSON HALL HOLDINGS LLC
        d/b/a MERCADO LITTLE SPAIN,
THINK FOOD GROUP, LLC,
and JOSÉ RAMON ANDRÉS PUERTA
        a/k/a JOSÉ ANDRÉS,

                    Defendants.

Case No. 1:20-cv-00885-PGG-SLC

---

**DEFENDANTS' MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR**
**CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE**
**AND FOR COURT FACILITATION OF NOTICE**
**PURSUANT TO 29 U.S.C. § 216(b)**

---

FOX ROTHSCHILD LLP
Carolyn D. Richmond, Esq.
Glenn S. Grindlinger, Esq.
Matthew C. Berger, Esq.
101 Park Avenue, 17th Floor
New York, NY 10017
Tel:   (212) 878-7900
Fax:  (212) 692-0940

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT BACKGROUND ............................................................................................... 3

I.     RELEVANT FACTS ................................................................................................. 3

     A.     The Parties ................................................................................................. 3

     B.     MLS's Time-Keeping and Payroll Practices and Policies ....................................... 4

II.     RELEVANT PROCEDURAL HISTORY ........................................................................ 7

ARGUMENT ................................................................................................................. 8

I.     PLAINTIFF'S MOTION FOR COLLECTIVE ACTION
     CERTIFICATION UNDER 29 U.S.C. § 216(B) SHOULD BE DENIED ...................... 8

     A.     Legal Standard ................................................................................................. 8

     B.     Plaintiff Has Failed to Set Forth any Common Policies that Violated the
             FLSA ........................................................................................................... 11

          1.     Overtime Pay ................................................................................. 12

          2.     Break Time.................................................................................... 16

          3.     Pre-Shift Changing into Uniforms and Walking Time ....................... 17

          4.     Pre-Shift and Post-Shift Work ........................................................ 19

          5.     Clock In/Clock Out Procedures ...................................................... 21

     C.     Plaintiff Is Not Similarly Situated To Any Putative Collective Members............ 22

II.     THE PROPOSED NOTICE CONTAINS NUMEROUS DEFECTS............................... 24

CONCLUSION............................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barfleld v. N.Y. City Health & Hosps. Corp.*,
  No. 05-CV-6319 (JSR), 2005 WL 3098730 (S.D.N.Y. Nov, 18, 2005)............................14, 22

*Brown v. Barnes & Noble, Inc.*,
  No. 16-CV-7333 (RA), 2019 WL 5188941 (S.D.N.Y. Oct. 15, 2019)......................................9

*Chen. v. Kicho Corp.*,
  18-CV-7413 (PMH) (LMS), 2020 WL 1900582 (S.D.N.Y. Apr. 17, 2020) ...........................24

*Doucoure v. Matlyn Food, Inc.*,
  554 F. Supp. 2d 369 (E.D.N.Y. 2008) ..................................................................................9

*Du v. Dingxiang Inc.*,
  19-CV-11924 (JPO) (BCM), 2020 WL 7404984 (S.D.N.Y. Dec. 17, 2020) .........................24

*Edwards v. City of New York*,
  No. 08-CV-3134 (DLC), 2011 WL 3837130 (S.D.N.Y. Aug. 29, 2011) .........................18, 19

*Fernandez v. Sharp Mgmt. Corp.*,
  No. 16-CV-0551 (JGK) (SN), 2016 WL 5940918 (S.D.N.Y. Oct. 13, 2016) ........................25

*Glatt v. Fox Searchlight Pictures, Inc.*,
  811 F.3d 528 (2d Cir. 2016)...................................................................................................10

*Gu v. T.C. Chikurin, Inc.*,
  No 13-CV-2322 (SJ), 2014 WL 1515877 (E.D.N.Y. Apr. 17, 2014)......................................14

*Hallissey v. Am. Online, Inc.*,
  No. 99-CV-3785 (KTD), 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008).................................23

*Hoffman-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989)...............................................................................................................9

*Huertero-Morales v. Raguboy Corp.*,
  No. 17-CV-2429 (JCF), 2017 WL 4046337 (S.D.N.Y. Sept. 12, 2017) ................................15

*Ikikhueme v. CulinArt, Inc.*,
  No. 13-CV-0293 (JMF), 2013 WL 2395020 (S.D.N.Y. June 3, 2013) ................16, 17, 20, 22

*Khan v. Airport Mgmt. Servs., Inc.*,
  No. 10–CV-7735 (NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) ..............................20

*Knox v. John Varvatos Enters. Inc.*,
    282 F. Supp. 3d 644 (S.D.N.Y. 2017)...................................................................................24

*Korenblum v. Citigroup, Inc.*,
    195 F. Supp. 3d 475 (S.D.N.Y. 2016).............................................................................1, 9, 10

*Levinson v. Primedia Inc.*,
    No. 02-CV-2222 (CBM), 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ..................17, 20, 22

*Lin v. Benihana Nat'l Corp.*,
    755 F. Supp. 2d 504 (S.D.N.Y. 2010)...................................................................................14

*Luo v. Panarium Kissena Inc.*,
    15-CV-3642 (WFK) (ST), 2016 WL 11263668 (E.D.N.Y. Nov. 23, 2016)...........................24

*McDermott v. Fed. Sav. Bank*,
    No. 14-CV-6657 (JMA) (GRB), 2018 WL 1865916 (E.D.N.Y. Apr. 18, 2018)....................10

*Mike v. Safeco Ins. Co. of Am.*,
    274 F. Supp. 2d 216 (D. Conn. 2003) ...................................................................................11

*Morales v. Plantworks, Inc.*,
    No. 05-CV-2349 (DC), 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) ...........................14, 20, 22

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)...................................................................................................11

*O'Jeda v. Viacom, Inc.*,
    No. 13-CV-5658 (JMF), 2014 WL 1344604 (S.D.N.Y. Apr. 4, 2014) ..................................25

*Perez v. De Domenico Pizza & Rest., Inc.*,
    204 F. Supp. 3d 494 (E.D.N.Y. 2016) ..................................................................................24

*Romero v. H.B. Auto. Grp., Inc.*,
    No. 11-CV-386 (CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012) ..................................9, 14

*Rudd v. T.L. Cannon Corp.*,
    No. 3:10-CV-591 (TJM) (DEP), 2011 WL 831446 (N.D.N.Y. Jan. 4, 2011) ........................10

*Sanchez v. JMP Ventures, L.L.C.*,
    No. 13–CV–7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014)...........................15, 22

*Sharma v. Burberry Ltd.*,
    52 F. Supp. 3d 443 (E.D.N.Y. 2014) .....................................................................................22

*Silva v. Calle 8, LLC*,
    No. 12-CV-677 (ERK) (MDG), 2013 WL 6330848 (E.D.N.Y. Dec. 5, 2013) ......................23

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ..........................................................................................18

*Wang v. Empire State Auto Corp.*,
    No. 14-CV-1491 (WFK) (VMS), 2015 WL 4603117 (E.D.N.Y. July 29, 2015) .....................9

*Wu v. Sushi Nomado of Manhattan, Inc.*,
    17-CV-04661 (PGG) (DF), 2019 WL 3759126 (S.D.N.Y. July 25, 2019) ............................23

*Yap v. Mooncake Foods, Inc.*,
    146 F. Supp. 3d 552 (S.D.N.Y. 2015) ....................................................................24

*Zhang v. Bally Produce, Inc.*,
    No. 12-CV-1045 (FB) (JMA), 2013 WL 1729274 (E.D.N.Y. Apr. 22, 2013) .......................23

*Zivali v. AT & T Mobility, LLC*,
    784 F. Supp. 2d 456 (S.D.N.Y. 2011) ...................................................................16

**Statutes**

29 U.S.C. § 216(b) ......................................................................................1, 2, 8, 9, 11, 25

29 U.S.C. § 255(a) .....................................................................................................24

## <u>PRELIMINARY STATEMENT</u>

Defendants Hudson Hall LLC ("Hudson Hall") d/b/a Mercado Little Spain, Hudson Hall Holdings LLC, d/b/a Mercado Little Spain, Think Food Group LLC, and José Ramon Andrés Puerta a/k/a José Andrés (collectively, "Defendants") respectfully submit this Opposition to Plaintiff Derrick Stewart's ("Plaintiff") Motion for Conditional Certification of FLSA Collective and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b) (hereinafter the "Motion").

Plaintiff seeks conditional certification of his claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and requests permission to send a court-authorized notice to most current and former non-exempt employees of Mercado Little Spain ("MLS"), including cooks, food preparers, cashiers, counter persons, butchers, cleaners, dishwashers, servers, porters, bussers, and food runners who worked or currently work at MLS within the past six years.  Because the parties have already engaged in extensive discovery—in fact, discovery closed on December 31, 2020—the standard for satisfying conditional certification is not as lenient as Plaintiff's Motion suggests.  Nevertheless, regardless of whether the Court applies the lenient standard proposed by Plaintiff, or the more appropriate higher standard that applies after the conclusion of substantial discovery, Plaintiff fails to satisfy his burden.  Therefore, Plaintiff's Motion should be denied.

In order to prevail on his Motion, Plaintiff must show that he is "similarly situated" with the individuals he seeks to represent.  When the parties have already engaged in meaningful discovery—as is the case here—courts apply a more exacting "modest plus standard" to determine whether the putative collective should be conditionally certified.  *See Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 481 (S.D.N.Y. 2016).  To meet this standard, Plaintiff must put forward evidence susceptible to a common proof that he and the putative collective members

were victims of a common policy or plan that violated the FLSA—*i.e.*, Plaintiff must submit evidence produced during discovery beyond the pleadings and affidavits submitted by Plaintiff that he and the putative collective members were victims of a common policy or plan that violated the FLSA.  Plaintiff has not, and cannot, meet this burden.

A review of the full record shows that there is simply no evidence to support Plaintiff's assertions that there was a company-wide scheme of not properly paying employees.  In support of his Motion, Plaintiff did not submit affidavits or declarations from any of the putative collective members even though he had ample opportunity to obtain supporting testimony from putative collective members while the parties engaged in discovery.  Nor did Plaintiff submit any documentation or records that support his assertion that he and the putative collective members were allegedly victims of a common practice by Defendants to underpay employees.  Instead, Plaintiff relies exclusively on his self-serving statements and inadmissible hearsay.

Moreover, Plaintiff does not offer any admissible evidence that supports his specious claim that he is similarly-situated to any potential collective action member.  He does not provide any information about the tasks and duties of putative collective members, nor does he explain how his job duties and tasks were similar to those of others.  He does not provide any admissible evidence to support his contention that other individuals were allegedly underpaid by Defendants.  Instead, he relies exclusively on hearsay statements despite the fact that Defendants produced the names and contact information for 74 of Plaintiff's co-workers during discovery. He could have sought declarations and other information from such individuals, but chose not to do so.  While such hearsay statements may be enough when a motion for conditional certification under 29 U.S.C. §216(b) is made at the outset of discovery, they are certainly not enough after discovery has concluded, as is the case here.

When the full record is reviewed, it is abundantly clear that Plaintiff has not presented any evidence to demonstrate a factual nexus between himself and any putative collective member, which is necessary to support conditional certification.  For all of these reasons, Plaintiff's Motion should be denied and this action should not be conditionally certified as a FLSA collective action.

**RELEVANT BACKGROUND**

I.  **RELEVANT FACTS[1]**

    A.  **The Parties**

Hudson Hall owns and operates MLS, which is a Spanish cuisine food hall located at Hudson Yards in New York City.  *See* Declaration of Michael Principe ("Principe Decl."), ¶ 2[2]. All of the individuals who work at MLS are employed by Hudson Hall.  *See id.*, ¶ 3.  Hudson Hall Holdings is one of Hudson Hall's parent companies.  *See* Dkt. No. 25.  Think Food Group is an indirect parent of Hudson Hall through a series of subsidiaries.  *See id.*

Within MLS are three separate, full-service restaurants—Spanish Diner, Lena, and Mar. *See* Dkt. No. 26-1; Principe Decl., ¶ 2.  The food hall has one bar, Bar Celona, a bar/dining establishment called Vinos/La Barra, and twelve kiosks that serve specialized tapas.  *See id.* Plaintiff worked as a line cook at MLS from April 1, 2019 through August 4, 2019.  *See* Declaration of Amy Kurth Anderson ("Anderson Decl."), ¶ 3[3].  He was initially assigned to

---

[1] Defendants do not address Plaintiff's specious arguments concerning whether Hudson Hall operates as a single integrated enterprise with Hudson Hall Holdings LLC and Think Food Group LLC because Magistrate Judge Cave has already recommended dismissal of the latter two entities, *see* Dkt. No. 53, and these arguments and allegations are irrelevant to the Court's determination with respect to whether to certify this action as a collective under the FLSA.

[2] The Declaration of Michael Principe is attached to the Declaration of Glenn S. Grindlinger, Esq. ("Grindlinger Decl.") as Exhibit ("Ex.") A.

[3] The Declaration of Amy Kurth Anderson is attached as Exhibit C to the Grindlinger Declaration.

Lena, but transferred to Spanish Diner after a few weeks. *See id.* There is no record of Plaintiff working at any other restaurant, bar, or at any of the kiosks at MLS. *See id.*

      **B.**     **MLS's Time-Keeping and Payroll Practices and Policies**

      Although each restaurant, bar, and kiosk in MLS has its own management team, regardless of where an employee works at MLS, all employees must clock in at the start of their shift and clock out at the end of their shift, and employees are prohibited from performing any off-the-clock work. *See* Principe Decl., ¶ 6; Think Food Employee Handbook ("Handbook"), p. 11[4]. MLS pays employees based on the punch-in and punch-out records; not based on their schedules. *See* Principe Decl., ¶ 8. MLS employees would clock in/out at the locations to which they were assigned. *See id.*, ¶ 6. As such, when he first started working at MLS, Plaintiff would clock in/out at Lena; when he transferred to Spanish Diner, he would clock in/out at that location. *See id.*; Anderson Decl., ¶ 4.

      MLS uses a time-keeping system created by Harri (USA) LLC ("Harri") to track employee hours. *See* Anderson Decl., ¶ 5; Declaration of Joseph Miliziano ("Miliziano Decl."), ¶ 3[5]. This time keeping system has been in place since MLS opened to the public in March 2019. *See* Miliziano Decl., ¶ 3. Harri uses face recognition technology to record time. *See id.*, ¶ 5. When an employee is ready to clock in, the employee goes to an I-Pad provided by MLS explicitly for this purpose. *See id.*, ¶ 4. MLS has multiple I-Pads at each restaurant, bar, and kiosk, each of which operates Harri's Team Hub application. *See* Principe Decl., ¶ 7. The employee finds his/her/their name and clicks on it. *See* Miliziano Decl., ¶ 4. Once an employee click on their name, the employee will see one of two prompts. *See id.*, ¶ 5. If a manager has made changes to the employee's prior time records, such as adjusting a clock in/out or adding

---

[4] The Think Food Employee Handbook is attached as Exhibit B to the Grindlinger Declaration.

time for a meal period, the first prompt will ask the employee if the employee agrees with the changes; if the employee does not agree, the system will ask for the reason why the employee disagrees and the change will not be processed until the issue is resolved.[6]  *See id*.  If there are no changes made to prior clock in/out times, the employee will see a prompt asking if the employee would like to clock in.  *See id*.  The employee clicks on this prompt and the system scans the employee's face.  *See id*.  The employee is clocked in as of the time the employee first clicked on the employee's name.  *See id*.  The same process is used when the employee clocks out at the end of the day.  *See id*.

Harri's time-keeping system has a "grace period" feature, which syncs the employee's schedule with their clock in/out time.  *See* Miliziano Decl., ¶ 7.  If the employee tries to clock in (or out) outside of the grace period (usually 5, 10, or 15 minutes) on either side of when the employee is scheduled to start or end work, manager approval is required.  *See id*.  In such event, after the employee's face is scanned, the manager must either use a pin to clock the employee in/out or the manager's face must be scanned to clock the employee in/out.  *See id*.  Once the manager approves the clock in, the employee's work time is recorded from the moment that the employee first checked on his/her/their name.  *See id*.  If the employee is clocking out, the clock out is registered when the manager's pin is entered or the manager's face is scanned.  *See id*.  MLS used a five minute grace period feature. *See id*.

---

[5] The Declaration of Joseph Miliziano is attached as Exhibit D to the Grindlinger Declaration.

[6] Plaintiff disagreed with manager adjustments on only six occasions.  *See* Grindlinger Decl., Ex. E.  Twice he claimed that he had permission to take a day off when the system stated that he was a "no-call/no-show".  *See id*.  Once he complained that the prompt was in Spanish.  *See id.*  The fourth time, he complained that he did not receive a break; no meal break was allocated to Plaintiff for that day.  *See id.*  The fifth time, Plaintiff complained that he left after ten and his time was adjusted accordingly.  *See id.*  The sixth time, Plaintiff stated that he came in earlier; his time was adjusted accordingly.  *See id.*

Employees who work more than six hours at MLS at a time are required to take a 30-minute meal break.  *See* Principe Decl.*,* ¶ 12; New York Supplement to the Think Food Group Employee Handbook ("NY Supplement"), p. 4[7].  While on a meal break, employees are relieved of all duties and do not perform any work.  *See id.*  When employees take their meal break, they are supposed to clock out and then clock back in when they return from break.  *See id.* Specifically, when it was time for an employee to take a meal break, the employee would go to an I-Pad and click on his or her name to clock out.  *See* Miliziano Decl., ¶ 8.  After clicking their name, a prompt would ask if the employee was taking a meal break or clocking out for the day. *See id*.  The employee would then click on "meal break," the system would scan the employee's face, and the employee would be clocked out for their meal break. *See id*.  The same protocol was used for the employee to clock back in when the employee returned from break.  The meal break is unpaid.  *See id*.  However, if an employee fails to clock out for their meal break, the employee will be paid for the time.  *See* Principe Decl.*,* ¶ 12.

The Harri time-keeping system is synchronized with MLS's payroll system.  *See* Anderson Decl., ¶ 6.  The hours that an employee was clocked in for the week are aggregated and fed into the payroll system.  *See id.*  Thus, MLS paid employees based on their actual time spent working, not the time that they were scheduled to work.

If an employee forgets to clock in and/or out, they are instructed to inform a supervisor to resolve the problem and ensure that the employee's time is properly recorded.  *See* Principe Decl., ¶ 11; Handbook, p. 13.  The manager would then manually adjust the time to reflect when

---

[7] The New York Supplement to the Think Food Employee Handbook is attached as Exhibit F to the Grindlinger Declaration.

the employee actually started/stopped working, and such adjustment would have to be approved by the employee using the process explained above.  *See id.*

Regarding overtime, when non-exempt employees work more than 40 hours during a given week, MLS pays such employees an overtime premium equal to one and one-half times the employee's regular rate of pay.  *See* Principe Decl., ¶ 11; Handbook, p. 13.  Plaintiff received overtime premiums when he in fact worked overtime.  *See* Grindlinger Decl., Ex. G.

MLS encourages its employees to regularly check their time entries to ensure that they are accurate.  *See* Principe Decl., ¶ 11.  If an employee believes that their time worked for the week is not accurately reflected in their paycheck, including overtime, they are instructed to discuss the issue with a supervisor (or Human Resources) so that any problems or mistakes are promptly rectified.  *See* Principe Decl., ¶ 11; Handbook, p. 13; Deposition Transcript of Michael Principe ("Principe Tr."), 115:8-22[8].  If the employee is correct, MLS can make the adjustment, which must be approved by the employee.  *See id.*; Miliziano Decl., ¶¶ 5, 7.

## II.     RELEVANT PROCEDURAL HISTORY

On January 31, 2020, Plaintiff filed a putative class and collective action Complaint against Defendants, alleging various wage and hour claims under the FLSA and the New York Labor Law.  *See* Dkt. No. 1.  On April 27, 2020, Plaintiff filed his First Amended Complaint (the "Amended Complaint").  *See* Dkt. No. 26.  On May 29, 2020, Defendants filed a motion to dismiss that sought dismissal of the claims asserted against Mr. Andrés, Hudson Hall Holdings LLC and Think Food Group LLC.  *See* Dkt. Nos. 32-33.  On October 19, 2020, Magistrate Judge Cave issued a Report & Recommendation, recommending that the Court grant Defendants' motion with respect to Hudson Hall Holdings LLC and Think Food Group LLC, but deny it with

---

[8] Mr. Principe's Deposition Transcript is attached as Exhibit J to the Grindlinger Declaration.

respect to Mr. Andrés.  *See* Dkt. No. 53 (the "R&R").  The R&R also recommended that Plaintiff be given an opportunity to file a Second Amended Complaint.  *See id.*  No party has objected to the R&R and Plaintiff has not filed a Second Amended Complaint to address the deficiencies in the Amended Complaint noted by Magistrate Judge Cave in the R&R.

On June 25, 2020, Magistrate Judge Cave so-ordered the parties' Case Management Plan, which provided that all fact discovery was to be completed by December 31, 2020.  *See* Dkt. No. 41.  The parties have engaged in extensive discovery, including the exchange of documents, answering each party's interrogatories, and the taking of depositions.  *See* Grindlinger Decl., ¶ 17.  At 9:08 p.m. on December 31, 2020, the last day of fact discovery, Plaintiff filed a request for an extension of the discovery deadline so-ordered by Magistrate Judge Cave.  *See* Dkt. No. 69.  No extension has been granted.

On September 15, 2020, Plaintiff filed a letter motion to compel certain class and collective discovery.  *See* Dkt. No. 46.  On September 30, 2020, Magistrate Judge Cave issued an Order compelling some collective discovery, *see* Dkt. No. 49, which resulted in Defendants producing the names, contact information, period worked, hours worked, and wages paid for 74 line cooks who work or worked at MLS.

On December 4, 2020, Plaintiff filed his Motion.  *See* Dkt. Nos. 60-63.

## ARGUMENT

### I.    PLAINTIFF'S MOTION FOR COLLECTIVE ACTION CERTIFICATION UNDER 29 U.S.C. § 216(B) SHOULD BE DENIED

#### A.    Legal Standard

Section 216(b) of the FLSA allows "one or more employees" to bring an action "against any employer" on "behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  In "appropriate cases," district courts may certify a collective action, which

permits representative plaintiffs to mail notice of the pending lawsuit to "similarly situated" individuals who were subject to the same purported FLSA violations. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

Conditional certification is proper where a representative plaintiff demonstrates that he, together with the potential opt-in plaintiffs, were "victims of a common policy or plan that violated the law." *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (citation omitted).  However, a representative plaintiff must provide actual evidence of a factual nexus between himself and potential opt-in plaintiffs—generalized assertions are not enough. *See Wang v. Empire State Auto Corp.*, No. 14-CV-1491 (WFK) (VMS), 2015 WL 4603117, at *10 (E.D.N.Y. July 29, 2015) (motion for conditional certification denied where plaintiff supported motion with affidavit, but did "not explain the basis of [his] knowledge, identify any employee by name or describe any specific conversations").

In this Circuit, when a court faces the issue of whether to certify a collective action *before* discovery has commenced, the plaintiff's burden is modest.  *See Romero v. H.B. Auto. Grp., Inc.*, No. 11-CV-386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012).  However, when the parties *have* engaged in meaningful discovery on the issues bearing on conditional certification, the court will apply the more exacting "modest plus standard," which "look[s] beyond the pleadings and affidavits submitted by Plaintiffs" and considers evidence submitted by both parties and obtained during discovery. *Korenblum,* 195 F. Supp. 3d at 481-82 ("[N]either law nor logic supports rigidly applying the same standard for review at all points prior to discovery's close – particularly where . . . discovery with respect to conditional certification has been completed."); *Brown v. Barnes & Noble, Inc.,* No. 16-CV-7333 (RA), 2019 WL 5188941, at *2 (S.D.N.Y. Oct. 15, 2019) (holding that the modest-plus standard is appropriate for Section

216(b) conditional certification after the parties had engaged in six months of discovery); *McDermott v. Fed. Sav. Bank*, No. 14-CV-6657 (JMA) (GRB), 2018 WL 1865916, at *5 (E.D.N.Y. Apr. 18, 2018) ("[W]here discovery has been conducted on the issue of conditional certification, the Court should consider all evidence relevant to that determination."). The "modest plus" analysis does not permit negative inference "where evidence is lacking" or assessment of the merits or the development of issues are more appropriately addressed upon a motion for decertification. *Korenblum,* 195 F. Supp. 3d at 482 (denying motion for conditional certification using "modest plus standard," because three months of discovery had been conducted on issues regarding conditional certification.). Rather, the heightened standard "take[s] a measured approach" that is "mindful of the potential burdens associated with defending against an FLSA claim involving a large and broadly defined collective group of plaintiffs." *Rudd v. T.L. Cannon Corp.,* No. 3:10-CV-591 (TJM) (DEP), 2011 WL 831446, at *6 (N.D.N.Y. Jan. 4, 2011).

Further, the Second Circuit addressed conditional certification in *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). In *Glatt*, the Second Circuit vacated a conditional certification because none of the "common proof" addressed key issues of liability, as the evidence left "most important questions" unable to "be answered with generalized proof." *Id*., at 539-40. Indeed, under *Glatt*, regardless of whether a minimal standard is used or the modest-plus standard is used, a district court abuses its discretion by granting conditional certification absent "common proof" answering key liability questions without individualized experiences. *Id*., at 540. Thus, in order to conditionally certify a case, the Court must determine whether there is actual evidence demonstrating an unlawful policy susceptible to common proof relevant to FLSA liability.

10

Because here, Plaintiff moved for conditional certification after the parties engaged in extensive discovery (indeed, discovery is now closed), it is eminently appropriate for this Court to use the "modest plus standard" to assess whether conditional certification should be granted. Indeed, the parties have exchanged numerous documents, propounded and responded to interrogatories, and taken depositions. *See* Grindlinger Decl., ¶ 18. Further, the Court set a discovery schedule so that the parties could exchange information concerning whether this case is appropriate to proceed as a collective action under 29 U.S.C. § 216(b). *See* Dkt. No. 41. In fact, Plaintiff specifically sought and relied on documents and information produced under this discovery schedule. *See id*. Thus, the heightened standard for certification of an FLSA collective action applies. As discussed further below, Plaintiff cannot satisfy his burden for conditional certification under this heightened standard and, as such, his Motion should be denied.

### B.   <u>Plaintiff Has Failed to Set Forth any Common Policies that Violated the FLSA</u>

Conditional certification requires a "'factual showing' that [Plaintiff] and potential opt-in plaintiffs 'together were victims of a ***common policy or plan that violated the law***.'" *Myers v. Hertz Corp*., 624 F.3d 537, 555 (2d Cir. 2010) (emphasis added) (citation omitted). To proceed as a collective action "the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case." *Mike v. Safeco Ins. Co. of Am.,* 274 F. Supp. 2d 216, 220 (D. Conn. 2003). Plaintiff fails to put forth evidence that he and other MLS employees were victims of any common policy or plan that purportedly violated the FLSA.

Plaintiff asserts that he and putative collective members were subjected to the same policies and practices that resulted in employees performing off-the-clock work, a failure to pay proper overtime premiums, and a failure to pay employees for breaks lasting less than twenty

(20) minutes.  Specifically, Plaintiff alleges that MLS: (1) failed to properly pay overtime premiums; (2) failed to compensate Plaintiff and putative collective members for breaks lasting less than twenty minutes; (3) required employees to spend excessive time waiting in the locker room to change into uniforms and walk "a significant distance" before employee could clock in; (4) asked Plaintiff and putative collective members to perform work before they clocked in or after they had already clocked out; and (5) only allowed Plaintiff and putative collective members to clock in or out independently within five (5) minutes of their scheduled shift without managerial approval.  As discussed below, Plaintiff's only "evidence" of these purported policies and practices is his own, self-serving declaration.  However, a review of the records exchanged in this case and the deposition testimony in this matter, including Plaintiff's own testimony, refutes Plaintiff's assertions.

        1.    <u>Overtime Pay</u>

Plaintiff asserts that he was not paid overtime when he worked more than forty (40) hours in a given week.  This is not true.  When Plaintiff worked more than forty hours during a given week, which rarely occurred, he was paid overtime.  *See, e.g.,* Grindlinger Decl., Ex. G.

In support of his contention, Plaintiff claims that his wage statement for the week of May 20 – May 26, 2019, shows that he worked 52.94 hours but did not receive overtime pay.  That wage statement does, in fact, show payment for 52.94 hours of work, but Plaintiff did not actually work 52.94 hours that week; he worked only 37.38 hours.  *See* Grindlinger Decl., Exs. H and L.  The remaining hours reflected in the wage statement were hours that Plaintiff claimed he had worked during *prior* weeks for which he was not paid.  MLS added those allegedly unpaid hours to Plaintiff's paycheck for the week of May 20 – May 26 without questioning Plaintiff's representations that he had previously performed work for which he was not paid.  As Ms. Anderson, who oversees Human Resources at MLS, testified, MLS took Plaintiff at his word and

added those hours to the paycheck at issue.  *See* Deposition Transcript of Amy Kurth Anderson ("Anderson Tr."), pp. 41:1-42:13[9].  She confirmed during her deposition that these hours should have been classified as "retroactive" pay instead of being added as straight time pay in the wage statement.  Specifically, Ms. Anderson testified:

> **A.** Yes. But I'm familiar with this particular pay stub, and I do know that we had a text message from his supervisor that he had relayed he was missing hours. That should have been added retroactively for this pay period and had a date stamp on it. So this is just where the additional hours should have been added as retro pay, and they weren't. So that's why it appears as though he worked more than a 40-hour work week, when, in fact, when we look at the time record, it is not -- that's not accurate.
>
> **Q.** Well, something is not accurate about this pay stub, right?
>
> **A.** Yeah, that's correct, and that's why we looked into it and we found the exact text message where he relayed to the supervisor that he was missing hours, so they were added to this paycheck. They should have been added as retro pay, but they were not. They were added just as extra hours. And the exact hours that he said he was missing, combined with the hours we have punches for, equal this 52.94.

Anderson Tr., pp. 41:1-23.

Moreover, Plaintiff has not presented any evidence that any other MLS employee was not paid overtime that was owed.  In discovery, Plaintiff received the names and contact information for 74 MLS line cooks, yet he did not submit any statements, declaration, or other information reflecting that such individuals were not properly paid overtime.  *See* Grindlinger Decl., ¶ 18. Instead of relying on the information obtained through discovery, Plaintiff asserts that "[b]ased on [his] conversations with the individuals listed in [paragraph] 17 below [of his declaration], Defendants also failed to pay overtime premiums to other employees".  Dkt. No. 63, ¶ 7.  Despite six months of discovery, other than this conclusory, hearsay statement, Plaintiff does not provide any admissible evidence that other individuals worked overtime, much less were not paid

---

[9] Ms. Anderson's Deposition Transcript is attached as to the Grindlinger Declaration as Exhibit I.

overtime when they worked more than 40 hours during a workweek.  This is wholly insufficient.  *See Romero v. H.B. Auto. Grp., Inc.*, No. 11-CV-386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012) (denying certification where the plaintiff had access to putative class members and discovery but did not rely on any discovery to support his assertion that defendant had a policy of failing to pay minimum wages); *Morales v. Plantworks, Inc.*, No. 05-CV-2349 (DC), 2006 WL 278154, at *2–3 (S.D.N.Y. Feb. 2, 2006) (denying certification where the plaintiffs offered no sworn declarations and made only the conclusory allegations in the complaint that there were over 20 current and former employees who were denied minimum wage and overtime compensation.); *Barfleld v. N.Y. City Health & Hosps. Corp.,* No. 05-CV-6319 (JSR), 2005 WL 3098730, at *1 (S.D.N.Y. Nov, 18, 2005) (denying conditional certification where the plaintiff alleged that, based on "limited anecdotal hearsay," others were not paid overtime).

Indeed, to prevail on his Motion, Plaintiff must put forth evidence that there was a common policy of failing to pay overtime.  *See Gu v. T.C. Chikurin, Inc.*, No 13-CV-2322 (SJ) (MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014) (noting that a plaintiff must offer "actual evidence of a factual nexus" between his situation and those of other allegedly similarly situated employees).  However, he has failed to do so—on the only occasion when Plaintiff worked more than 40 hours, he *was* paid overtime.  *See* Grindlinger Decl. Ex. G.  In fact, MLS regularly paid overtime to other employees during Plaintiff's employment.  *See* Anderson Decl., ¶ 8.  Logic dictates that there cannot be a common policy of not paying overtime when Plaintiff and others received overtime payments.  *See, e.g., Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 510 (S.D.N.Y. 2010) (denying collective certification in minimum wage claim, in part, where general allegations were contradicted by pay records).

At best, Plaintiff submits information that he claims—which claim has been refuted, *see* Anderson Tr., pp. 41:1-42:13—shows that *he* did not receive overtime pay owed to him on only one (1) week during his entire tenure at MLS.  However, the information presented by Plaintiff does not show that any putative collective member was not paid overtime.  In fact, Plaintiff has not presented any admissible evidence that others were not paid overtime.  His reliance on hearsay statements that do not detail when the alleged conversations took place, where the alleged conversations took place, or who was present during the alleged conversations does not satisfy the standards necessary to support conditional certification.  *See Huertero-Morales v. Raguboy Corp.,* No. 17-CV-2429 (JCF), 2017 WL 4046337, at *3 (S.D.N.Y. Sept. 12, 2017) ("[I]nformation regarding where or when [a plaintiff's] observations or conversations occurred . . . is critical in order for the Court to determine the appropriate scope of the proposed class and notice process.") (citation omitted, second alteration in original, internal quotations omitted); *Sanchez v. JMP Ventures, L.L.C.*, No. 13–CV–7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (denying conditional certification where plaintiff repeatedly stated that the "policies to which he was subjected . . . were the 'common practice'" at all defendants' restaurants and based this "on 'observations' and 'conversations' with other employees (whose first names he lists)" but failed to "provide *any* detail as to a *single* such observation or conversation").

Further, as Ms. Anderson explained, the entire basis of Plaintiff's claim of a common policy of failing to pay overtime is false.  Defendants have shown that Plaintiff's only specific example of alleged unpaid overtime was actually MLS compensating Plaintiff for hours he claimed were missing from prior weeks' statements.  *See* Anderson Tr., pp. 41:1-42:13. Payment for that time should have been designated as "retroactive pay."  *See id.*  Moreover, the

fact that MLS compensated Plaintiff for those hours without any question or requiring further proof from Plaintiff in and of itself demonstrates MLS's commitment to making sure its employees are always compensated for all time worked. *Cf. Zivali v. AT & T Mobility, LLC,* 784 F. Supp. 2d 456, 467-68 (S.D.N.Y. 2011) (granting motion to decertify collective action because, for among other reasons, plaintiffs could not show that there was a common policy of not paying overtime when defendant paid overtime to many of the collective action members).   Thus, Plaintiff has not put forward any evidence to demonstrate that MLS had a common policy or practice that violates the FLSA with respect to overtime pay.   Accordingly, he has failed to satisfy his burden and his Motion should be denied.

2.   Break Time

Next, Plaintiff asserts that Defendants had a policy of failing to compensate Plaintiff and putative collective members for breaks lasting less than 20 minutes and of automatically deducting time for breaks not taken.   Once again, the only evidence Plaintiff submits with his Motion is his own declaration claiming he was not paid for breaks lasting less than 20 minutes and his timesheets.   This is not enough to satisfy his burden.

On one occasion only, Plaintiff took a break lasting less than 20 minutes for which he was not paid.[10]   *See* Grindlinger Decl. Ex. L.   He does not present any admissible evidence that this happened to anyone else or happened to him more than once.   As such, his Motion to conditionally certify a putative collective on this issue should be denied on this basis alone.   *See Ikikhueme v. CulinArt, Inc.*, No. 13-CV-0293 (JMF), 2013 WL 2395020, at *2-3 (S.D.N.Y. June 3,   2013)   (denying   motion   for   conditional   certification   supported   only   by

---

[10] Defendants do not concede that such time is even compensable as Plaintiff performed no work during that time.

16

the plaintiff's declaration containing "unsupported assertions" regarding other employees); *Levinson v. Primedia Inc.*, No. 02-CV-2222 (CBM), 2003 WL 22533428, at *1-2 (S.D.N.Y. Nov. 6, 2003) (conditional certification denied because plaintiffs' evidence was limited to their own circumstances and there was insufficient evidence demonstrating that defendant was "employer" of other putative collective members).

With respect to deducting time for breaks not taken, the evidence shows that this simply did not happen.  Plaintiff's time records show that on numerous days, he did not take a meal break and no meal break was deducted.  *See* Grindlinger Decl., Ex. L.  Further, if a manager had gone into the system to deduct a break when Plaintiff or anyone else had not clocked out for a break, the employee would have had to approve the adjustment.  *See* Miliziano Decl., ¶ 5; Principe Decl., ¶ 11.  Plaintiff approved all such adjustments, except on one occasion, June 7, 2019; on that occasion MLS did not deduct a meal break from Plaintiff's time.  *See* Miliziano Decl., ¶ 11; Grindlinger Decl., Ex. E.

Moreover, Plaintiff has not provided any evidence that any employees had time deducted for breaks they did not take, except his own self-serving conclusory declaration.  At this stage of the litigation, inadmissible hearsay statements are not enough to support conditional certification on this issue.  *See Ikikhueme*, 2013 WL 2395020 at *2-3; *Levinson*, 2003 WL 22533428 at *1-2. Accordingly, Plaintiff's Motion should be denied.

3.    Pre-Shift Changing into Uniforms and Walking Time

Plaintiff also claims that Defendants allegedly required Plaintiff and the putative collective members to spend excessive time waiting in the locker room to change into uniforms before clocking in and that the walk to the clock in stations was a significant distance, resulting in unpaid pre-shift time every day.  Again, Plaintiff's only support for these claims is his own declaration.  Regardless, even if true, such an allegation does not violate the FLSA.

17

While "[t]he FLSA guarantees compensation for all work or employment engaged in by employees covered by the Act[,] . . . [t]he Portal-to-Portal Act 'narrowed the coverage of the FLSA by excepting two activities that had been treated as compensable' under Supreme Court precedent: (1) 'walking on the employer's premises to and from the actual place of performance of the principal activity of the employee'; and, (2) 'activities that are "preliminary or postliminary" to that principal activity.'" *Edwards v. City of New York*, No. 08-CV-3134 (DLC), 2011 WL 3837130, at *6 (S.D.N.Y. Aug. 29, 2011) (quoting *Singh v. City of N.Y.,* 524 F.3d 361, 367 (2d Cir. 2008), *IBP, Inc. v. Alvarez,* 546 U.S. 21, 27 (2005), and 29 U.S.C. § 254(a)); *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1042 (2016) (noting that the Portal–to–Portal Act clarified that "compensable work does not include time spent walking to and from the employee's workstation" or other preliminary or postliminary activities.  Thus, even if true, Plaintiff's allegations on this issue would not violate the FLSA.

But here, Plaintiff's assertions are unfounded.  As Mr. Principe and Mr. Ayala testified employees are scheduled to start at different times so as to not overcrowd the locker room.  *See* Principe Tr. 90:8 – 91:23; Deposition Transcript of Jose Ayala ("Ayala Tr.")[11] p. 42:19-20.  Further, contrary to Plaintiff's assertions, it does not take a "significant" amount of time for employees to wait for an open bathroom and change into their work uniforms.  *See* Principe Tr. p. 89:24 – 90:5.  And the walk from the locker room to employees' work location, where they clock in, typically takes only a few minutes.  *See id.*, p. 84:6-11; Ayala Tr. p. 39:21-24.  Thus, the whole process—walking in the door to MLS, changing in the locker room, and then walking to an employee's place of work where they can clock in—takes approximately five (5) minutes. *See id*.  Therefore, there is no policy or practice of keeping employees off-the-clock for a

---

[11] Mr. Ayala's Deposition Transcript is attached to the Grindlinger Declaration as Exhibit K.

"significant" amount of time before they start work and, in any event, applicable case law holds that the time spent changing into uniforms and walking to an employee's workstation is not compensable.  *See Edwards*, 2011 WL 3837130 at *6.

Moreover, to the extent Plaintiff alleges that he did any work when walking from the locker room to his workstation; such allegation is directly contradicted by his own deposition testimony.  *See* Deposition of Derrick Stewart (Plaintiff Tr.) p. 191:3 – 192:14.[12]   Indeed, at deposition Plaintiff testified:

> **A.** … So I have to walk through crowds, walk through other -- the whole restaurant, and get to Spanish Diner and clock in.  Do you understand what I'm saying now?
>
> **Q.**  I do**.** And so you did not do any work until you tried to clock in? . . .
>
> *          *          *
>
> **THE WITNESS:** What is he trying to ask?
>
> **MR. LEE:** He's say [*sic*] are you working while you're walking from the locker to --
>
> **A**.  I don't know how you work and walk.

*Id*. at p. 191:15-192:13.  Plaintiff does not present any admissible evidence that other employees allegedly had to work while they were walking to their work station before clocking in.  Accordingly, Plaintiff's Motion should not be granted on this issue.

4.    Pre-Shift and Post-Shift Work

Plaintiff asserts that Defendants required Plaintiff and the putative collective members to perform tasks after they had clocked out, such as cleaning and scrubbing the floor, and such time was uncompensated.  Once again, Plaintiff's only evidence in support of these claims is his own declaration.  Thus, Plaintiff fails to satisfy his burden for conditional certification.

---

[12] Plaintiff's Deposition Transcript is attached to the Grindlinger Declaration as Exhibit M.

Mr. Principe and Mr. Ayala noted in their depositions that employees do not do pre- or post-shift work off-the-clock; all work performed by all employees is always conducted while clocked-in and no employee ever complained about having to work off-the-clock.  *See, e.g.,* Principe Decl., ¶ 8; Handbook, p. 11; Principe Tr., p. 75:11-18; Ayala Tr., p. 52:9-24.[13]  Plaintiff does not provide any specific information about employees other than himself that contradicts Mr. Principe's and Mr. Ayala's testimony.

Plaintiff's allegations that MLS required Plaintiff and putative collective members to perform unpaid pre- and post-shift work also fail to meet the threshold necessary for collective certification.  While Plaintiff asserts that MLS required him and putative collective members to assist with "various tasks" as soon as they left the locker room and before they could reach their workstations to clock in, and perform tasks after they had clocked out, Plaintiff's only evidence in support of these claims is his own declaration, which is refuted by Mr. Principe and Mr. Ayala.  *See* Principe Tr., p. 80:24 – 81:11; Ayala Tr., p. 50:9-16.  Nevertheless, Plaintiff does not present any details concerning other individuals who allegedly worked off-the-clock.  *See Ikikhueme*, 2013 WL 2395020 at *2-3; *Levinson*, 2003 WL 22533428 at *1-2; *see also Khan v. Airport Mgmt. Servs., Inc.,* No. 10–CV-7735 (NRB), 2011 WL 5597371, at *4-5 (S.D.N.Y. Nov. 16, 2011) (denying conditional certification because plaintiff relied exclusively on conclusory allegations); *Morales*, 2006 WL 278154 at *3 (denying conditional certification because plaintiffs offered only conclusory and unsupported allegations in support of their motion).

---

[13] Mr. Ayala also specifically testified that Plaintiff never cleaned and scrubbed after his shift, noting that if an employee did not finish their required tasks during their shift, "they would stay on the clock until they finished."  Ayala Tr., p. 56:10-57:3.

5.      Clock In/Clock Out Procedures

Finally, Plaintiff claims that Defendants had a policy of only allowing Plaintiff and putative collective members to clock in within five (5) minutes of their scheduled start and end times, otherwise manager assistance was required.  As a result of this policy, Plaintiff asserts that he and the putative collective members would spend 10 to 15 minutes looking for a manager to help them clock in, and it was difficult to find managers to clock employees in, which resulted in Plaintiff and the putative collective members performing two (2) hours of off-the-clock work each week because employees would have to finish their assigned tasks even after the end of their scheduled shifts and after they clocked out.  However, Plaintiff presents no evidence that other employees had similar experiences, which is fatal to his Motion.

While it is true that MLS has a policy of only permitting employees to clock in or out within five minutes of their scheduled start and end times, *see* Principe Tr., p. 67:13 – 68:4; Ayala Tr., p. 111:7 – 112:17, if any employee performed work outside of their scheduled work times, they would, in fact, be paid for such work because a manager would clock the employee in early or clock the employee out late.  *See* Principe Tr., p. 68:6-22; Ayala Tr., p. 112:18-25, 114:24 – 115:9.  Further, and contrary to Plaintiff's assertions, there are always managers around to assist employees with clocking in early or clocking out late if necessary.  *See* Principe Tr., p. 111:4 – 112:2; Ayala Tr., p. 62:4-25, 76:10-23.[14]  In fact, Mr. Ayala testified that the I-Pad where Plaintiff had to clock in was behind Mr. Ayala and that it would take seconds for him to clock in an employee who was trying to clock in outside of the five-minute grace period.  *See*

---

[14] Plaintiff contends that Mr. Ayala testified that it was "possible" it could take five minutes for a manager override, *see* Motion, p. 10 n. 5, but he mischaracterizes Mr. Ayala's testimony—Mr. Ayala did not state that it could take five minutes for an override, he only stated in response to a hypothetical question that he did not know what was possible, *see* Ayala Tr., pp. 76:24 – 77:5.

Ayala Tr., p. 74:2 – 77:5.

Moreover, Plaintiff has not presented any evidence that other employees were allegedly impacted in a similar manner.  *See Ikikhueme*, 2013 WL 2395020 at *2-3; *Levinson*, 2003 WL 22533428 at *1-2.  Plaintiff's only support for his allegations that he and others had to wait a "significant amount of time" for managers to clock them in or out is his own self-serving statements and ambiguous assertions that "other employees complained" and his purported "conversation with co-workers."  This is simply insufficient to support conditional certification after discovery is complete.  *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 460 (E.D.N.Y. 2014) ("Rather than rely on reasonable inferences, Plaintiffs must provide actual evidence of a factual nexus between their situation and the persons they claim are similarly situated.") (internal quotations, citations, and alterations omitted); *see also Sanchez*, 2014 WL 465542 at *2; *Morales*, 2006 WL 278154 at *3.  Accordingly, Plaintiff's motion should be denied.

## C.   Plaintiff Is Not Similarly Situated To Any Putative Collective Members

As set forth above, Plaintiff is not similarly-situated to any putative collective action member—Plaintiff has provided evidence related only to him.  Indeed, Plaintiff provides no information, besides his own self-serving declaration, wherein he asserts he spoke to other employees, about the experiences of any putative collective members.  *See Barfield*, 2005 WL 3098730 at *1 (denying conditional certification where the plaintiff alleged that, based on "limited anecdotal hearsay," other nurses were not paid overtime).

Notably, Plaintiff's declaration does not establish that he is similarly-situated to other MLS employees who were victims of a policy or practice that violated the FLSA.  In fact, Plaintiff does not provide any specific details concerning purported wage and hour violations impacting other employees; he does not explain the job duties of any other employees or how such individuals are similar to him; he does not explain how Defendants allegedly violated the

FLSA with respect to others; he does not detail how his situation is similar to others; or present any evidence that would allow this Court to find that he and putative collective action members are similar.  *See Zhang v. Bally Produce, Inc.*, No. 12-CV-1045 (FB) (JMA), 2013 WL 1729274, at *4 (E.D.N.Y. Apr. 22, 2013) (court "refuse[d] to conditionally certify a collective action" where plaintiff "unwilling (or unable) to offer any evidence that other [employees] had similar duties and responsibilities as plaintiff"); *Silva v. Calle 8, LLC*, No. 12-CV-677 (ERK) (MDG), 2013 WL 6330848, at *3 (E.D.N.Y. Dec. 5, 2013) ("[W]here plaintiffs fail to provide either evidentiary support, such as affidavits or supporting documents, or specific factual allegations, courts routinely deny conditional certification."); *Hallissey v. Am. Online, Inc.*, No. 99-CV-3785 (KTD), 2008 WL 465112, at *2 (S.D.N.Y. Feb. 19, 2008) (key question at conditional certification stage is "whether plaintiffs are similarly situated *with respect to their allegations that the law has been violated*") (citation omitted).  Plaintiff also fails to present any specific evidence that other employees who worked at other locations at MLS or had different job duties had the same experience as he did, which is fatal to his Motion.  *See id.*

Accordingly, Plaintiff has not presented evidence sufficient for the Court to find him similarly situated to any other MLS employee, much less the large swath of employees with various job duties and work locations that he seeks to represent.  Therefore, his Motion for conditional certification should be denied.

Nevertheless, if the Court is inclined to grant Plaintiff's Motion—which is inappropriate for the above-noted reasons—the collective should be limited to only cooks who worked at MLS, as all other non-tipped, non-exempt employees of MLS could not possibly be similarly situated to Plaintiff, and Plaintiff has not presented any evidence to support such a broad collective.  *See Wu v. Sushi Nomado of Manhattan, Inc.,* 17-CV-04661 (PGG) (DF), 2019 WL

3759126, *7-10 (S.D.N.Y. July 25, 2019) (denying conditional collective action certification for all non-exempt employees where Plaintiffs only put forth a factual showing to support inclusion in the collective of only specific categories of workers).

## II.   THE PROPOSED NOTICE CONTAINS NUMEROUS DEFECTS

If the Court grants Plaintiff's Motion, the proposed Notice submitted by Plaintiff is defective in several respects and should <u>not</u> be approved as it is currently drafted.[15]   However, rather than litigating over the wording of the notice, Defendants suggest that the parties be given

---

[15] Among other issues, the notice is to be sent to employees who have worked at MLS within the past six years from the filing of the Complaint, which is well beyond the two or three year statute of limitations period under the FLSA.  *See*  29 U.S.C. § 255(a); *Perez v. De Domenico Pizza & Rest., Inc.*, 204 F. Supp. 3d 494, 496 (E.D.N.Y. 2016) ("In the absence of direction from the Second Circuit, the Court finds the reasoning supporting the use of the three-year notice period to be more persuasive [than that of the six-year notice period].... As to potential plaintiffs who are time-barred from relief under the FLSA, there is 'no purpose in sending such employees a notice informing them that (1) there is a pending opt-in lawsuit, (2) they may not opt in, and (3) they may later receive another notice should their status change due to [Rule 23] class certification.'") (citation omitted); *Luo v. Panarium Kissena Inc.,* 15-CV-3642 (WFK) (ST), 2016 WL 11263668, at *13 (E.D.N.Y. Nov. 23, 2016) ("Typically, the notice period is measured 'from the date of the Court's order granting plaintiffs' motion for conditional certification, not from the filing of the complaint.'") (quoting *Hernandez v. Immortal Rise, Inc.,* No. 11-CV-4360 (RRM) (LB), 2012 WL 4369746, at *7 (E.D.N.Y. Sept. 24, 2012)).  The proposed notice gives putative collective members ninety days to submit their consent to sue forms; most courts give individuals only sixty days to submit such forms. *See Yap v. Mooncake Foods, Inc.,* 146 F. Supp. 3d 552, 566-67 (S.D.N.Y. 2015) ("'[C]ourts in this Circuit routinely restrict the opt-in period to sixty days,' and the opt-in period in this case will be sixty days.") (quoting *Wang v. Empire State Auto Corp.*, No. 14–CV–1491 (WFK), 2015 WL 4603117, at *11 (E.D.N.Y. July 29, 2015)). The proposed notice also fails to articulate Defendants' litigation position. *See Knox v. John Varvatos Enters. Inc.,* 282 F. Supp. 3d 644, 665 (S.D.N.Y. 2017) (noting that collective action notice should explain defendant's position with respect to the allegations).  Further, the proposed notice does not explain the contingency fee arrangement between Plaintiff and counsel. *See Du v. Dingxiang Inc.,* 19-CV-11924 (JPO) (BCM), 2020 WL 7404984, at *10 (S.D.N.Y. Dec. 17, 2020) (noting that the collective action notice should detail counsel's fee arrangement).   Finally, the proposed notice does not contain the contact information of Defense counsel.  *See Chen. v. Kicho Corp*., 18-CV-7413 (PMH) (LMS), 2020 WL 1900582, at *10 (S.D.N.Y. Apr. 17, 2020) ("The Court agrees with other '[c]ourts in this Circuit[, which] have generally concluded' that the contact information of Defendants' counsel 'is appropriate for inclusion in a notice of collective action.'") (quoting *Slamna v. Api Rest. Corp.,* No. 12-CV-757 (RWS), 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013)).

a reasonable amount of time to meet and confer regarding the content of the notice.  *See Fernandez v. Sharp Mgmt. Corp.*, No. 16-CV-0551 (JGK) (SN), 2016 WL 5940918, at *6 (S.D.N.Y. Oct. 13, 2016) (requiring the parties to "confer and make a good-faith effort to agree to the text of the proposed notice").  If the parties have any disputes regarding the notice after such meet-and-confer, they should then bring any such dispute to the Court.  *See O'Jeda v. Viacom, Inc.,* No. 13-CV-5658 (JMF), 2014 WL 1344604, at *2 (S.D.N.Y. Apr. 4, 2014) (rejecting plaintiff's proposed notice and directing the parties to submit a revised notice after meeting and conferring in good faith).

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs' Motion for Conditional Certification of FLSA Collective and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b) should be denied in its entirety.

Dated:   New York, New York               FOX ROTHSCHILD LLP
         January 4, 2021

                                          By*:    /s/ Glenn S. Grindlinger*
                                              Carolyn D. Richmond, Esq.
                                              Glenn S. Grindlinger, Esq.
                                              Matthew C. Berger, Esq.
                                              101 Park Avenue, 17th Floor
                                              New York, New York 10178
                                              Tel:  (212) 878-7900
                                              Fax:  (212) 692-0940

                                              *Attorneys for Defendants*