UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DERRICK STEWART, on behalf of himself, FLSA Collective Plaintiffs and the Class,

Plaintiff,

-v-

HUDSON HALL LLC, d/b/a MERCADO LITTLE SPAIN, et al.,

Defendants.

CIVIL ACTION NO.: 20 Civ. 885 (PGG) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE PAUL G. GARDEPHE**, United States District Judge:

**I. INTRODUCTION**

Plaintiff Derrick Stewart ("Stewart") filed this putative class and collective action asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, and the New York Labor Law ("NYLL"), NYLL § 650 et seq., against Defendants Hudson Hall, LLC d/b/a Mercado Little Spain ("Hudson Hall"), Think Food Group, LLC ("Think") (Hudson Hall and Think, together the "Corporate Defendants"), and José Ramon Andrés Puerta a/k/a José Ramon ("Andrés") (Andrés and the Corporate Defendants, together "Defendants").[1]  Stewart is seeking to recover: (1) unpaid overtime wages; (2) unpaid wages for off-the-clock work; (3) statutory penalties; (4) liquidated damages; and (5) attorneys' fees and costs.  (ECF No. 91-1 ¶¶ 1–2).

Before the Court is Plaintiffs' Motion to Amend (the "Motion" (ECF No. 90)) seeking leave to file a Second Amended Class Action and Collective Action Complaint (the "SAC" (ECF No. 91-

---

[1] Stewart also originally named as a Defendant Hudson Hall Holdings LLC ("Holdings"), which, as discussed below, is no longer a Defendant.  (ECF Nos. 1, 26).

1

1)). The SAC includes three categories of proposed amendments: (i) deletion of allegations and claims against Holdings (the "Holdings Claims"); (ii) additional allegations regarding Stewart's assertion that Think and Andrés are his employers under FLSA (the "Employer Allegations"); and (iii) new allegations concerning Stewart's "off-the-clock" claims (the "Off-the-Clock Allegations").[2] (See ECF Nos. 91-1; 100 at 7). Defendants do not oppose Stewart's Motion as to the Holdings Claims and the Employer Allegations,[3] but do oppose the Off-the-Clock Allegations as untimely, prejudicial, in bad faith, and futile. (ECF No. 100 at 7–8). For the reasons set forth below, the Court respectfully recommends that the Motion be GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

### A. Factual Background

Factual summaries of Stewart's allegations and claims appear in the Court's Report and Recommendation (the "R&R" (ECF No. 53)) concerning Defendants' motion to dismiss the First Amended Complaint ("FAC") (ECF Nos. 26, 32), and in the District Court's Order adopting the R&R (the "MTD Order") (ECF No. 87). The Court incorporates those summaries and focuses primarily on the additional facts in the SAC, the truth of which the Court presumes only for purposes of the Motion. See N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 119 (2d Cir. 2013); Stolarik v. N.Y. Times Co., 323 F. Supp. 3d 523, 529 n.2 (S.D.N.Y. 2018).

---

[2] While Stewart labels category (iii) as "time-shaving" allegations, the Court agrees with Defendants that they are more accurately labeled as "off-the-clock" allegations. (See ECF No. 100 at 7 n.2).
[3] The Court acknowledges that "Defendants do not concede that [Think] or [] Andrés were Plaintiff's employer," and that this remains a disputed issue. (ECF No. 100 at 8 n.3).

1. **Mercado Little Spain**

Defendants own and operate several restaurants, bars, and kiosks that comprise "Mercado Little Spain," located at 10 Hudson Yards in Manhattan.  (ECF No. 91-1 ¶¶ 6–7). Stewart alleges that Mercado Little Spain's restaurants, bars, and kiosks "operate as a single[] integrated enterprise and are engaged in related activities, share common ownership, and have a common business purpose" insofar as they, inter alia, share similar "Iberian" menus, present their menus on Mercado Little Spain's website, employ "interchangeable" employees, share payroll methods, have a centralized labor relations system and marketing department, and share social media accounts.  (Id. ¶ 10(a)–(g)).  In addition, Mercado Little Spain's restaurants, inter alia, share a common customer inquiry form, jointly sell a gift card, jointly post and accept applications for employment positions, and offer reservations through a common website.  (Id. ¶ 10(h)–(n)).  Stewart worked at various outlets within Mercado Little Spain from March 1, 2019 until his termination on September 15, 2019.  (Id. ¶¶ 30–33).

2. **The Employer Allegations**

The SAC alleges that the "Corporate Defendants all exercised operational control as it relates to all employees including" Stewart and the members of the putative collective and class. (ECF No. 91-1 at ¶ 13).  This control included the power, which the Corporate Defendants also delegated to managers and supervisors, "to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees . . . ." (Id.)  Hudson Hall presented itself as an employer by placing its name on Stewart's and other employees' paystubs.  (Id. ¶ 13(a)).  Think presented itself as an employer by placing its name on Stewart's and other employees' wage notices.  (Id. ¶ 13(b)).

Think's power to hire and fire employees was indicated by the facts that applications to Mercado Little Spain were redirected to Think's website, that Think drafted job descriptions for Stewart and other members of the putative collective and class, that Think operated the Human Resources Department receiving complaints from Mercado Little Spain's employees, and drafted the employee handbook. (Id. ¶ 13(c)–(f)). Hudson Hall and Think also exercised operational control insofar as they applied for requisite licenses, such as liquor licenses. (Id. ¶ 13(g)).

As against Andrés, the SAC alleges that he exercised operational control through interviewing, hiring, and training personnel, developing menus, and engaging "in quality control of the food." (ECF No. 91-1 ¶ 14).

### 3. The Off-the-Clock Allegations

The SAC alleges two new or expanded categories of off-the-clock work. First, the SAC alleges that Stewart was required to appear at Mercado Little Spain "before his scheduled start time and before he was allowed to clock-in." (ECF No. 91-1 at ¶ 38). For example, Stewart (and other members of the putative class and collective) had to change in the locker room into his uniform chef's jacket, which Defendants supplied daily and he could not take home. (Id.) Because Mercado Little Spain had a large number of employees and only two bathroom stalls, "the time to change was further exacerbated." (Id. ¶ 39). In addition, Stewart was required to bring equipment, such as knives, to work, but due to the small number of lockers, "it took additional time to find a locker not in use, or find a person both trustworthy and willing to share." (Id. ¶ 40). After changing, Stewart (and other employees) had to walk from the locker room to a work station, during which time supervisors "would often ask for assistance on various tasks . . ." (Id. ¶ 41). These "off-the-clock activities," which the SAC characterizes as "integral and

4

indispensable to [the employees'] principal activities at their employment with Defendants[,]" totaled "an average of 15-20 minutes of uncompensated pre-shift work time every day" for Stewart and other members of the putative class and collective. (Id. ¶¶ 41, 43–44).

Second, the SAC alleges that "Defendants had a policy to not compensate" Stewart and the other members of the putative class and collective for breaks lasting "20 minutes or less." (ECF No. 91-1 ¶ 42). The SAC also alleges that "Defendants had a system of editing" employees' time-sheets with the effect of "reducing their compensable time." (Id. ¶ 45).

### B. Procedural Background

On January 31, 2020, Stewart filed the original complaint in this action, and on April 27, 2020, he filed the FAC. (ECF Nos. 1, 26). Defendants moved to dismiss the FAC (ECF No. 32), and on October 19, 2020, the Court issued the R&R recommending that the claims against Holdings and Think be dismissed, that the claims against Andrés be allowed to proceed, and that, although he did not request leave to amend, Stewart be allowed one final opportunity to amend to correct the deficiencies in his claims against Holdings and Think. (ECF No. 53).

Pursuant to the Case Management Plan (the "CMP"), amended pleadings were due by July 15, 2020, fact discovery was to close by December 31, 2020, and expert discovery was to close by February 15, 2021. (ECF No. 41). On December 4, 2020, Stewart filed a motion seeking conditional certification of a collective under FLSA (the "Collective Motion"), which has now been fully briefed and is awaiting the Court's ruling. (ECF No. 60). Late on the evening of December 31, 2020, Stewart moved for an extension of the fact discovery deadline (ECF No. 69), which the Court denied. (ECF No. 82).

In February 2021, Stewart and Defendants filed letters seeking a conference before Judge Gardephe to discuss their anticipated motions for summary judgment. (ECF Nos. 84–85).

On February 24, 2021, Judge Gardephe issued the MTD Order, which adopted the R&R, granted the motion to dismiss as to Holdings and Think, and denied the motion as to Andrés. (ECF No. 87 at 16). The MTD Order granted Stewart leave to amend only as to Holdings and Think. (Id.) On March 8, 2021, Stewart filed the Motion. (ECF No. 90).

On March 12, 2021, pursuant to the briefing schedule ordered by Judge Gardephe, Stewart filed a motion to certify a class (the "Class Motion"). (ECF Nos. 93, 95–98, 102).

Thus, at this time, fact and expert discovery have closed, and in addition to the current Motion, also pending are the Collective Motion, Class Motion, and the parties' respective requests for permission to move for summary judgment.

### III. LEGAL STANDARDS

**A. Motion to Amend**

**1. Rule 15**

Federal Rule of Civil Procedure 15 provides that a court "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Rule encourages courts to determine claims "on the merits" rather than disposing of claims or defenses based on "mere technicalities." Monahan v. NYC Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000). The Second Circuit has explained that "district courts should not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000). Courts in this District have held that denial of a motion to amend is appropriate where "(1) the movant is guilty of undue delay, (2)

the movant has acted in bad faith, (3) the amendment would be futile, or (4) the amendment would prejudice the opposing party." Procter & Gamble Co. v. Hello Prods., LLC, No. 14 Civ. 649 (VM) (RLE), 2015 WL 2408523, at *1 (S.D.N.Y. May 20, 2015) (citing State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)); see Williams v. Citigroup Inc., 659 F.3d 208, 213–14 (2d Cir. 2011) (per curiam) (reiterating Supreme Court precedent explaining proper grounds for denying motion to amend as "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]").

While a motion to amend under Rule 15(a)(2) may be filed at any stage of the litigation, when "a proposed amendment is based on 'information that the party knew or should have known prior to the deadline [to file an amendment], leave to amend is properly denied.'" Hyo Jung v. Chorus Music Studio, Inc., No. 13 Civ. 1494 (CM) (RLE), 2014 WL 4493795, at *2 (S.D.N.Y. Sept. 11, 2014) (citing Soroof Trading Dev. Co. v. GE Microgen, Inc., 283 F.R.D. 142, 147 (S.D.N.Y. 2012); Procter & Gamble Co., 2015 WL 2408523, at *1–2 (finding undue delay and prejudice where party was aware of information well before deadline to amend pleadings but waited ten months to move to amend).

Prejudice occurs when an amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Soroof Trading, 283 F.R.D. at 147 (citing Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)).

**2. Rule 16**

Federal Rule of Civil Procedure 16(b)(4) states that a court-ordered schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[W]hen a scheduling order has been entered which has restricted a party's ability to file an amended complaint, Rule 15's liberal standard must be balanced against the more stringent standard of Rule 16, under which such an order 'may be modified only for good cause.'" Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 16(b)(4)).  Courts in this District have held that a party cannot establish good cause where "the proposed amendment rests on information that the party knew, or should have known" before the deadline to amend.  Id. (internal citations omitted).  In general, "[b]ecause compliance with Rule 16 is a threshold matter which may obviate the Rule 15 analysis, that issue [should be] addressed first." Id.; see Holmes v. Grubman, 568 F.3d 329, 334–35 (2d Cir. 2009) ("[T]he lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.") (internal citations omitted).

Determining whether a motion to amend is governed by Rule 15 or Rule 16 "turns on whether the motion is timely filed under [the] scheduling order in place in th[e] action.  If it is timely filed, only Rule 15's liberal standard governs; if it is not, [the moving party] must also show good cause for the amendment under Rule 16." Soroof Trading, 283 F.R.D. at 147–48 (requiring motion to amend filed after court-ordered deadline to meet requirements of both Rule 15(a)(2) and Rule 16(b)(4)).

8

## IV. DISCUSSION

As set forth above, Defendants do not oppose Stewart's proposed amendments as to the Holdings Claims and the Employer Allegations, and therefore, the Court recommends that the Motion be granted with respect to those two categories of amendments.

For the reasons set forth below, however, the Court respectfully recommends that the Motion be denied as to the Off-the-Clock Allegations.

### A. Stewart Has Failed to Show Good Cause to Amend Under Rule 16(b).

Stewart's request to add the Off-the-Clock Allegations is long past—nearly nine months—the July 2020 deadline for amendment of pleadings set forth in the CMP. (ECF No. 41 ¶ 8(b)). In addition, the Off-the-Clock Allegations are outside the scope of the amendments Judge Gardephe permitted in the MTD Order, which specified only that Stewart could amend "as to" Holdings and Think. (ECF No. 87 at 16). Accordingly, in the first instance, Stewart must satisfy the good cause requirement of Rule 16. See Soroof Trading, 283 F.R.D. at 147 (finding that motion to amend was "subject to Rule 16's good cause standard because it was filed after the deadline for amendments contained in the scheduling order")).

As noted above, "the key question under Rule 16's good cause standard is whether [Stewart] has acted diligently[,]" which "depends on whether the proposed amendment relies on information [he] knew or should have known before the [July 15, 2020] deadline for amendments to the pleadings." Soroof Trading, at 148. Defendants argue that Stewart "knew or should have known" the Off-the-Clock Allegations when he filed his FAC. (ECF No. 100 at 13). Defendants reject any suggestion that Stewart was "unaware of his own actions during the course of his employment," and point out that Stewart's time cards, reflecting his unpaid breaks and

9

Defendants' editing of his hours, were produced in March 2020.  (Id. at 14–15).  Defendants also point out that Stewart did not seek leave to amend the FAC, and did not file any objections to the R&R's limited recommendation that he be granted leave to amend only as to Holdings and Think.  (Id. at 11, 13).  In response, Stewart admits that "[i]t is indeed true that some of the facts introduced in the [] SAC were known to [him] from personal experience earlier."  (ECF No. 104 at 4).  He contends, however, that it was not until the discovery was complete and he took Defendants' depositions that he knew he "would be able to prove the allegations in question on a class-wide basis . . . ."  (Id.)

The problem with Stewart's argument is that he focuses on when he learned of the legal significance of the Off-the-Clock Allegations, not when he knew about the information on which they were based, which is what matters for the good cause analysis under Rule 16.  See Touchstream Techs., Inc. v. Vizbee, Inc., No. 17 Civ. 6247 (PGG) (KNF), 2019 WL 3304884, at *3 (S.D.N.Y. July 23, 2019) (finding good cause absent where plaintiff failed to identify new, previously-unknown facts); Perfect Pearl, 889 F. Supp. 2d at 458–59 (holding that plaintiff had not shown good cause to add facts about which "it would have taken [] little investigation and probably no more than 15 minutes' time" to learn); Dumann Realty, LLC v. Faust, No. 09 Civ. 7651 (VM) (KNF), 2011 WL 2749553, at *3 (S.D.N.Y. July 8, 2011) (holding that plaintiff failed to show good cause to amend where it did not identify facts "that it did not know or could not have learned, through reasonable diligence" sooner); see also Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) (noting that "the court is free to conclude that ignorance of the law is an unsatisfactory excuse" for delay in seeking leave to amend).  Having failed "to act on information that was clearly in his possession" no later than March 2020, when Defendants

produced his timecards—the information concerning the time to change and walk to his work station having been known to him since his employment at Mercado Little Spain in 2019—the Court finds that Stewart has not shown good cause under Rule 16(b) to permit the addition of the Off-the-Clock Allegations now.  Perfect Pearl, 889 F. Supp. 2d at 458–59.

### B. Stewart Has Failed to Meet the Requirements of Rule 15.

#### 1. Delay

Defendants contend that Stewart has failed to offer a "satisfactory explanation justifying his delay in seeking to amend the FAC."  (ECF No. 100 at 12).  As noted above, Stewart contends that he did not know he would be able to prove the Off-the-Clock Allegations on a class-wide basis until after Defendants' depositions, and that "the status of the FAC was still a pending question" until the MTD Order on February 24, 2021.  (ECF No. 104 at 5).

Stewart's asserted justifications again fall short, however, because he does not explain why he did not seek leave to amend to add the Off-the-Clock Allegations (i) in opposition to the motion to dismiss the FAC, (ii) in an objection to the R&R's recommendation that leave to amend be granted only as to the claims against Think and Holdings, or (iii) promptly following Defendants' depositions in December 2020.  Instead, Stewart waited until after fact discovery closed, the Collective Motion and Class Motion were filed, and the parties sought leave to file motions for summary judgment.  In addition, the nature of the Off-the-Clock Allegations shows that Stewart knew during his employment that other employees were having the same experience of needing to wait to change in one of the two bathroom stalls, to find an available locker, and to walk from the locker room to assigned workstations, such that he did not need to await Defendants' depositions to know whether he could assert these allegations on a collective-

or class-wide basis. (ECF No. 91-1 ¶¶ 39 (describing "hundreds of employees" who had to "wait for the locker-room to change"); 40 (describing "additional time to find a locker not in use, or find a person both trustworthy and willing to share"); 41 (describing length of walk from locker room to workstations)).

Accordingly, the Court finds that Stewart has failed to provide a satisfactory reason for his delay in seeking to amend. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 201 (2d Cir. 2007) (affirming denial of motion to amend filed more than two months after discovery was completed and 18 months after case commenced); Bromfield v. Bronx Lebanon Special Care Ctr., No. 16 Civ. 10047 (ALC) (HBP), 2019 WL 1873156, at *3–4 (S.D.N.Y. Apr. 26, 2019) (finding "inordinate" delay for motion to amend filed two years after original complaint, four months after close of fact discovery, and after the deadline for dispositive motions); Toliver v. Office-Dep't of Corr. NYC, No. 10 Civ. 5354 (DAB), 2013 WL 3783727, at *1, 6 (S.D.N.Y. July 9, 2013) (finding undue delay for motion to amend filed two years after original complaint and after dispositive motions were filed); Davidowitz v. Patridge, No. 08 Civ. 6962 (NRB), 2010 WL 1779279, at *1, 3 (S.D.N.Y. Apr. 23, 2010) (finding undue delay for motion to amend filed thirteen months after original complaint, and two months after the close of fact discovery).

### 2. Prejudice

Defendants argue that allowing the Off-the-Clock Allegations will prejudice them because the new allegations will require additional discovery, including re-deposing Stewart, and may require a new motion to dismiss or changes to the already-briefed Collective Motion and Class Motion and the requested summary judgment motion. (ECF No. 100 at 17). Stewart contends that Defendants have been aware of the Off-the-Clock Allegations "for quite some time," noting

that his Collective Motion "spelled out" the "factual predicates" to these allegations and that Defendants responded to those allegations in their opposition. (ECF No. 104 at 5–12). Stewart also points out that Defendants questioned him during his deposition about his process for coming into the workplace, the knives he brought to work, and his unpaid breaks shorter than 20 minutes. (Id.)

The Court has no trouble finding that allowing the Off-the-Clock Allegations at this advanced stage of the litigation has prejudiced Defendants and would impose additional prejudice. First, Defendants have already moved to dismiss the FAC, and have signaled their indication that they would move to dismiss again if the amendments are allowed. (ECF No. 100 at 17). Second, Defendants have already invested resources in opposing the Collective Motion and the Class Motion, each of which would need to be re-briefed if the Off-the-Clock Allegations are added. (Id.) Until the SAC, the only source of the Off-the-Clock Allegations was Stewart's declaration, and they did not appear in the FAC, which is what provided Defendants "notice of what the plaintiff's claim is and the grounds upon which it rests." McCarthy, 482 F.3d at 201 (internal citation omitted). (See ECF No. 104 at 10).[4] Third, Defendants would need to re-depose Stewart on the Off-the-Clock Allegations, and may seek additional discovery as well, which would require reopening the fact discovery that ended over three months ago. Finally, Defendants have already outlined their intended arguments in support of summary judgment, which they would need to revisit in light of the amendments. As a result, the resolution of this action will be delayed

---

[4] The full quote from Defendants' opposition that appears in Stewart's reply in support of the Motion is: "While Plaintiff asserts that MLS required him and putative collective members to assist with 'various tasks' as soon as they left the locker room and before they could reach their workstations to clock in, and perform tasks after they had clocked out, Plaintiff's only evidence in support of these claims is his own declaration, which is refuted by Mr. Principe and Mr. Ayala. See Principe Tr., p. 80:24–81:11; Ayala Tr., p. 50:9-16." (ECF No. 104 at 10 (quoting ECF No. 70 at 18)).

by months. Each of these examples of prejudice support the finding that Defendants have been prejudiced and would sustain additional prejudice if the Court were to allow the Off-the-Clock Allegations. See McCarthy, 482 F.3d at 202 (affirming denial of leave to amend after discovery had closed and defendants had moved for summary judgment); Lesnik v. Lincoln Fin'l Adv. Corp., No. 18 Civ.03656 (PAC), 2019 WL 6169971, at *3 (S.D.N.Y. Nov. 20, 2019) (finding that amendments would prejudice defendant, who would need to redepose plaintiff and seek additional depositions, thereby delaying resolution of the dispute); Bromfield, 2019 WL 1873156, at *4 (finding that defendants would be prejudiced by "proposed amendment[s] [that] would require the reopening of discovery" resulting in expense and delay in resolving the dispute); Ferring B.V. v. Serenity Pharm., LLC, No. 17 Civ. 9922 (RWS), 2019 WL 117316, at *4 (S.D.N.Y. Jan. 7, 2019) (finding that defendants would be "unfairly prejudiced" by proposed amendments that "could render moot" and require renewal of pending motions "at great cost to both parties and the Court"); Davidowitz, 2010 WL 1779279, at *4–5 (finding that other parties would be prejudiced by amendment after the close of fact discovery); Justin R. v. Bloise, No. 06 Civ. 6228 (BSJ) (RLE), 2008 WL 926507, at *1 (S.D.N.Y. Apr. 4, 2008) (denying motion to amend where defendants "would be prejudiced by having to expend additional resources to conduct discovery").

    3. **Bad faith**

Defendants ask the Court not to take "at face value" Stewart's assertions "that he was unaware of things he allegedly personally experienced during the course of his own employment" and to find that the Motion is in bad faith. (ECF No. 100 at 18–19). Stewart now concedes that he knew about at least "some" of the facts in the SAC "from personal experience earlier." (ECF

No. 104 at 4). As the Court noted above, however, Stewart knew about <u>all</u> of the allegations no later than March 2020—many of them during his employment—yet made no effort to seek leave to amend while fact discovery was pending, let alone before the amendment deadline in the CMP. (<u>See</u> § IV.A <u>supra</u>). Ignoring court-ordered deadlines and disregarding the potential waste of an adversary's—and the Court's—resources, "particularly when the proposed amendments concern facts clearly within [Stewart's] knowledge when previous complaints were filed" falls far short of the good faith that the courts and Rule 15 require to justify allowing a post-fact discovery amendment of the sort that Stewart requests here. <u>Kant v. Columbia Univ.</u>, No. 08 Civ. 7476 (PGG), 2010 WL 807442, at *7 (S.D.N.Y. Mar. 9, 2010) (finding that plaintiff's "unexplained new recollection concerning" a key element of his claim "strongly suggest[ed] bad faith"); <u>see</u> <u>Optionality Consulting PTE. LTD. v. Edge Tech. Grp. LLC</u>, No. 18 Civ.5393 (ALC), 2021 WL 310942, at *5 (finding that "[p]laintiff's unexplained recollection of [] critical facts" underlying his claim led "the Court to believe that they are not being [set] forth in good faith"). Accordingly, the Court finds that Stewart's request to add the Off-the-Clock Allegations at this juncture is not in good faith and weighs against granting the Motion.

    4. **Futility**

Having found that the Motion fails to satisfy the requirements of Rule 15 because Stewart unduly delayed in seeking to add the Off-the-Clock Allegations, because allowing these amendments would inflict undue prejudice on Defendants, and because Stewart has not shown good faith, the Court need not reach the additional question whether those amendments would be futile. <u>See</u> <u>In re Keurig Green Mtn. Single-Serve Coffee Antitrust Litig.</u>, No. 14 MD 2542 (VSB) (SLC), 2020 WL 3256871, at *5 (S.D.N.Y. June 16, 2020) (denying motion to amend based on delay

15

and prejudice without reaching futility); Lesnik, 2019 WL 6169971, at *3 (same); Dawson v. Pelican Mgmt., Inc., No. 11-CV-1753 (KAM) (LB), 2012 WL 2357308, at *4 n.7 (E.D.N.Y. June 1, 2012) (same); Davidowitz, 2010 WL 1779279, at *5 (same); Justin R., 2008 WL 926507, at *1 (same).

The Court notes, however, that since the enactment of the Portal-to-Portal Act, 29 U.S.C. § 254(a), it has been well-settled that "'checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks'" (29 C.F.R. § 790.7(g)) are not compensable under FLSA absent a showing that such activities "involve[e] specialized tools or equipment [or] the donning/doffing of unique protective gear [] so intrinsically connected to the employee's principal activity[.]" Haight v. The Wackenhut Corp., 692 F. Supp. 2d 339, 343 (S.D.N.Y. 2010) (citing Steiner v. Mitchell, 350 U.S. 247, 247 (1956)); see IBP, Inc. v. Alvarez, 546 U.S. 21, 27 (2005) (holding that Portal-to-Portal Act narrowed FLSA by excluding walking on employer's premises to and from the workstation and activities that are "preliminary or postliminary" to employee's "principal activity"). Thus, "'changing clothes and showering under normal conditions'"—i.e., those that do not involve, for example highly dangerous chemicals—are "indisputably non-compensable." Gorman v. Consol. Edison Corp., 488 F.3d 586, 590 (2d Cir. 2007) (quoting Steiner, 350 U.S. at 249). Under this precedent, Stewart's allegations concerning donning and doffing his uniform jacket, waiting to change or for a locker, and walking to his workstation are generic activities that are not "integral to his principal activities" and therefore fail, as a matter of law, to state a claim under FLSA. See Gorman, 488 F.3d at 594 (holding that donning and doffing generic protective gear, walking to locker room, and waiting were "'relatively effortless,' non-compensable, preliminary tasks") (quoting Reich v. N.Y.C.

Transit Auth., 45 F.3d 646, 649 (2d Cir. 1995)); Haight, 692 F. Supp. 2d at 344–46 (holding that proceeding to locker rooms, donning and doffing generic protective gear, and walking to workstations were "generic activities that [we]re not essentially linked to the essential activity" and therefore were not compensable).

As to Stewart's allegation that he was not compensated for breaks shorter than 20 minutes, the Court similarly concludes that he has failed to state a plausible claim. The SAC contains the single conclusory allegation that, "At all times relevant to this action, Defendants had a policy to not compensate Plaintiff, FLSA Collective Plaintiffs, and the Class Members for any and all breaks lasting 20 minutes or less." (ECF No. 91-1 ¶ 42). Stewart correctly notes (ECF No. 104 at 13) that the United States Department of Labor ("DOL") has stated that "determining whether a work break is a 'bona fide meal period' that may be excluded from compensable time is a fact-bound inquiry for which the length of the break is merely one factor." Perez v. Wells Fargo & Co., No. 14-CV-0989 (PJH), 2016 WL 4180190, at *10 (N.D. Cal. Aug. 8, 2016) (quoting DOL's Field Operations Handbook). As Defendants correctly note in return (ECF No. 100 at 21–22), however, to allege "a plausible claim" that these breaks were compensable, Stewart must allege more than he has here. See Lundy v. Catholic Health Sys. of L.I. Inc., 711 F.3d 106, 114 (2d Cir. 2013) (affirming dismissal of conclusory claims that only "invited speculation" about whether FLSA had been violated); Perez, 2016 WL 4180190, at *10–11 (listing other factors under the Field Operations Handbook for determining whether a short break is a non-compensable meal break and noting that it appeared that the "failure to compensate some of the members of the putative class for recorded breaks of 20 minutes or less does not violate New York law"). Accordingly, the

17

Court finds that Stewart has failed to allege in the SAC a plausible claim that his short meal breaks were compensable under FLSA, and therefore, this amendment would also be futile.

## V. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that the Motion be GRANTED IN PART as to the Holdings Claims and the Employer Allegations, and DENIED IN PART as to the Off-the-Clock Allegations. The Clerk of the Court is respectfully directed to close ECF No. 90.

Dated:     New York, New York
            April 14, 2021

_____
SARAH L. CAVE
United States Magistrate Judge

*          *          *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  <u>See also</u> Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Gardephe.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).