UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DERRICK STEWART, on behalf of himself, FLSA Collective Plaintiffs and the Class,<br><br>                      Plaintiff,<br><br>      -v-<br><br><br>HUDSON HALL LLC, d/b/a MERCADO LITTLE SPAIN, <u>et</u> <u>al.</u>,<br>                    Defendants. | CIVIL ACTION NO.: 20 Civ. 885 (PGG) (SLC)<br><br>**<u>OPINION & ORDER</u>** |

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Derrick Stewart ("Stewart") filed this putative class and collective action asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, and the New York Labor Law ("NYLL"), NYLL § 650 <u>et seq.</u>, against Defendants Hudson Hall, LLC d/b/a Mercado Little Spain ("Hudson Hall"), Think Food Group, LLC ("Think") (Hudson Hall and Think, together the "Corporate Defendants"), and José Ramon Andrés Puerta a/k/a José Ramon ("Andrés") (Andrés and the Corporate Defendants, together "Defendants").[1]  Stewart is seeking to recover: (1) unpaid overtime wages; (2) unpaid wages for off-the-clock work; (3) statutory penalties; (4) liquidated damages; and (5) attorneys' fees and costs.  (ECF No. 91-1 ¶¶ 1–2).

Before the Court is Stewart's Motion for Conditional Certification of FLSA Collective and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b) (the "Collective Motion" (ECF

---

[1] Stewart also originally named as a Defendant Hudson Hall Holdings LLC ("Holdings"), which is no longer a Defendant.  (ECF Nos. 1, 26, 87).

No. 60)).  Stewart asks the Court to grant conditional certification of his FLSA claim as a representative collective action on behalf of "all current and former non-exempt employees, including line cooks, cooks, food preparers, stock persons, counterpersons, porters, dishwashers, and food runners, employed by Defendants at any Restaurant, Bar, or Kiosk at Defendants' place of business . . . on or after" January 31, 2014 (the "Proposed Collective").  (ECF No. 60-1 at 2). Defendants oppose the Collective Motion.  (ECF No. 70).  For the reasons set forth below, the Collective Motion is DENIED.

## II. BACKGROUND

### A. Factual Background[2]

Factual summaries of Stewart's allegations and claims appear in the Court's Report and Recommendation (the "MTD R&R" (ECF No. 53)) concerning Defendants' motion to dismiss the First Amended Complaint ("FAC") (ECF Nos. 26, 32), in the District Court's Order adopting the MTD R&R (the "MTD Order") (ECF No. 87), and in the Report and Recommendation concerning Plaintiffs' motion for leave to amend to file the Second Amended Complaint ("SAC") (the "MTA R&R") (ECF No. 105).  The Court incorporates those summaries and focuses here on facts relevant to the Collective Motion.[3]

---

[2] Defendants have disputed and continue to dispute Stewart's claims and deny any liability (See ECF Nos. 32, 70, 100), and therefore, nothing in the Factual Background should be deemed as a conclusive determination of any facts for purposes of any proceeding in this action.

[3] In connection with the Collective Motion, I have considered:  the FAC (ECF No. 26); Stewart's Memorandum of Law in Support and annexed exhibits (ECF Nos. 61, 61-1 – 61-10); the Declaration of C.K. Lee in Support (ECF No. 62); Stewart's Declaration in Support (ECF No. 63); Defendants' Memorandum of Law in Opposition (ECF No. 70); the Declaration of Glenn S. Grindlinger in Opposition and annexed exhibits (ECF Nos. 71, 71-1 – 71-13); and Stewart's Reply Memorandum of Law in Support and annexed exhibits (ECF Nos. 77, 77-1 – 77-2).

### 1. __Mercado Little Spain__

Defendants own and operate several restaurants, bars, and kiosks that comprise "Mercado Little Spain," located at 10 Hudson Yards in Manhattan.  (ECF Nos. 105 at 3; 71-1 ¶ 2). Stewart alleges that Mercado Little Spain's restaurants, bars, and kiosks "operate as a single[] integrated enterprise and are engaged in related activities, share common ownership, and have a common business purpose" insofar as they, inter alia, share similar "Iberian" menus, present their menus on Mercado Little Spain's website, employ "interchangeable" employees, share payroll methods, have a centralized labor relations system and marketing department, and share social media accounts.  (ECF No. 105 at 3).  From March 1, 2019 until his termination in August or September 2019,[4] Stewart worked as a line cook at various outlets within Mercado Little Spain, including Leña, Spanish Diner, and the Frutas & Verduras Kiosk.  (Id.; ECF Nos. 63 ¶¶ 2–4; 71-1 ¶ 5).

According to the Declaration of Mercado Little Spain's Executive Director, Michael Principe, all Mercado Little Spain employees are required to "clock-in at the start of their shift and clock-out at the end of their shift, and employees are prohibited from performing any off-the-clock work."  (ECF No. 71-1 ¶ 6).  Employees clock-in and -out at the location they are assigned to work; for example, Stewart clocked-in and -out of Lena when he was assigned to work there, and at Spanish Diner when he was assigned to work there.  (Id.) Mercado Little Spain pays employees based on the records of the time employees clock-in and -out, and to do so, uses a

---

[4] Stewart alleged in the FAC that he was terminated on September 15, 2019.  (ECF No. 26 ¶ 31).  In his Declaration, he states that he was terminated "in or around September 2019."  (ECF No. 63 ¶ 1). Defendants contend that his termination occurred on August 4, 2019.  (ECF Nos. 71-1 ¶ 5; 71-3 ¶ 3).  The exact date of Stewart's termination is not material to the Collective Motion, and I do not make any factual finding on this issue.

time-keeping system called "Harri's Team Hub," which appears on multiple iPads at each restaurant, bar, and kiosk.  (Id. ¶¶ 7–8).  To clock-in or -out, an employee finds and clicks on his or her name on the Team Hub app on the iPad at the workstation.  (ECF No. 71-4 ¶ 4).  When the employee clicks on his or her name, the Team Hub app may display announcements, such as a request to review changes to the employee's prior time records, with which the employee may indicate agreement or disagreement.  (Id. ¶ 5).  If there are no changes to the employee's prior time records, Team Hub displays a prompt asking if the employee would like to clock-in, which the employee clicks to begin a facial scan.  (Id.)  The facial scan clocks-in the employee from the time he or she first clicked on his or her name.  (Id.)  The process repeats for clocking-out at the end of a shift.  (Id.)  If an employee forgets to clock-in or -out, the employee may inform a supervisor to make sure the employee's time is properly recorded, and if the employee is unsatisfied with the supervisor's response, may discuss the issue with Human Resources.  (ECF No. 71-1 ¶¶ 9–10).  Mercado Little Spain used a five-minute grace period feature on Team Hub, which "synched" an employee's schedule to the clock-in and -out times.  (ECF No. 71-4 ¶ 7).  Manager approval is therefore required to clock an employee in or out more than five minutes before or after the employee's shift.  (Id.)

A non-exempt employee who works more than 40 hours in a week at Mercado Little Spain is entitled to an overtime premium equal to one and one-half times the employee's regular rate of pay.  (ECF No. 71-1 ¶ 11).  During the period April 1, 2019 through July 31, 2019, Mercado Little Spain paid $32,608.85 in overtime to 49 employees, ten of whom were line cooks.  (ECF No. 71-3 ¶ 8).  Stewart was paid overtime on one occasion, in May 2019.  (ECF No. 71-7).  An employee who believes that his or her time has not been accurately recorded and reflected in a paycheck

is instructed to discuss the issue with a supervisor, who is able to make a manual adjustment, which the employee must approve.  (ECF No. 71-1 ¶ 11).

Mercado Little Spain provides all employees 30-minute meal breaks, during which the employees are relieved of all duties and do not perform any work.  (ECF No. 71-1 ¶ 12).  Employees clock-in and -out for breaks using the Team Hub app on the iPads the same as they do for the beginning and ending of their shifts, described above.  (Id.; ECF No. 71-4 ¶ 8).

According to Defendants' time records, Stewart first clocked-in to Team Hub on April 1, 2019, and last clocked-in on July 26, 2019.  (ECF No. 71-4 ¶ 10; id. at 47).  There were 88 instances in which a manager adjusted Stewart's time records, only six of which he contested and 32 of which were for forgetting to clock-in or -out.  (ECF Nos. 71-4 ¶ 11; 77-1).

## 2. Stewart's employment allegations

### a. Allegations in FAC

In the FAC, Stewart alleged that Defendants failed to pay him (and the members of the Proposed Collective) the wages to which he was entitled in four respects.  (ECF No. 26).  First, he alleged that, during the week of May 20, 2019 to May 26, 2019, Defendants failed to pay him overtime wages for 12.94 hours of overtime he had worked (the "Overtime Allegations").  (Id. ¶ 34).  Second, Stewart alleged that his managers required him to perform 30 minutes of work tasks after clocking out four times each week, totaling two hours of off-the-clock work each week for which he was not paid.  (Id. ¶ 36).  Third, Stewart alleged that Defendants' policy requiring a manager's approval to clock-in or clock-out more than five minutes before or after a scheduled shift meant that he routinely started working before his managers clocked him in, resulting in additional unpaid off-the-clock work.  (Id. ¶ 37).  Fourth, Stewart alleged that Defendants

automatically deducted 30 minutes for meal breaks during his scheduled work shifts, even though he did not take meal breaks and worked during those breaks, resulting in additional unpaid off-the-clock work.  (Id. ¶ 38).[5]  The Court refers to the second, third, and fourth categories as the "Original Off-the-Clock Allegations."

### b. Allegations in Stewart's Declaration and the SAC

In his Declaration and, subsequently, in his proposed SAC, Stewart added two categories of off-the-clock work for which he claims he was unpaid (the "Supplemental Off-the-Clock Allegations").  (ECF Nos. 63 ¶¶ 8–15; 91-1 ¶¶ 38–45; see ECF No. 105 at 4–5).  First, Stewart alleged that he was required to appear at Mercado Little Spain "before [his] scheduled start time and before [he was] allowed to clock-in."  (ECF Nos. 63 ¶ 9; 91-1 ¶ 38).  This was so he could change in the locker room into his uniform chef's jacket (which Defendants supplied daily and he could not take home), but due to the large number of employees and only two bathroom stalls, "the time to change was further exacerbated."  (ECF Nos. 63 ¶¶ 9–10; 91-1 ¶¶ 38–40).  In addition, kitchen workers, including Stewart, "were required to bring equipment, such as knives, to work, but due to the small number of lockers, it took additional time to find a locker not in use, or find a person both trustworthy and willing to share."  (ECF Nos. 63 ¶ 10; 91-1 ¶ 40).  After changing, Stewart (and other employees) had to walk from the locker room to a work station, during which time supervisors "would often ask for assistance on various tasks."  (ECF Nos. 63 ¶ 10; 91-1 ¶ 41).  These activities totaled "an average of 15-20 minutes of uncompensated pre-shift

---

[5] Stewart also alleged that he did not receive wage notices and wage statements required under the NYLL (ECF No. 26 ¶¶ 39–40), but is not seeking collective certification as to these claims in the Collective Motion.  (ECF No. 61 at 7 n.1).

work time every day" for Stewart and other members of the Proposed Collective.  (ECF No. 91-1 ¶¶ 41, 43–44).

The second category of Supplemental Off-the-Clock Allegations is based on Stewart's allegations that "Defendants had a policy not to compensate" him and other members of the Proposed Collective for breaks lasting 20 minutes or less.  (ECF No. 91-1 ¶ 42; <u>see</u> ECF No. 63 ¶ 15).  He also asserts that "Defendants had a system of editing" employees time records, with the effect of "reducing their compensable time."  (ECF No. 91-1 ¶ 45).

Stewart contends that, based on his "direct observations and conversations with other employees," he believes that the Overtime Allegations and both the Original Off-the-Clock Allegations and the Supplemental Off-the-Clock Allegations apply to his "coworkers."  (ECF No. 63 ¶¶ 7–20).  In his Declaration, Stewart lists the names (or partial names) of six of these "coworkers" whom he claims "were subject to the same unlawful wage and hour policies" applied to him.  (<u>Id.</u> ¶ 17).  Of these six coworkers, four were line cooks, like Stewart, one was a barista, and one was a porter.  (<u>Id.</u>)  He recalls a discussion in June 2019 with "Quana" (a barista) and "Xavier" (a line cook), in which they described asking management to "fix their hours, because they were getting it wrong, and also expressed frustration with the every [sic] morning's delay in clocking in[.]"  (<u>Id.</u> ¶ 18).  Stewart also recalls a July 2019 discussion with Shana Ramington, Shannon Brown, and Stephanie Cantao, who complained to him that it was "unfair" how it "took 'forever' to get changed and over to [their] station" before they clocked-in.  (<u>Id.</u> ¶ 19).  In September 2019, after he had stopped working at Mercado Little Spain, Stewart continued to communicate with Shana Ramington and Shannon Brown, who "complained to [him] again about the unfairness of their time keeping and complained that the locker-room

situation was still a mess." (Id. ¶ 21; see ECF No. 71-13 at 76). In his deposition, Stewart testified that his coworkers told him "they been [sic] doing that s**t to me," and complained about "their time being missing and not getting their full money or their whole checks or whatever the case is . . . ." (ECF No. 71-13 at 82–87, 114).

**B. Procedural Background**

On January 31, 2020, Stewart filed the original complaint in this action, and on April 27, 2020, he filed the FAC. (ECF Nos. 1, 26). Defendants moved to dismiss the FAC (ECF No. 32), and on October 19, 2020, the Court issued the MTD R&R recommending that the claims against Holdings and Think be dismissed, that the claims against Andrés be allowed to proceed, and that, although he did not request leave to amend, Stewart be allowed one final opportunity to amend, but only to correct the deficiencies in his claims against Holdings and Think. (ECF No. 53).

Pursuant to the Case Management Plan (the "CMP"), which the parties jointly proposed, amended pleadings were due by July 15, 2020, fact discovery was to close by December 31, 2020, and expert discovery was to close by February 15, 2021. (ECF No. 41). Following a conference on September 30, 2020, during which the Court addressed Stewart's anticipated motion to compel discovery related to, inter alia, other members of the Proposed Collective (ECF Nos. 46, 48), the Court ordered (ECF No. 49), and Defendants produced, "the names, contact information, period worked, hours worked, and wages paid for 74 line cooks who work or worked at" Mercado Little Spain. (ECF No. 70 at 13).

On December 4, 2020, Stewart filed the Collective Motion. (ECF No. 60). On January 4, 2021, Defendants filed their opposition to the Collective Motion (the "Opposition") (ECF No. 70), and on January 19, 2021, Stewart filed his reply (the "Reply"). (ECF No. 77). Both parties have

submitted numerous exhibits consisting of documents produced and transcripts of depositions taken during discovery.  (ECF Nos. 61-1 – 61-10; 71-1 – 71-13; 77-1 – 77-2).  The Collective Motion does not include declarations from any of the six coworkers listed in Stewart's Declaration, or from any other Mercado Little Spain employees.   To date, Stewart is the only named Plaintiff, and no other employees have opted into this action.

Late on the evening of December 31, 2020, Stewart moved for an extension of the fact discovery deadline (ECF No. 69), which the Court denied for failure to show good cause.  (ECF No. 82).  At this time, expert discovery has now closed.

In February 2021, Stewart and Defendants filed letters seeking a conference before Judge Gardephe to discuss their anticipated motions for summary judgment.  (ECF Nos. 84–85).

On February 24, 2021, Judge Gardephe issued the MTD Order, which adopted the R&R, granted the motion to dismiss as to Holdings and Think, and denied the motion as to Andrés.  (ECF No. 87 at 16).  The MTD Order granted Stewart leave to amend only as to Holdings and Think.  (Id.)  On March 8, 2021, Stewart filed the motion for leave to file the SAC (the "MTA").  (ECF No. 90).  On April 14, 2021, the Court issued the MTA R&R, recommending that Stewart's MTA be granted in part and denied in part.  (ECF No. 105).  Specifically, the MTA R&R recommended that Stewart be allowed to delete allegations and claims against Holdings, and add allegations regarding Stewart's assertion that Think and Andrés are his employers under FLSA.  (Id. at 9–18).  The MTA R&R also recommended that his request to add the Supplemental Off-the-Clock Allegations be denied for failure to show good cause under Federal Rule of Civil Procedure 16(b), and because, under Federal Rule of Civil Procedure 15, Stewart's request to amend was unduly delayed, would prejudice Defendants, was not in good faith, and would be

futile.  (Id. at 9–18).   On April 28, 2021, Stewart filed objections to the MTA R&R (the "Objections"), which are pending before Judge Gardephe.  (ECF No. 112).

In addition, on March 12, 2021, pursuant to the briefing schedule ordered by Judge Gardephe, Stewart filed a motion to certify a class under Federal Rule of Civil Procedure 23 (the "Class Motion"), briefing of which will be completed on May 25, 2021.  (ECF Nos. 93, 95–98, 102–03, 107–08, 113–14, 117–18).[6]

### III. LEGAL STANDARD

Section 216(b) of the FLSA provides, in pertinent part:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  While FLSA does not prescribe any procedures for approval of actions brought collectively by those who are "similarly situated," courts have long construed § 216(b) to grant district court authority to order that notice be given to potential plaintiffs informing them of the option to join the suit.   See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice . . . it makes more sense, in light of the 'opt-in' provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate

---

[6] On May 4, 2021, the Court granted Defendants' letter-motion requesting to file a sur-reply.  (ECF Nos. 117–18).

case.").  Although orders authorizing notice are sometimes referred to as orders "certifying" a collective action, FLSA does not contain a certification mechanism.  See Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010).  Thus, where a court refers to "certifying" a collective action, it means only that the court has exercised its discretionary power "to facilitate the sending of notice" to similarly situated individuals.  Id.  The recognition of a collective action is thus equivalent to a "'case management' tool for district courts to employ in 'appropriate cases.'"  Id. (quoting Hoffmann-La Roche, 493 U.S. at 169, 174).

The Second Circuit has approved a two-step process to evaluate whether to approve a collective action.  Myers, at 554–55.  First, the court must make "an initial determination" whether to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs as to whether the alleged FLSA violation occurred.  Id.at 555; Damassia v. Duane Reade, Inc., No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006).  A plaintiff must make a "modest factual showing" that he and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law."  Myers, 624 F.3d at 555 (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  This standard of proof "cannot be satisfied simply by unsupported assertions."  Id. (internal citation omitted); see Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010) (explaining that "plaintiff's supporting allegations must be specific, not conclusory").  At this first stage, the case has not typically "had the benefit of full discovery," and thus courts consider the pleadings as well as supporting affidavits from the named plaintiff to evaluate whether he has made the "modest factual showing" that he is similarly situated to potential opt-in plaintiffs vis-à-vis the defendants' unlawful employment practices.  Korenblum v. Citigroup, Inc., 195 F. Supp. 3d 475, 480 (S.D.N.Y.

2016); see Almonte v. Marina Ice Cream Corp., No. 16 Civ. 660 (GBD), 2016 WL 7217258, at *1

(S.D.N.Y. Dec. 8, 2016).  "For similar reasons, courts do 'not resolve factual disputes, decide

ultimate issues on the merits, or make credibility determinations' at the first stage." Korenblum,

195 F. Supp. 3d at 480 (quoting In re Penthouse Exec. Club Comp. Litig., No. 10 Civ. 1145 (NRB),

2010 WL 4340255, at *2 (S.D.N.Y. Oct. 27, 2010)).

At the second step, on a more complete record following discovery, the district court

determines whether a "collective action" may proceed based on the named plaintiff having

shown that the plaintiffs who opted in are actually "similarly situated" to him.  Korenblum, 195

F. Supp. 3d at 480.  If the court is not convinced, it may "de-certify" the action and dismiss the

opt-in plaintiffs' claims without prejudice.  Id.

Where the parties have completed, or substantially completed, discovery targeted to

collective certification, courts in this District have applied "'a modest plus'" standard of review

to motions under FLSA § 216(b).[7]  Korenblum, 195 F. Supp. 3d at 482 (quoting Creely v. HCR

ManorCare, Inc., 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011)); see Brown v. Barnes & Noble, Inc.,

No. 16 Civ.7333 (RA), 2019 WL 5188941, at *2 (S.D.N.Y. Oct. 15, 2019) (finding that "modest plus"

---

[7] In the Collective Motion, Plaintiffs cite to Khalil v. Original Homestead Rest., Inc., No. 07 Civ. 695 (RJH), 2007 WL 7142139 (S.D.N.Y. Aug. 9, 2017) for the proposition that conditional certification is proper on the basis of the complaint "and one affidavit."  (ECF No. 61 at 22).  In Khalil, however, the court did not apply the "modest plus" standard of review, as the court's decision was made "at the inception of the lawsuit" and before discovery, unlike this case.  Khalil, 2007 WL 7142139, at *1 (citations omitted).

Plaintiffs also cite Zhao v. Benihana, Inc., No. 01 Civ. 1297 (KMW), 2001 WL 845000 (E.D.N.Y. May 7, 2001) as "certifying based upon one affidavit founded on plaintiff's 'best knowledge.'"  (ECF No. 61 at 22).  In Zhao, however, the Court specifically relied on two affidavits, one of which — from the restaurant manager, not the plaintiff — established a "restaurant-wide tip policy . . . [and] meets the threshold for a 'modest factual showing' that the servers . . . were similarly situated[.]"  Zhao, 2001 WL 845000 at *1–2. Moreover, the court in Zhao did not apply the "modest plus" standard of review.  (See id.)  Therefore, Zhao also does not support Stewart's proposition that a single affidavit can satisfy the modest plus standard.

approach "made eminent sense" where parties had completed six months of discovery "targeted to conditional certification"). In applying the "modest plus" standard of review, courts "look beyond the pleadings and affidavits submitted by Plaintiffs and will consider the evidence submitted by both parties, albeit with an understanding 'that the body of evidence is necessarily incomplete.'" Korenblum, 195 F. Supp. 3d at 482 (quoting Creely, 789 F. Supp. 2d at 826). In reviewing the parties' evidence, "the Court still will not decide the ultimate merits of the case or issues better suited for a decertification motion." Id. Rather, the Court continues to assess whether "'it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs'—in other words, that Plaintiffs have, through discovery, 'advanced the ball down the field.'" Id. (quoting Creely, 789 F. Supp. 2d at 827).

Here, the parties coalesce on the application of the "modest plus" standard. In their Opposition, Defendants argue that the "modest plus" standard applies because Stewart filed the Collective Motion after the parties completed discovery focused on whether collective certification was appropriate, which proceeded pursuant to the agreed CMP (ECF No. 41), and because Stewart relies on documents and information produced during that discovery period. (ECF No. 70 at 15–16). In his Reply, Stewart does not contest the application of the "modest plus" standard, and in fact states that "the Court can readily" consider the evidence the parties have submitted "because the relevant record [] provided by paystubs, time sheets, and, above all, the testimony of Defendants' own representatives support collective certification." (ECF No. 77 at 5). Accordingly, the Court shall apply the "modest plus" standard and consider the evidence, in addition to Stewart's Declaration, that the parties have submitted in support of and in opposition to the Collective Motion.

## IV. <u>DISCUSSION</u>

Applying the "modest plus" standard, the Court finds that Stewart has failed to make the requisite "modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." <u>Hoffman</u>, 982 F. Supp. at 261. The Court will address the three categories of Stewart's allegations, the Overtime Allegations, the Original Off-the-Clock Allegations, and the Supplemental Off-the-Clock Allegations, in turn.

### A. <u>Overtime Allegations</u>

In the Collective Motion, Stewart points to his paystub for the week of May 20, 2019 to May 26, 2019, which reflects that he was paid an hourly rate of $17.00 for 52.94 hours, as proof that Defendants failed to pay him overtime in violation of FLSA. (ECF Nos. 63 ¶ 7; 61-5 at 12). In their Opposition, Defendants point out that the time records reflect that, during that week, Stewart only worked 37.38 hours, not 52.94 hours, and explain that the difference (15.56 hours) reflects Defendants' payment of wages for hours that Stewart claimed he had worked in prior weeks but had not been paid. (ECF Nos. 70 at 17; 71-8; 71-12 at 2). Defendants also point to the deposition of Amy Kurth Anderson, who oversees human resources at Mercado Little Spain, who testified that the 15.56 hours should have been classified as "retroactive" pay, instead of straight time pay, on the May 20–26 paystub. (ECF No. 71-9 at 41). When asked about this paystub, Anderson testified:

> A. Yes. But I'm familiar with this particular pay stub, and I do know that we had a text message from his supervisor that he had relayed he was missing hours. That should have been added retroactively for this pay period and had a date stamp on it. So this is just where the additional hours should have been added as retro pay, and they weren't. So that's why it appears as though he worked more than a 40-

hour work week, when, in fact, when we look at the time record, it is not – that's not accurate.

Q.  Well, something is not accurate about this pay stub, right?

A.  Yeah, that's correct, and that's why we looked into it and we found the exact text message where he relayed to the supervisor that he was missing hours, so they were added to this paycheck.  They should have been added as retro pay, but they were not.  They were added just as extra hours.  And the exact hours that he was missing, combined with the hours we have punches for, equal this 52.94.

(ECF No. 71-9 at 41).

In his Reply, Stewart seeks to conform his overtime theory to Anderson's testimony, now contending that the 15.66 additional hours were <u>not</u> overtime hours that he worked during the week of May 20–26, but rather were hours he worked the week of May 13–19, 2019 for which he should have been paid the overtime rate.  (ECF No. 77 at 6 ("the missing 15.66 hours that should have been paid for May 13-19 were overtime hours for which Plaintiff was later paid at a straight time rate")).  He now argues that this example of retroactive pay shows that Defendants have "no system in place to ensure that employees receive overtime premiums when receiving retroactive pay."  (<u>Id.</u>)

Even if the Court were to assume for purposes of the Collective Motion that Defendants violated FLSA by failing to pay <u>Stewart</u> the overtime rate for the 15.66 hours reflected on the May 20–26 paystub, he has not "produced sufficient evidence that there are other employees who may share his claim."  <u>Khan v. Airport Mgmt. Servs., LLC</u>, No. 10 Civ. 7735 (NRB), 2011 WL 5597371, at *4 (S.D.N.Y. Nov. 16, 2011).  Despite having received the names, contact information, and wage information about 74 line cooks at Mercado Little Spain, Stewart does not provide a single example from these records of any employee other than himself whom Defendants did not pay proper overtime wages.  <u>See Korenblum</u>, 195 F. Supp. 3d at 484 (denying certification where plaintiffs "submit[ted] <u>no</u> evidence about other [] employees' compensation").  Stewart

identified several individuals by name whom he considers his "coworkers," (ECF No. 63 ¶ 17), and admitted during his deposition that he had spoken with at least two of these coworkers after his termination (ECF No. 71-13 at 76–81).   Yet, "none of these individuals has submitted declarations supporting [his] claims."  Khan, 2011 WL 5597371, at *3–4; see Silva v. Calle 8, LLC, No. 12-CV-677 (ERK) (MDG), 2013 WL 6330848, at *4 (E.D.N.Y. Dec. 5, 2013) (finding that plaintiff's failure to provide details about "fellow employees whom he observed working the same hours as he" was insufficient to satisfy his modest burden under § 216(b)); Qi Zhang v. Bally Produce, Inc., No. 12-CV-1045 (FB) (JMA), 2013 WL 1729274, at *1, 3–4 (E.D.N.Y. Apr. 22, 2013) (finding that affidavit from single named plaintiff, who alleged that "at least ten of his 'co-workers were also not paid'" overtime failed to satisfy burden under § 216(b)); Guan Ming Lin, 755 F. Supp. 2d at 510 (finding that "plaintiffs' failure to provide affidavits from any other employees who allege" that they were underpaid "undermines the plaintiffs' allegation that [defendants] have a common policy of violating" FLSA); Prizmic v. Armour, Inc., No. 05-CV-2503 (DLI) (MDG), 2006 WL 1662614, at *3 (E.D.N.Y. June 12, 2006) (denying motion for collective certification where plaintiffs failed to submit documentation showing other employees' hours or wages, and thus failed to establish that "potential plaintiffs were victims of a common policy or plan that violated the law").

To the extent Stewart relies on his own deposition testimony about conversations in which his coworkers purportedly said things like, "they be [sic] doing that to me, too," (ECF No. 71-13 at 87), such "anecdotal hearsay" fails "to suggest that there is a widespread policy" of failing to pay employees proper overtime.  Barfield v. N.Y.C. Health & Hosps. Corp., No. 05 Civ. 6319 (JSR), 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) (denying motion for collective

certification); see Guan Ming Lin, 755 F. Supp. 2d at 512 (denying motion for collective certification where plaintiffs "failed to present their allegations [regarding lack of reimbursement for tools of the trade expenses] with sufficient specificity to satisfy even the modest requirements of the collective action standard").

Furthermore, in his Reply, Stewart has not countered the evidence Defendants have submitted showing that during his employment in 2019, Defendants paid over $32,000 in overtime to 49 employees, including ten line cooks—one of whom was Stewart.  (ECF Nos. 71-3 ¶ 8; 71-7).  This undisputed evidence of payment of overtime wages to a majority of the line cooks who worked during the same period as Stewart undermines his assertion that Defendants had "a common plan or policy not to compensate" employees for overtime.  Korenblum, 195 F. Supp. 3d at 483.

Finally, the Court notes that even after over six months of fact discovery, Stewart "has been unable to produce a single other individual interested in participating as a plaintiff in this case," which, "[a]lthough not determinative," is "telling" as to the lack of support for Stewart's assertion that Defendants have a common policy of not paying overtime.  Khan, 2011 WL 5597371, at *5.

Accordingly, the Court finds that Stewart has failed to satisfy his burden of establishing that there are similarly situated employees at Mercado Little Spain whom Defendants unlawfully failed to pay overtime.

**B.**  **Original Off-the-Clock Allegations**

As noted above, Stewart alleged in the FAC the Original Off-the-Clock Allegations that: (i) he was required to perform 30 minutes of work tasks before clocking-in or after clocking-out; (ii)

he incurred unpaid waiting time due to Defendants' policy of requiring manager approval to clock-in or -out more than five minutes before or after a shift; and (iii) Defendants automatically deducted 30 minutes for meal breaks from each shift even when he did not actually take breaks. (ECF No. 26 ¶¶ 36–38).  The only employee Declaration Stewart offers in support of his assertion that he and other employees were required to perform this off-the-clock work without pay is his own.  (ECF No. 61 at 16 (citing ECF No. 63 ¶ 13 ("Based on my direct observations with other employees . . . my coworkers were similarly time-shaved.")))  He also points to the response of Jose Ayala, one of Stewart's supervisors, when asked during his deposition whether it was possible that employees would wait five minutes for a manager's approval to clock-in or -out, that he did not "know what's possible."  (Id. (quoting ECF No. 61-3 at 76–77)).

In their Opposition, Defendants point to the deposition testimony of Principe and Ayala, who both stated that employees did not perform pre- or post-shift off-the-clock work.  (ECF No. 70 at 25).  Principe testified that, "[i]f you came in and were asked to start working before your scheduled time, you would get clocked in by a manager so you were on the clock."  (ECF No. 71-10 at 68).  Similarly, a manager would approve an employee who stayed past the end of their shift to complete work tasks, and clock the employee out when that work was done, and the employee would "get paid for that later time."  (Id. at 69–70)  Ayala testified that he did not observe Stewart cleaning after his shift, and noted that employees who did not finish their work tasks during their shift "would stay on the clock until they finished."  (ECF No. 71-11 at 57).  Defendants also point to the Think Employee Handbook, which states that "[e]mployees may not perform any work off the clock."  (ECF No. 71-2 at 16; see ECF Nos. 71-10 at 66–67, 75; 71-11 at 52).

Whether Stewart was required to perform unpaid off-the-clock work is a disputed issue of fact inappropriate for resolution on this Collective Motion.  See Korenblum, 195 F. Supp. 3d at 482–83.  Assuming that Stewart himself performed such work, however, the Original Off-the-Clock Allegations run into the same obstacle as the Overtime Allegations:  the absence of evidence supporting the conclusion that his experience was the result of a common policy or practice that also applied to similarly situated employees.  First, the Handbook's prohibition of off-the-clock work indicates the opposite—that Defendants had a common policy not to allow such work.  (ECF No. 71-2 at 16).  See Eng-Hatcher v. Sprint Nextel Corp., No. 07 Civ. 7350 (BSJ), 2009 WL 7311383, at *3 (S.D.N.Y. Nov. 13, 2009) (denying collective motion where defendant "maintain[ed] official corporate policies that prohibit working off-the-clock" and therefore plaintiff could not show that defendant had "a common plan or practice requiring . . . uncompensated overtime"); cf. Zivali v. AT&T Mobility, LLC, 784 F. Supp. 2d 456, 461–62 (S.D.N.Y. 2011) (decertifying class where defendant's written corporate policy prohibited off-the-clock work and therefore did not violate FLSA).

Second, Stewart's recollection of his co-workers' statements—"they been doing dirty," "they been doing that s**t to me," "their time being missing (ECF No. 71-13 at 82–83, 114)—is too vague as to indicate that they, too, were being required to perform off-the-clock work without pay.  See Barfield, 2005 WL 3098730, at *1 (denying collective certification where "plaintiff present[ed] nothing but limited anecdotal hearsay to suggest that there is a widespread practice" that violated FLSA); Eng-Hatcher, 2009 WL 7311383, at *3 (finding that plaintiff's "anecdotal hearsay" about her conversations with other employees failed to "persuasively show that [defendant] likely has a common plan or practice" of requiring uncompensated overtime).

Third, the absence of supporting affidavits from any other employees distinguishes Stewart's case from those in which declarations from multiple plaintiffs supported the conclusion that an employer likely had a practice of requiring off-the-clock work.  See, e.g., Sharma v. Burberry Ltd., 52 F. Supp. 3d 443, 457 (E.D.N.Y. 2014) (finding that declarations of four plaintiffs were sufficient to show that employees at two of defendants' stores were subject to practice of requiring off-the-clock work); Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 160 (S.D.N.Y. 2014) (finding that plaintiff's declaration combined with declarations from two other employees with the same job title was sufficient to satisfy her "minimal burden"); Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 663–64 (S.D.N.Y. 2013) (finding that declarations of two plaintiffs, combined with testimony of managers and timesheets, were sufficient to infer common practice at defendants' gas stations in two boroughs); Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 321–22 (S.D.N.Y. 2007) (finding that declarations of nine employees, including plaintiff, was sufficient to infer common off-the-clock policies); Sipas v. Sammy's Fishbox, Inc., No. 05 Civ.10319 (PAC), 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (finding that affidavits of three employees was sufficient to infer common off-the-clock policies).  The absence of any sworn, corroborating statements from Stewart's co-workers undermines his assertion that Defendants had a policy of requiring off-the-clock work.

Accordingly, the Court finds that Stewart has failed to satisfy his burden of showing that the Proposed Collective is similarly situated as to the Original Off-the-Clock Allegations.

### C. Supplemental Off-the-Clock Allegations

The Court finds that Stewart has failed to meet his burden of showing that collective action treatment is appropriate for the Supplemental Off-the-Clock Allegations for three reasons.

First, in the MTA R&R, the Court recommended that Stewart be denied leave to amend to add these allegations based on his failure to meet the requirements of Rules 15(a) and 16. (ECF No. 105 at 9–18).

Second, even if the Court were to permit Stewart to add these allegations, as with the Original Off-the-Clock Allegations, he has failed to demonstrate that Defendants employed a common policy that violated the FLSA. Prizmic, 2006 WL 1662614, at *3 (explaining that plaintiff seeking collective action must show "that he and other potential plaintiffs were victims of a common policy or plan that violated the law"). As the Court also noted in the MTA R&R (ECF No. 105 at 16), it is well-settled that "'checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks,'" 29 C.F.R. § 790.7(g), are not compensable under FLSA unless those activities "involve[d] specialized tools or equipment [or] the donning/doffing of unique protective gear [] so intrinsically connected to the employee's principal activity[.]" Haight v. The Wackenhut Corp., 692 F. Supp. 2d 339, 343 (S.D.N.Y. 2010) (citing Steiner v. Mitchell, 350 U.S. 247, 248 (1956)). The activities that Stewart describes, including "'changing clothes . . . under normal conditions,'" waiting to change or for a locker, and walking to his workstation, are generic activities "indisputably non-compensable." Gorman v. Consol. Edison Corp., 488 F.3d 586, 590 (2d Cir. 2007) (quoting Steiner, 350 U.S. at 249); see ECF No. 105 at 16. Stewart's contention in his Declaration that he had to bring knives to work and had to wait to find a locker in which to store them (ECF No. 63 ¶ 10), is no more persuasive. This portion of the Declaration is inconsistent with his deposition testimony, in which he stated that he had to carry the knives to his workstation, not his locker, (ECF No. 71-13 at 345), and therefore, is not credible. See Korenblum, 195 F. Supp. 3d at 486 (declining to credit

assertions in employee declarations that contradicted deposition testimony); see also Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."); Damassia, 250 F.R.D. at 159–60 (in considering class certification under Rule 23, crediting deposition testimony that "[i]n some cases . . . directly contradicts the declarations").  In addition, for the reasons explained in the MTA R&R, Stewart's single conclusory allegation that he was not compensated for breaks shorter than 20 minutes fails to state a violation of the FLSA.  (ECF No. 105 at 17–18).  And, notwithstanding having the time records of 74 other line cooks, he points to no other examples of such uncompensated breaks.  (See p. 8, supra).

Third, Stewart offers no declarations or testimony of any other employees to corroborate his own conclusory assertions that other employees "expressed frustration with the every [sic] morning's delay in clocking in."  (ECF No. 63 ¶ 18).  Thus, Stewart has failed to show that the Supplemental Off-the-Clock Allegations are "appropriate" for the use of the collective action "'case management' tool" in this case.  Myers, 624 F.3d at 555 n.10 (quoting Hoffman-LaRoche, 493 U.S. at 174).

D.  **Notice**

Because collective action is not warranted for Stewart's claims, the Court also declines to approve Stewart's proposed form of notice at this time.  See Khan, 2011 WL 5597371, at *5 (because collective action motion was denied, declining to approve proposed notice); Guan Ming Lin, 755 F. Supp. 2d at 513 (same).

**E.   Request for Disclosure of Contact Information**

In the Collective Motion, Stewart asks the Court to order Defendants to disclose "names, social security numbers, titles, compensation rates, dates of employment, last known mailing addresses, email addresses and all known telephone numbers of all" members of the Proposed Collective.  (ECF No. 60-1 at 3).   Because the Court has found, however, that Stewart has not produced sufficient "evidence to support his claim that a collective action is appropriate—even after having been granted an extended period of time to develop such evidence—[the Court] decline[s] to facilitate the expenditure of additional resources and reject[s] [his] request to order disclosure" of additional information about Mercado Little Spain's employees.  Khan, 2011 WL 5597371, at *5.

**V. CONCLUSION**

For the reasons set forth above, the Collective Motion is DENIED.  The Clerk of the Court is respectfully directed to close ECF No. 60.

Dated:        New York, New York
              May 4, 2021

SARAH L. CAVE
United States Magistrate Judge